IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Civil Action File No. |
| BENTLEY DEVORE, GUY DEVORE, and DANIEL AND MARTINE SHEA, as parents and next friends of MORGAN JEAN-MARIE SHEA, and as joint co-administrators of the ESTATE OF MORGAN JEAN-MARIE SHEA, | _____ |
| Defendants. | |

## AUTO-OWNERS INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW AUTO-OWNERS INSURANCE COMPANY ("Auto-Owners") and hereby files its Complaint for Declaratory Judgment against Bentley Devore ("Bentley"), Guy Devore ("Guy"), and Daniel and Martine Shea, as parents and next friends of Morgan Jean-Marie Shea, and as joint co-administrators of the Estate of Morgan Jean-Marie Shea (the "Sheas"), showing this Honorable Court as follows:

- 1 -

## PARTIES

1.

Auto-Owners is a corporation organized and existing under the laws of the State of Michigan with its principal place of business in Michigan.

2.

Bentley is a resident and domiciliary of Columbia County, Georgia, and he has the present intention to remain in Georgia and call Georgia his home. Bentley is also currently in the custody of the Columbia County Jail and, therefore, his residence and domicile remains what it was prior to being taken into custody. Prior to being taken into custody, Bentley was a resident and domiciliary of Columbia County, Georgia, and he had the then-present intention to remain in Georgia and call Georgia his home. Bentley may be served with process at the Columbia County Jail, 2273 County Camp Road, Appling, Georgia 30802.

3.

Guy is a resident and domiciliary of Columbia County, Georgia, and he has the present intention to remain in Georgia and call Georgia his home. Guy may be served with process at his residence, located at 2374 Morris Callaway Road, Appling, Georgia 30802.

4.

Daniel Shea, individually, is a resident and domiciliary of Columbia County, Georgia, and he has the present intention to remain in Georgia and call Georgia his home. Daniel Shea may be served with process wherever he is found.

5.

Martine Shea, individually, is a resident and domiciliary of Columbia County, Georgia, and she has the present intention to remain in Georgia and call Georgia her home. Martine Shea may be served with process wherever she is found.

6.

The Sheas, officially as co-administrators of the Estate of Morgan Jean-Marie Shea (the "Estate"), are deemed to be citizens of Georgia for diversity jurisdiction purposes. *See* 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."). At the time of her death, Morgan Jean-Marie Shea ("Morgan") was a resident and domiciliary of Columbia County, Georgia, and she had the then-present intention to remain in Georgia and call Georgia her home at all times prior to, and up until the moment of, her death. *See*, *e.g.*, *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1170 (11th Cir. 2007) ("Where an estate is a party, the citizenship that counts for diversity

purposes is that of the decedent, and she is deemed to be a citizen of the state in which she was domiciled at the time of her death."). Moreover, the Estate is a legal creation established under the laws of the State of Georgia, established following Morgan's death, and established by the Sheas serving as the legally appointed co-representatives of the Estate.

## JURISDICTION AND VENUE

### 7.

This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332 because this action is between citizens of different states, who are completely diverse, and the amount in controversy exceeds the jurisdictional limit of $75,000, exclusive of interest and costs.

### 8.

This Court has personal jurisdiction over the Defendants because the Underlying Lawsuit (defined below) is pending in the Superior Court of Columbia County, Georgia, which lies within this judicial district and division of the Court, because the events that underlie this coverage action occurred in Columbia County, Georgia, which lies within this judicial district and division of the Court, and because all Defendants reside and are physically present therein.

9.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## NATURE OF ACTION

10.

This is a Complaint for Declaratory Judgment, brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Auto-Owners and the Defendants.

11.

A controversy of a judicial nature presently exists among the parties that demands a declaration by this Court in order that Auto-Owners may have its rights and duties under the relevant contract of insurance determined and avoid the possible accrual of damages.

12.

Each Defendant named herein has been joined in compliance with case law requiring the insurer seeking a declaratory judgment to bring into the action all individuals or entities that have a financial or other interest in the outcome of the coverage issues to be decided through the declaratory judgment.

## THE UNDERLYING LAWSUIT

13.

Guy knowingly, intentionally, and regularly made his residence, located at 2374 Morris Callaway Road, Appling, Columbia County, Georgia (the "Property"), available for the unlawful consumption of alcohol by minors, including his son Bentley.

14.

On July 18, 2020, Bentley was illegally consuming alcohol furnished to him by Guy, and while on Guy's Property.

15.

Bentley was also operating a 2016 Cam-Am utility vehicle owned by Guy and/or Bentley, and with Guy's permission (the "Vehicle").

16.

At that time, Morgan was a guest at Guy's Property.

17.

Soon after she arrived at Guy's Property, Bentley invited Morgan to ride in the Vehicle's passenger seat.

18.

Once Morgan entered the Vehicle, Bentley drove it off Guy's Property and down Morris Callaway Road.

19.

With Morgan in the passenger seat of the Vehicle, Bentley drove the Vehicle down Morris Callaway Road in a knowingly and intentionally dangerous and reckless manner.

20.

With Morgan in the passenger seat of the Vehicle, Bentley drove the Vehicle down Morris Callaway Road while he was knowingly and intentionally intoxicated.

21.

With Morgan in the passenger seat of the Vehicle, Bentley drove the Vehicle while noticeably intoxicated.

22.

Shortly after driving the Vehicle off the Property and onto Morris Callaway Road, Bentley overturned the Vehicle, causing Morgan to be ejected from it and onto Morgan Callaway Road (the "Incident").

23.

Morgan later died as a result of her injuries sustained during the Incident.

24.

At all material times before and during the Incident, Guy knew that Bentley was illegally consuming alcohol, that he was noticeably intoxicated, and that he would soon be driving or was driving the Vehicle while noticeably intoxicated.

25.

At all material times before and during the Incident, Guy knew Bentley was operating the Vehicle in a knowingly and intentionally dangerous and reckless manner, and allowed him to continue operating it in such manner

26.

Based on Bentley's condition and conduct on the date of the Incident, and his history of alcohol abuse and reckless conduct, both the Incident and Morgan's death were events that were reasonably foreseeable by both Bentley and Guy.

27.

On February 26, 2021, the Sheas, as Morgan's next friends, and co-administrators of the Estate, filed a lawsuit against Bentley and Guy in the Superior Court of Columbia County, Georgia, civil action file number 2021EC0149 (the

"Underlying Lawsuit"). A true and accurate copy of the complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit A**.

28.

In the Underlying Lawsuit, the Sheas allege that Bentley is directly liable for Morgan's death based on the facts alleged above, and that Guy is vicariously liable for Morgan's death under theories of parental liability, negligent entrustment, negligent supervision, and under Georgia's Dram Shop Act, O.C.G.A. § 51-1-40.

29.

On March 26, 2021, Auto-Owners issued reservation of rights letters to both Bentley and Guy, wherein Auto-Owners advised Bentley and Guy that it was reserving its rights to deny coverage for Incident and hired counsel to represent Bentley and Guy against the Underlying Lawsuit, subject to the complete and total reservation of rights. On April 30, 2021, Auto-Owners supplemented the reservation of rights letters to Bentley and Guy. True and accurate copies of the reservation of rights letters are attached hereto as **Exhibit B**.

## THE INSURANCE CONTRACT

30.

Auto-Owners issued a homeowners insurance policy to "Guy Devore" and "Karen Devore," policy number 50-951-828-00, with effective dates of November

- 9 -

14, 2019 through November 14, 2020 (the "Policy"). A true and accurate copy of the Policy is attached hereto as **Exhibit C**.

31.

The Policy's personal liability coverage contains the following relevant definitions, terms, provisions, exclusions, and conditions:

**HOMEOWNERS POLICY**
**FORM 3**
**INSURING AGREEMENT**

The attached Declarations describe the property **we** insure and the Coverages and Limits of Insurance for which **you** have paid a premium. In reliance upon **your** statements in the Declarations and application(s), **we** agree to provide insurance subject to all terms and conditions of this policy. In return, **you** must pay the premium and comply with all the terms and conditions of this policy. This policy applies to losses, **bodily injury**, **property damage** and **personal injury** which occur during the policy term shown in the Declarations.

**DEFINITIONS**

To understand this policy, **you** must understand the meaning of the following words. These words appear in **bold face type** whenever used in this policy and endorsements attached to this policy.

.   .   .

    **2.**    **Bodily injury** means physical injury, sickness or disease sustained by a person including resulting death of that person. **Bodily injury** does not include **personal injury**.

.   .   .

    **5.**    **Insured** means:

- 10 -

a.     **you**;

b.     **your relatives**; and

c.     any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**.

In SECTION II – PERSONAL LIABILITY PROTECTION, **insured** also means:

d.     with respect to any vehicle covered by this policy:

.   .   .

(2)     any other person **you** permit to use the vehicle while on an **insured premises**.

.   .   .

6.     **Insured premises** means:

a.     the **residence premises**;

b.     any structures or grounds **you** use in connection with **your residence premises**;

c.     any other premises **you** acquire during the policy term and which **you** intend to use as a **residence premises**;

d.     that part of any other premises where **you** reside and which is shown in the Declarations;

e.     any part of a premises not owned by any **insured** but where any **insured** may be temporarily residing;

f.     any part of a premises not owned by any **insured** which any **insured** may rent for nonbusiness purposes, such as banquet halls and storage facilities

- 11 -

g.      vacant land, other than farmland, owned by or rented to any **insured**;

h.      Cemetery plots or burial vaults owned by any **insured**;

i.      land owned by or rented to any **insured** on which a one or two family dwelling is being constructed as a residence for the **insured**; and

j.      200 or less acres of farmland on which there are no buildings when such land is farmed by anyone other than any **insured**.

**7.**    **Motor vehicle** means a motorized land vehicle. **Motor vehicle** does not include a **recreational vehicle**.

**8.**    **Occurrence** means an accident that results in **bodily injury** or **property damage** and includes, as one **occurrence**, all continuous or repeated exposure to substantially the same generally harmful conditions.

.  .  .

**12.**    **Recreational vehicle** means a motorized land vehicle designed primarily for recreational purposes but not designed for travel on public roads. **Recreational vehicle** does not include **watercraft**.

**13.**    **Relative** means a person who resides with **you** and who is related to **you** by blood, marriage or adoption. **Relative** includes a ward or foster child who resides with **you**.

.  .  .

**15.**    **Residence premises** means:

a.      the one or two family dwelling where **you** reside, including the building, the grounds and other structures on the grounds; or

b.     that part of any other building where **you** reside, including grounds and structures;

which is described in the Declarations.

.   .   .

17.   **You** or **your** means any named **insured** shown in the Declarations and if an individual, such individual named **insured's** spouse who resides in the same household.

.   .   .

19.   **We**, **us**, or **our** means the Company providing this insurance.

.   .   .

## SECTION II – PERSONAL LIABILITY PROTECTION

1.   **COVERAGES**

a.     **Coverage E – Personal Liability**

(1)   **We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies. However, with respect to any **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**:

(a)   **we** will pay damages because of or arising out of the ownership, maintenance, use, loading or unloading of only:

.   .   .

6)   **recreational vehicles** owned by any **insured** while on an **insured premises**;

- 13 -

.  .  .

**We** will settle or defend, as **we** consider appropriate, any claim or **suit** for damages covered by this policy. **We** will do this at **our** expense, using attorneys of **our** choice. This agreement to settle or defend claims or **suits** ends when **we** have paid the limit of **our** liability.

.  .  .

2.  **EXCLUSIONS**

   a.  **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply:

.  .  .

   **(7)**   to **bodily injury** or **property damage** because of or arising out of the ownership, maintenance, use, loading or unloading of any **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**. This exclusion does not apply:

   (a)   to **aircraft**, **motor vehicles**, **recreational vehicle** or **watercraft** described under 1. COVERAGES, a. Coverage E – Personal Liability, (1)(a)1 – (1)(a)9 and (1)(b)1 – (1)(b)3;

.  .  .

   **(8)**   to parental liability for **bodily injury** or **property damage**, whether or not imposed by law, because of or arising out of actions of a child or minor for use of an **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft** if such use is excluded or otherwise limited by this policy.

   **(9)**   to **bodily injury** or **property damage** because of or arising out of:

- 14 -

      **(a)**    the entrustment to any person by any **insured**; nor

      **(b)**    the supervision of any person by any **insured**;

with regard to the ownership, maintenance, use, loading or unloading of an **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**.

This exclusion does not apply:

      **(a)**    to **aircraft**, **recreational vehicles** and **watercraft** that are covered by Coverage E - Personal Liability; . . . .

. . .

      **(12)**    to **bodily injury** or **property damage** reasonably expected or intended by the **insured**. This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended. However, this exclusion does not apply to **bodily injury** or **property damage** arising out of the use of reasonable force by the **insured** to protect persons or property.

. . . .

Homeowners Policy Form 3 (Form No. 17903 (2-96)); You and Your Amendatory Endorsement (Form No. 57664 (6-15)); Amendatory Endorsement (Form No. 57591 (2-14)).

32.

Bentley and Guy seek a defense and/or indemnity under the Policy for the claims asserted and damages sought in the Underlying Lawsuit.

- 15 -

## DECLARATORY JUDGMENT

### COUNT I
### (Against Bentley)
### AS AGAINST BENTLEY, THE UNDERLYING LAWSUIT DOES NOT ALLEGE BODILY INJURIES "CAUSED BY AN OCCURRENCE," THEREFORE, AUTO-OWNERS HAS NO DUTY TO DEFEND OR INDEMNIFY BENTLEY AGAINST THE UNDERLYING LAWSUIT.

33.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

34.

The Policy issued by Auto-Owners affords coverage only for "those sums that any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** . . . caused by an **occurrence**" to which the Policy applies.

35.

As defined by the Policy, an "occurrence" is "an accident that results in **bodily injury** . . . and includes, as one **occurrence**, all continuous or repeated exposure to substantially the same generally harmful conditions."

36.

As interpreted by Georgia law, "bodily injury" "caused by an occurrence," or accident, requires that the injury at issue result from "accidental means," which

- 16 -

requires that such injury be "the unexpected result of an unforeseen or unexpected act that was involuntarily or unintentionally done."

37.

However, the Underlying Lawsuit repeatedly alleges that Bentley:

(a)    intentionally and knowingly consumed alcohol illegally on the date of the Incident;

(b)    intentionally and knowingly drove the Vehicle while illegally intoxicated on such date;

(c)    knowingly and intentionally operated the Vehicle in a dangerous and reckless manner while illegally intoxicated; and

(d)    knowingly and intentionally operated the Vehicle in a dangerous and reckless manner while Morgan rode in the Vehicle's passenger seat.

38.

As a result, the Incident, Morgan's injuries, and her death were the reasonably expected and foreseeable result of Bentley's intentional, knowing, and voluntary acts; not the "unexpected result of an unforeseen or unexpected act that was involuntarily or unintentionally done."

- 17 -

39.

Thus, the Incident, Morgan's injuries, and her death were not "caused by an occurrence," or accident, as defined by the Policy and interpreted by Georgia law.

40.

Consequently, because the Incident, Morgan's injuries, and her death were not "caused by an occurrence," or accident, the Underlying Lawsuit does not trigger coverage under the Policy and Auto-Owners has no duty to defend or indemnify Bentley in the Underlying Lawsuit.

41.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Bentley against any liability, judgment, or settlement resulting from the Underlying Lawsuit.

**COUNT II**
**(Against Guy)**
**AS AGAINST GUY, THE UNDERLYING LAWSUIT DOES NOT ALLEGE BODILY INJURIES "CAUSED BY AN OCCURRENCE," THEREFORE, AUTO-OWNERS HAS NO DUTY TO DEFEND OR INDEMNIFY <u>GUY AGAINST THE UNDERLYING LAWSUIT.</u>**

42.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

43.

The Policy issued by Auto-Owners affords coverage only for "those sums that any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** . . . caused by an **occurrence**" to which the Policy applies.

44.

As defined by the Policy, an "occurrence" is "an accident that results in **bodily injury** . . . and includes, as one **occurrence**, all continuous or repeated exposure to substantially the same generally harmful conditions."

45.

As interpreted by Georgia law, "bodily injury" "caused by an occurrence," or accident, requires that the injury at issue result from "accidental means," which requires that such injury be "the unexpected result of an unforeseen or unexpected act that was involuntarily or unintentionally done."

46.

However, the Underlying Lawsuit repeatedly alleges that Guy:

(a)    intentionally and knowingly provided minors, including Bentley, with alcohol on the date of the Incident;

- 19 -

(b)     intentionally and knowingly allowed minors, including Bentley, to use the Vehicle while illegally and noticeably intoxicated; and

(c)     knew such minors, including Bentley, were operating the Vehicle in a dangerous and reckless manner while illegally and noticeably intoxicated.

47.

As a result, the Incident, Morgan's injuries, and her death were the reasonably expected and foreseeable result of Guy's intentional, knowing, and voluntary acts; not the "unexpected result of an unforeseen or unexpected act that was involuntarily or unintentionally done."

48.

Thus, the Incident, Morgan's injuries, and her death were not "caused by an occurrence," or accident, as defined by the Policy and interpreted by Georgia law.

49.

Consequently, because the Incident, Morgan's injuries, and her death were not "caused by an occurrence," or accident, the Underlying Lawsuit does not trigger coverage under the Policy and Auto-Owners has no duty to defend or indemnify Guy in the Underlying Lawsuit.

50.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Guy against any liability, judgment, or settlement resulting from the Underlying Lawsuit.

**COUNT III**
**(Against Bentley and Guy)**
**THE VEHICLE WAS NOT ON AN "INSURED PREMISES" AT THE TIME**
**OF THE INCIDENT, THEREFORE, AUTO-OWNERS HAS**
**NO DUTY TO DEFEND OR INDEMNIFY**
**BENTLEY OR GUY AGAINST THE UNDERLYING LAWSUIT.**

51.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

52.

The Policy issued by Auto-Owners affords coverage only for "damages because of or arising out of the ownership, maintenance, use, loading or unloading

of only . . . **recreational vehicles** owned by any **insured** while on an **insured premises**."

53.

However, the Incident took place off the Property.

- 21 -

54.

Specifically, Bentley drove Morgan and the Vehicle off the Property and onto Morris Callaway Road, where the Incident took place and caused Morgan's death.

55.

Morris Callaway Road is neither the Property nor an "insured premises," as defined by the Policy.

56.

As a result, the Incident, Morgan's injuries, and her death took place off of and away from the Property and the "insured premises," as defined by the Policy.

57.

Consequently, because the Incident, Morgan's injuries, and her death took place off of and away from the Property and the "insured premises," as defined by the Policy, the Underlying Lawsuit does not trigger coverage under the Policy and Auto-Owners has no duty to defend or indemnify either Bentley or Guy in the Underlying Lawsuit.

58.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Bentley or Guy against any liability, judgment, or settlement resulting from the Underlying Lawsuit.

**COUNT IV**
**(Against Bentley and Guy)**
**THE INCIDENT AROSE OUT OF THE USE OF A**
**RECREATIONAL VEHICLE, THEREFORE, THE POLICY**
**UNAMBIGUOUSLY EXCLUDES COVERAGE FOR THE INCIDENT**
**AND AUTO-OWNERS HAS NO DUTY TO DEFEND OR INDEMNIFY**
**BENTLEY OR GUY AGAINST THE UNDERLYING LAWSUIT.**

59.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

60.

Except in limited circumstances, the Policy specifically and unambiguously excludes from coverage all "**bodily injury** . . . because of or arising out of the ownership, maintenance, use, loading or unloading of any . . . **recreational vehicle** . . . ."

61.

The Incident happened because of or arose out of the use of the Vehicle, which constitutes a "recreational vehicle" under the Policy.

- 23 -

62.

However, the Policy unambiguously excludes from coverage any bodily injuries because of or arising from the use of a "recreational vehicle."

63.

None of the limited exceptions to this exclusion apply under the circumstances.

64.

Consequently, because the Incident, Morgan's injuries, and her death happened because of or arose from the use of a "recreational vehicle," coverage for the Incident is unambiguously excluded under the Policy and Auto-Owners has no duty to defend or indemnify either Bentley or Guy in the Underlying Lawsuit.

65.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Bentley or Guy against any liability, judgment, or settlement resulting from the Underlying Lawsuit.

**COUNT V**
**(Against Bentley)**
**THE UNDERLYING LAWSUIT ALLEGES BODILY INJURIES THAT WERE "REASONABLY EXPECTED OR INTENDED" BY BENTLEY, THEREFORE, AUTO-OWNERS HAS NO DUTY TO DEFEND OR INDEMNIFY BENTLEY AGAINST THE UNDERLYING LAWSUIT.**

66.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

67.

The Policy specifically and unambiguously excludes from coverage all "**bodily injury** . . . reasonably expected or intended by the **insured**," and such exclusion applies "even if the **bodily injury** . . . is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended."

68.

The Underlying Lawsuit repeatedly and unambiguously alleges that Bentley:

(a)     was noticeably and illegally intoxicated on the date of the Incident;

(b)     was noticeably intoxicated at the time he and Morgan were in the Vehicle;

- 25 -

(c)    was driving the Vehicle illegally and while noticeably intoxicated, including at the time Morgan joined him in the Vehicle;

(d)    was dangerously and recklessly operating the Vehicle at a high rate of speed while Morgan was in the Vehicle with him; and

(e)    overturned the Vehicle, causing Morgan to be ejected from it and causing her death in violation of several statutory provisions of Georgia's Uniform Rules of the Road.

69.

The Underlying Lawsuit further alleges that, based on Bentley's condition and conduct on the date of the Incident, and his history of alcohol abuse and reckless conduct, the Incident and Morgan's death were events that were reasonably foreseeable by Bentley.

70.

As a result, the Incident, Morgan's injuries, and her death were the reasonably expected and foreseeable result of Bentley's intentional, knowing, illegal, and voluntary acts.

71.

Consequently, because the Incident, Morgan's injuries, and her death were "reasonably expected or intended" by Bentley, coverage for the Incident is unambiguously excluded under the Policy and Auto-Owners has no duty to defend or indemnify Bentley in the Underlying Lawsuit.

72.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Bentley against any liability, judgment, or settlement resulting from the Underlying Lawsuit.

## COUNT VI
### (Against Guy)
**THE UNDERLYING LAWSUIT ALLEGES BODILY INJURIES THAT WERE "REASONABLY EXPECTED OR INTENDED" BY GUY, THEREFORE, AUTO-OWNERS HAS NO DUTY TO DEFEND OR INDEMNIFY GUY AGAINST THE UNDERLYING LAWSUIT.**

73.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

74.

The Policy specifically and unambiguously excludes from coverage all "**bodily injury** . . . reasonably expected or intended by the **insured**," and such exclusion applies "even if the **bodily injury** . . . is of a different kind or degree, or

- 27 -

is sustained by a different person or property, than that reasonably expected or intended."

75.

The Underlying Lawsuit repeatedly and unambiguously alleges that Guy:

(a)    knew Bentley was illegally consuming alcohol on the date of the Incident;

(b)    knew Bentley was noticeably intoxicated at the time he and Morgan were in the Vehicle;

(c)    knew Bentley would drive or soon be driving the Vehicle while he was noticeably intoxicated, including at the time Morgan joined him in the Vehicle;

(d)    knew Bentley was dangerously and recklessly operating the Vehicle, and knowingly allowed him to continue doing so while Morgan was in the Vehicle with him; and

(e)    is vicariously liable for Bentley's reckless conduct and Morgan's death under Georgia's Dram Shop Act, O.C.G.A. § 51-1-40, which, for liability to attach, requires only that Guy knew or should have known that Bentley was noticeably intoxicated and was soon to drive the Vehicle on the date of the Incident.

76.

The Underlying Lawsuit further alleges that, based on Bentley's condition and conduct on the date of the Incident, and his history of alcohol abuse and reckless conduct, the Incident and Morgan's death were events that were reasonably foreseeable by Guy.

77.

As a result, the Incident, Morgan's injuries, and her death were the reasonably expected and foreseeable result of Guy's intentional, knowing, illegal, and voluntary acts.

78.

Consequently, because the Incident, Morgan's injuries, and her death were "reasonably expected or intended" by Guy, coverage for the Incident is unambiguously excluded under the Policy and Auto-Owners has no duty to defend or indemnify Guy in the Underlying Lawsuit.

79.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Guy against any liability, judgment, or settlement resulting from the Underlying Lawsuit.

**COUNT VII**
**(Against Guy)**
**THE POLICY EXCLUDES PARENTAL LIABILITY COVERAGE FOR THE INCIDENT, THUS, AUTO-OWNERS HAS NO DUTY TO DEFEND OR INDEMNIFY GUY AGAINST THE UNDERLYING LAWSUIT.**

80.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

81.

Except in limited circumstances, the Policy specifically excludes from coverage all "parental liability for **bodily injury** . . . , whether or not imposed by law, because of or arising out of [the] actions of a child or minor for use of [a] . . . **recreational vehicle** . . . ."

82.

The Incident happened because of or arose out of the use of the Vehicle, which constitutes a "recreational vehicle" under the Policy.

83.

Bentley is Guy's child.

- 30 -

84.

However, the Policy unambiguously excludes from coverage any parental vicarious liability for bodily injuries because of or arising from the use of a recreational vehicle by one's child.

85.

None of the limited exceptions to this exclusion apply under the circumstances.

86.

Consequently, because the Incident, Morgan's injuries, and her death happened because of or arose from the use of a "recreational vehicle" by Guy's child, parental liability coverage for the Incident is unambiguously excluded under the Policy and Auto-Owners has no duty to defend or indemnify Guy in the Underlying Lawsuit.

87.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Guy against any liability, judgment, or settlement resulting from the Underlying Lawsuit.

## COUNT VIII
### (Against Guy)
### THE POLICY EXCLUDES VICARIOUS LIABILITY COVERAGE ARISING FROM ENTRUSTMENT OF THE VEHICLE, THUS AUTO-OWNERS HAS NO DUTY TO DEFEND OR INDEMNIFY GUY <u>AGAINST THE UNDERLYING LAWSUIT.</u>

88.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

89.

Except in limited circumstances, the Policy specifically excludes from coverage all "**bodily injury** . . . because of or arising out of . . . the entrustment to any person by any **insured** . . . with regard to the ownership, maintenance, use, loading or unloading of [a] . . . **recreational vehicle** . . . ."

90.

The Incident happened because of or arose out of the use of the Vehicle, which constitutes a "recreational vehicle" under the Policy.

91.

The Underlying Lawsuit alleges that Guy is liable for Morgan's death because of his entrustment of the Vehicle to Bentley.

92.

However, the Policy unambiguously excludes from coverage any vicarious liability for bodily injuries because of or arising from the entrustment to another of a recreational vehicle.

93.

None of the limited exceptions to this exclusion apply under the circumstances.

94.

Consequently, because the Incident, Morgan's injuries, and her death happened because of or arose from the alleged entrustment of a "recreational vehicle" to another, vicarious liability coverage for the Incident is unambiguously excluded under the Policy and Auto-Owners has no duty to defend or indemnify Guy in the Underlying Lawsuit.

95.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Guy against any liability, judgment, or settlement resulting from the Underlying Lawsuit.

**COUNT IX**
**(Against Guy)**
**THE POLICY EXCLUDES VICARIOUS LIABILITY COVERAGE**
**ARISING FROM SUPERVISION OF THE VEHICLE, THUS AUTO-**
**OWNERS HAS NO DUTY TO DEFEND OR INDEMNIFY GUY**
**<u>AGAINST THE UNDERLYING LAWSUIT.</u>**

96.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

97.

Except in limited circumstances, the Policy specifically excludes from coverage all "**bodily injury** . . . because of or arising out of . . . the supervision of any person by any **insured** . . . with regard to the ownership, maintenance, use, loading or unloading of [a] . . . **recreational vehicle** . . . ."

98.

The Incident happened because of or arose out of the use of the Vehicle, which constitutes a "recreational vehicle" under the Policy.

99.

The Underlying Lawsuit alleges that Guy is liable for Morgan's death because of his failure to supervise Bentley's use of the Vehicle.

- 34 -

100.

However, the Policy unambiguously excludes from coverage any vicarious liability for bodily injuries because of or arising from the failure to supervise another's use of a recreational vehicle.

101.

None of the limited exceptions to this exclusion apply under the circumstances.

102.

Consequently, because the Incident, Morgan's injuries, and her death happened because of or arose from the alleged failure to supervise Bentley's use of a "recreational vehicle," vicarious liability coverage for the Incident is unambiguously excluded under the Policy and Auto-Owners has no duty to defend or indemnify Guy in the Underlying Lawsuit.

103.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Guy against any liability, judgment, or settlement resulting from the Underlying Lawsuit.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Auto-Owners respectfully prays as follows:

(1)     that this Court declare that it does not owe any duties to defend or indemnify Bentley or Guy in the Underlying Lawsuit;

(2)     that judgment be entered in Auto-Owners' favor and against all Defendants;

(3)     that this Court bind each and every named party herein by said judgment;

(4)     that the Court award Auto-Owners all costs, expenses, and attorneys' fees that it is entitled to receive under federal and/or state law; and

(5)     that this Court enter an order granting such other and further relief as justice requires.

This 30th day of April, 2021.

Respectfully submitted,

KENDALL | MANDELL, LLC

3152 Golf Ridge Blvd., Ste. 201          /s/ M. Brandon Howard
Douglasville, Georgia 30135          Michael C. Kendall
Telephone:  (770) 577-3559          Georgia Bar No. 414030
Facsimile:    (770) 577-8113          M. Brandon Howard
mckendall@kendallmandell.com          Georgia Bar No. 550524
mbhoward@kendallmandell.com          *Attorneys for Auto-Owners Ins. Co.*

- 36 -