# EXHIBIT

# A

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COLUMBIA COUNTY, GEORGIA

**2021ECV0149**

**FEB 26, 2021 10:30 AM**

Cindy Mason, Clerk
Columbia County, Georgia

**IN THE SUPERIOR COURT OF COLUMBIA COUNTY
STATE OF GEORGIA**

DANIEL & MARTINE SHEA, as Parents    )
and Next Friends of MORGAN JEAN-     )
MARIE SHEA, Deceased, and as Joint   )    CIVIL ACTION FILE NO.:
Co-Administrators of the ESTATE OF   )
MORGAN JEAN-MARIE SHEA,              )
                                     )
       Plaintiffs,                   )    **JURY TRIAL DEMANDED**
                                     )
v.                                   )
                                     )
BENTLEY DEVORE and GUY DEVORE, )
                                     )
       Defendants.                   )
_____ )

## COMPLAINT

COME NOW Plaintiffs, Daniel Shea and Martine Shea, Parents and Next Friends of

Morgan Jean-Marie Shea, Deceased, and as Joint Co-Administrators of the Estate of Morgan Jean-

Marie Shea, and file this Complaint against Defendants Bentley Devore and Guy Devore,

respectfully showing the Court as follows:

### PARTIES, VENUE, AND JURISDICTION

1.

On or about July 19, 2020, Morgan Jean-Marie Shea ("hereinafter "the decedent" and/or

"Morgan Shea"), an unmarried, adult female, died intestate and is survived by her parents and next

friends, Daniel and Martine Shea, who also serve as Joint Co-Administrators of the Estate of

Morgan Jean-Marie Shea.

2.

Plaintiffs Daniel and Martine Shea are citizens of the State of Georgia and surviving

parents of the decedent.  As such, Plaintiffs are the proper parties to bring a claim for the wrongful

death of Morgan Shea and such other claims as are permitted under Georgia law against these Defendants.

3.

Plaintiffs Daniel and Martine Shea are citizens of the State of Georgia and are the duly-appointed Joint Co-Administrators of the Estate of Morgan Jean-Marie Shea.  As such, Plaintiffs are the proper party to bring claims for medical expenses, funeral and burial expenses, conscious pain and suffering of Morgan Shea, and such other claims as are permitted under Georgia law against these Defendants.

4.

Defendant Bentley Devore is a citizen of the State of Georgia and may be served at his current residence: Columbia County Jail, 2273 County Camp Road, Appling, Columbia County, Georgia 30802.  Defendant Bentley Devore has been properly served with process in this action.

5.

Defendant Bentley Devore is subject to the jurisdiction and venue of this Court.

6.

Defendant Guy Devore is a citizen of the State of Georgia and may be served at his residence: 2374 Morris Callaway Road, Appling, Columbia County, Georgia 30802.  Defendant Guy Devore has been properly served with process in this action.

7.

Defendant Guy Devore is subject to the jurisdiction and venue of this Court.

8.

On the evening of July 18, 2020, Morgan Shea, a rising junior at Kennesaw State University, was a social guest at the residence of Defendant Guy Devore located at 2374 Morris Callaway Road, Appling, Columbia County, Georgia 30802.

9.

Morgan Shea's boyfriend at the time, Ryan Vaughn, was friends with or otherwise acquainted with Defendant Guy Devore and his sons, Defendant Bentley Devore, Brock Devore, and/or Garrett Devore.

10.

On July 18, 2020, Defendant Bentley Devore had been operating a recently acquired 2016 Can-Am utility vehicle with permission from Defendant Guy Devore continually throughout the day and evening and doing so recklessly and dangerously.

11.

Approximately 10 to 15 minutes after Morgan Shea arrived at Defendant Guy Devore's residence, Defendant Bentley Devore invited Morgan Shea to ride in the passenger seat of the vehicle.

12.

Defendant Bentley Devore drove the vehicle down the Devore driveway towards Morris Callaway Road.

13.

Defendant Bentley Devore thereafter unlawfully drove the vehicle south on Morris Callaway Road at a recklessly high rate of speed.

3

14.

Defendant Bentley Devore lost control of the vehicle when he drove it slightly off the west side of Morris Callaway Road and then overcorrected back onto Morris Callaway Road at which time the vehicle spun clockwise and then counterclockwise and overturned and landed on the driver's side, ejecting Morgan Shea and causing her to sustain serious bodily injury, conscious pain and suffering, and eventually death the following day.

15.

Defendant Bentley Devore had been consuming alcohol prior to and while operating the Devore's 2016 Can-Am utility vehicle and was legally intoxicated at the time of the wreck.

16.

Immediately after the wreck, Defendant Bentley Devore, who was not ejected from the Can-Am, left fatally injured Morgan Shea on the road and fled the scene to Terry and Rhonda Hyatt's house on Morris Callaway Road near where the wreck occurred.

17.

Defendant Bentley Devore asked neighbor Terry Hyatt to contact one of his brothers, Brock Devore and/or Garrett Devore, to request that someone come to the Hyatt residence or the scene of the wreck.

18.

Brock Devore and Hanna Hall arrived at the Hyatt residence where they encountered Defendant Bentley Devore briefly before going to the scene of the wreck.

4

19.

Deputies from the Columbia County Sheriff's Department and emergency medical services technicians arrived on scene to investigate and render aid to Morgan Shea before transporting her to Doctor's Hospital.

20.

Columbia County Deputy Sheriff Keith Warner located Defendant Bentley Devore at the Hyatt residence, where he had fled after the wreck while Morgan Shea lay helpless and dying on the road.

21.

Based on his conversation with Defendant Bentley Devore, his observation of Defendant Bentley Devore's injuries, and his investigation of the vehicle and wreck scene, Deputy Warner concluded that Defendant Bentley Devore was the driver of the Can-Am and at fault for causing the wreck.

22.

During his interaction with Defendant Bentley Devore, Deputy Warner smelled the odor of alcoholic beverages coming from Defendant Bentley Devore and administered a field sobriety HGN test and alco-sensor test to him.

23.

Deputy Warner stopped additional field sobriety testing of Defendant Bentley Devore when he observed the worsening of Defendant Bentley Devore's right ankle, which would have prevented Defendant from completing an accurate field sobriety test such as the "walk-and-turn."

24.

Deputy Warner instructed Defendant Bentley Devore to go to Doctor's Hospital emergency room for treatment of his injuries, which appeared to be mostly skin abrasions and a right ankle injury consistent with him being the driver of the vehicle based on damage to the Can-Am's accelerator.

25.

Defendant Bentley Devore refused Deputy Warner's request that Defendant Bentley Devore take the state-administered blood test to determine the amount of his blood alcohol concentration.

26.

Accordingly, Deputy Warner anticipated securing a search warrant for a blood test for Defendant Bentley Devore at the hospital.

27.

Defendant Bentley Devore did not arrive at Doctor's Hospital as he was instructed to do by Deputy Warner.

28.

Defendant Bentley Devore alleges that he went to McDuffie Regional Hospital for treatment but was refused by a nurse and left.

29.

The following day Deputy Warner tried to locate and arrest Defendant Bentley Devore at his home but Defendant Guy Devore refused to cooperate and help locate Defendant Bentley Devore.

30.

Defendant Bentley Devore remained at large until a warrant was issued for his arrest after which he was arrested and booked on multiple charges related to the wreck in which Morgan Shea was killed.

31.

Defendant Bentley Devore violated O.C.G.A. § 40-6-48 by driving the Can-Am on roadways laned for traffic, which constitutes negligence and negligence per se.

32.

Defendant Bentley Devore violated O.C.G.A. § 40-6-391(A)(1) by driving under the influence of alcohol, which constitutes negligence and negligence per se.

33.

Defendant Bentley Devore violated O.C.G.A. § 40-6-253 by possessing an open container of alcohol, which constitutes negligence and negligence per se.

34.

Defendant Bentley Devore violated O.C.G.A. § 40-5-121 by driving with a suspended or revoked license, which constitutes negligence and negligence per se.

35.

Defendant Bentley Devore violated O.C.G.A. § 40-6-390 by recklessly driving, which constitutes negligence and negligence per se.

36.

Defendant Bentley Devore violated O.C.G.A. § 40-6-393(A) homicide by vehicle, which constitutes negligence and negligence per se.

37.

Defendant Bentley Devore failed to operate the vehicle he was driving with the due care exercised by individuals in like or similar circumstances and/or operated the vehicle in a manner showing a disregard for the safety of others, including Morgan Shea.

38.

As a direct and proximate result of the wrongful conduct, negligence and negligence per se of Defendant Bentley Devore, Morgan Shea suffered serious bodily injury, conscious pain and suffering, and death, entitling Plaintiffs to recover for the wrongful death and conscious pain and suffering of Morgan Shea, as well as for the medical expenses, funeral and burial expenses, and such other damages as are permitted by Georgia law.

39.

Defendant Bentley Devore was negligent in causing the wreck with Morgan Shea as a passenger on July 18, 2020.

40.

At all times referenced herein, Morgan Shea exercised ordinary care and diligence under the circumstances then existing.

41.

Prior to and on the date of the subject collision described herein, Defendant Guy Devore knowingly and regularly made his residence and property available for his sons and co-residents, Defendant Bentley Devore, Brock Devore, and Garrett Devore, to consume alcohol while underage and allowed them to invite friends and acquaintances to the Devore residence to engage in illicit, illegal, and reckless conduct and behavior.

8

42.

Defendant Guy Devore was aware that Defendant Bentley Devore was consuming alcohol as a minor and operating the Can-Am dangerously and recklessly, including taking friends and acquaintances who had gathered at the Devore residence for rides on the vehicle.

43.

Defendant Guy Devore knowingly allowed Defendant Bentley Devore to consume alcohol to the point of noticeable intoxication and operate the Can-Am vehicle dangerously and recklessly including taking friends and acquaintances who had gathered at the Devore residence for rides on the vehicle.

44.

Defendant Guy Devore made his house available on a regular basis for the unlawful drinking of alcoholic beverages by his underage sons and their acquaintances.

45.

Defendant Guy Devore knew that his sons, including Defendant Bentley Devore, regularly operated motor vehicles after drinking alcoholic beverages at the Devore residence.

46.

Prior to the subject collision described herein, Defendant Guy Devore knew that Defendant Bentley Devore had a criminal record for reckless driving and fleeing and attempting to elude a police officer as Defendant Guy Devore was intoxicated and in the passenger seat of the vehicle at the time of the incident.

47.

On July 18, 2020, Defendant Guy Devore knew his sons, including Defendant Bentley Devore, and their guests were underage and drinking alcoholic beverages and taking rides on the Can-Am.

48.

Defendant Guy Devore owed a duty to Morgan Shea not to subject her to an unreasonable risk of harm.

49.

Defendant Guy Devore willfully, knowingly, and unlawfully furnished alcoholic beverages to Defendant Bentley Devore, who was not of legal drinking age, and knew Defendant Bentley Devore had been and/or would soon be driving the Can-Am vehicle when Morgan Shea arrived at the Devore residence.

50.

Defendant Guy Devore owed a duty to Morgan Shea by not furnishing alcohol to noticeably intoxicated Defendant Bentley Devore whom Defendant Guy Devore knew was driving the Can-Am on and around his property.

51.

Defendant Bentley Devore's reckless conduct and the potential for harm, including the death of Morgan Shea, was reasonably foreseeable based on Defendant Bentley Devore's incompetence and habitual recklessness, of which Defendant Guy Devore had actual knowledge.

52.

Defendant Guy Devore negligently entrusted the Can-Am to Defendant Bentley Devore while aware of Defendant Bentley Devore's reckless tendencies, past excessive alcohol and drug use, and intoxication on the night of July 18, 2020.

53.

Defendant Guy Devore provided the Can-Am for the use and convenience of his family, including Defendant Bentley Devore, and possessed authority and control over the vehicle at the time Defendant Bentley Devore was operating it and crashed, thus causing the death of Morgan Shea.

54.

At the time of the wreck as described above, Defendant Guy Devore owned the vehicle driven by Defendant Bentley Devore, who was operating said vehicle with Defendant Guy Devore's authorization and permission.

55.

At the time of the wreck as described above, the vehicle driven by Defendant Bentley Devore was maintained by Defendant Guy Devore for the comfort, use, pleasure, and convenience of the Devore family, including Defendant Bentley Devore.

56.

At the time of the wreck as described above, Defendant Bentley Devore was operating the subject vehicle with the permission of Defendant Guy Devore, who had relinquished control of the subject vehicle to Defendant Bentley Devore.

11

57.

Defendant Guy Devore owed and breached his duty owed to Morgan Shea to warn and prevent her from being injured in connection with reasonably foreseeable criminal acts caused by Defendant Bentley Devore given his dangerous propensities, of which Defendant Guy Devore had actual knowledge.

58.

Defendant Guy Devore violated O.C.G.A. § 51-1-40(b) by knowingly furnishing and serving Defendant Bentley Devore alcoholic beverages when he was in a state of noticeable intoxication, knowing that he would soon be driving a motor vehicle, conduct which constitutes negligence and negligence per se.

59.

Prior to furnishing, and serving Defendant Bentley Devore with alcoholic beverages, Defendant Guy Devore knew that a person shall not drive or be in actual physical control of any moving vehicle while under the influence of alcohol to the extent that it is less safe for the person to drive, much less a person such as Defendant Bentley Devore who is underage, habitually reckless, and a habitual abuser of alcohol.

60.

Defendant Guy Devore was negligent by not providing any meaningful management and/or supervision of Defendant Bentley Devore knowing Defendant Bentley Devore's habitual recklessness and history of chronic abuse of alcohol.

61.

As a direct and proximate result of the negligence of Defendant Guy Devore, Plaintiffs have suffered other recoverable damages recognized by the laws of the State of Georgia.

62.

One or more of the above-described acts of negligence on the part of Defendants was the cause-in-fact and proximate cause of the death of Morgan Shea on July 19, 2020. But for said negligence, the death of Morgan Shea would not have occurred.

63.

Defendants were and/or are negligent *per se*.

64.

Defendant Guy Devore is vicariously liable for the death of Morgan Shea from the wreck caused by Defendant Bentley Devore.

65.

Defendants are liable to Plaintiffs for all other acts of negligence that may be shown at trial of this case.

66.

Defendants' wrongful actions demonstrated willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences of their conduct, so as to warrant a recovery of punitive damages pursuant to O.C.G.A. § 51-12-5.1 to punish, penalize and deter the Defendants.

67.

Defendants have acted in bad faith, have been stubbornly litigious, and/or have caused the Plaintiffs unnecessary trouble and expense such that Plaintiffs are entitled to recover their attorney fees and expenses of litigation as allowed by O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for a judgment to be awarded to them and against Defendants for the following:

(a)     Process issue requiring Defendants to appear as provided by law to answer this Complaint;

(b)     That Defendants be timely served with process;

(c)     Plaintiffs have judgment against Defendants for the full value of the life of Morgan Shea, without deduction for expenses or necessaries had she lived;

(d)     Plaintiffs have judgment against Defendants for pre-death conscious pain and suffering of Morgan Shea;

(e)     Plaintiffs have judgment against Defendants for the medical bills and funeral bills incurred as a result of the death of Morgan Shea;

(f)     Plaintiffs be awarded punitive damages against Defendants in an amount sufficient to punish, penalize and deter the Defendants;

(g)     Plaintiffs be awarded attorney's fees and expenses of litigation in an amount which will be proven through the evidence at the time of trial;

(h)     That all costs be cast against Defendants;

(i)     Plaintiffs have a trial by jury on all issues and claims; and

(j)     Plaintiffs have such other relief as this Court deems just and appropriate under the circumstances.

**TRIAL BY JURY IS HEREBY DEMANDED.**

This 26th day of February, 2021.

Respectfully submitted,

**GLASS & ROBSON, LLC**

/s/ Robert F. Glass
ROBERT F. GLASS
State Bar of Georgia No. 115504
JAMES A. ROBSON
State Bar of Georgia No. 551053

*Attorneys for Plaintiff*

Glenridge Highlands One
5555 Glenridge Connector, Suite 550
Atlanta, GA 30342
(P): 404-751-4702
(F): 404-261-0024
(E): rfg@glassrobson.com
(E): jar@glassrobson.com

**HULL BARRETT, P.C.**

/s/ David E. Hudson
DAVID E. HUDSON
State Bar of Georgia No. 374450

*Co-Attorneys for Plaintiff*

801 Broad Street, 7th Floor
Augusta, GA 30901
(P): 706-722-4481
(F): 706-722-9779
(E): dhudson@hullbarrett.com

# EXHIBIT

# B



LIFE · HOME · CAR · BUSINESS

Stonecrest Branch Claim Office
3120 Stonecrest Boulevard
Suite 145
Stonecrest GA 30038
p. 877.416.5107 | f. 517.327.2323 | auto-owners.com
stonecrest.clm@aoins.com

March 26, 2021

Bentley Devore
2372 Morris Callaway Rd
Appling, Georgia 30802

RE: Claim Number:          300-0255181-2020
    Insured:               Bentley Devore
    Reported Date of Loss: 07/19/2020
    Policy Number:         50-951828-00

### *REGULAR & CERTIFIED MAIL - RETURN RECEIPT REQUESTED*
### Reservation of Rights

Dear Mr. Devore:

This correspondence modifies and supplants prior correspondence sent to you in this claim.

Auto-Owners Insurance Company has been made aware of a lawsuit filed against you and your father in the Superior Court of Columbia County, Georgia by Daniel and Martine Shea, as parents and next friends of Morgan Jean-Marie Shea, and as joint co-administrators of the estate of Morgan Jean-Marie Shea ("the Lawsuit"). The Lawsuit alleges that you drove a 2016 Can-Am utility vehicle ("vehicle") with your father's permission on July 18, 2020. It further claims that you invited Morgan Jean-Marie Shea to ride as a passenger. Additionally, the Lawsuit asserts that you "drove the vehicle south on Morris Callaway Road at recklessly high rate of speed," lost control of the vehicle, at which time you overcorrected causing the vehicle to spin clockwise, counterclockwise, and ultimately overturn. According to the Complaint, Morgan Jean-Marie Shea was ejected and died from her injuries the next day.

The Lawsuit states claims of negligence and negligence *per se* against you in connection with the death of Ms. Shea. Specifically, the Complaint filed with the Court states you were negligent and/or negligent *per se* in the following ways: (1) driving a Can-Am on roadways designed for automobile traffic; (2) driving under the influence of alcohol; (3) possessing an open container of alcohol; (4) driving with a suspended or revoked license; (5) recklessly driving; and (6) failing to operate the Can-Am with due care exercised by individuals in like or similar circumstances.

We have a claim opened under Homeowner's Policy Number 50-051828-00, ("Policy") with effective dates of 11/14/2019 to 11/14/2020, but we have identified serious questions about



whether your Policy provides coverage for any of the claims asserted or the relief sought in the Lawsuit. This letter serves to provide you with formal notice that Auto-Owners Insurance Company reserves all rights and defenses which it has in connection with the above-referenced Policy. Specifically, we are reserving our rights to later disclaim any obligation of Auto-Owners Insurance Company to: (1) provide you with insurance coverage under the Policy for the claims asserted in the Lawsuit, and (2) assert the defenses of non-coverage under the Policy. Auto-Owners is investigating the facts and allegations giving rise to the claim and lawsuit to determine whether coverage exists based on the Policy's terms, conditions, and exclusions, including, but not limited to, those provisions quoted above. At this time, Auto-Owners is uncertain as to its rights and is unclear how to proceed under the Policy. It is highly questionable as to whether any coverage is afforded under the Policy for the allegations and damages asserted in the lawsuit.

Section II of the Policy (Form 17903 (2-96)) reads, in relevant part, as follows:

## *1. COVERAGES*

### *a. Coverage E - Personal Liability*

*(1) **We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies. However, with respect to any **aircraft, motor vehicle, recreational vehicle** or **watercraft**:*

   *(a) **we** will pay damages because of or arising out of the ownership, maintenance, use, loading or unloading of only:*

     *6) **recreational vehicles** owned by any **insured** while on an **insured premises**;*

The Policy defines "bodily injury," "insured," "occurrence," "insured premises," "recreational vehicle," and "we" as follows:

***Bodily injury** means physical injury, sickness or disease sustained by a person including resulting death of that person. **Bodily injury** does not include **personal injury**.*

***Insured** means:*

   *a. **you**;*
   *b. **your relatives**; and*
   *c. any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**. In SECTION II - PERSONAL LIABILITY PROTECTION, **insured** also means:*
   *d. with respect to any vehicle covered by this policy:*
     *(1) any employee of a person in a., b. or c.*
     *above, while engaged in the employment of that person; or*
     *(2) any other person **you** permit to use the vehicle while on an **insured premises**.*
   *e. any person or organization legally responsible for animals or **watercraft** covered by this policy and owned by a person in a., b. or c. above. However, **we** will cover that person or organization only with respect to those animals or **watercraft**. **We** will not*



cover any person nor organization using or having custody of animals or **watercraft** in the course of any **business** nor without permission of the owner.

**Insured premises** *means:*

    **a.** *the* **residence premises***;*

    **b.** *any structures or grounds* **you** *use in connection with* **your residence premises***;*

    **c.** *any other premises* **you** *acquire during the policy term and which* **you** *intend to use as a* **residence premises***;*

    **d.** *that part of any other premises where* **you** *reside and which is shown in the Declarations;*

    **e.** *any part of a premises not owned by any* **insured** *but where any* **insured** *may be temporarily residing;*

    **f.** *any part of a premises not owned by any* **insured** *which any* **insured** *may rent for nonbusiness purposes, such as banquet halls and storage facilities;*

    **g.** *vacant land, other than farmland, owned by or rented to any* **insured***;*

    **h.** *Cemetery plots or burial vaults owned by any* **insured***;*

    **i.** *land owned by or rented to any* **insured** *on which a one or two family dwelling is being constructed as a residence for the* **insured***; and*

    **j.** *200 or less acres of farmland on which there are no buildings when such land is farmed by anyone other than any* **insured***.*

**Occurrence** *means an accident that results in* **bodily injury or property damage** *and includes, as one* **occurrence***, all continuous or repeated exposure to substantially the same generally harmful conditions.*

**Recreational vehicle** *means a motorized land vehicle designed primarily for recreational purposes but not designed for travel on public roads.* **Recreational vehicle** *does not include* **watercraft.**

**Residence premises** *means:*

    **a.** *the one or two family dwelling where* **you** *reside, including the building, the grounds and other structures on the grounds; or*

    **b.** *that part of any other building where* **you** *reside, including grounds and structures; which is described in the Declarations.*

**We, us** *or* **our** *means the Company providing this insurance.*

The Lawsuit seeks damages for the injuries sustained by and ultimate death of Ms. Shea. As a preliminary matter, it is our understanding that on July 18, 2020, you resided in your parent's household at 2374 Morris Callaway Road Appling, Georgia. Therefore, you are an "insured," as that term is used in the Policy. If you were not residing at that location on July 18, 2020, please let us know as soon as practicable.

Although you are an "insured," there is no coverage here for the injuries and ultimate death of Ms. Shea. The vehicle, which was owned by your father, was not being used on the "insured



premises," as that term is defined in the policy, at the time Ms. Shea was ejected. Rather, the vehicle was being driven down Morris Callaway Road and off the premises of the dwelling at 2374 Morris Callaway Road at the time of the wreck.

Moreover, under the Amendatory Endorsement of the Policy, coverage is excluded. The Amendatory Endorsement, Form 57591 (2-14) reads in relevant part:

Under **SECTION II- PERSONAL LIABILITY PROTECTION, 2. EXCLUSIONS, a. Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply:

...

*(12) to **bodily injury** or **property damage** reasonably expected or intended by the **insured**. This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended. However, this exclusion does not apply to **bodily injury** or **property damage** arising out of the use of reasonable force by the **insured** to protect persons or property.*

Here, it is reasonably expected that if a vehicle is driven at excessive rates of speed down a roadway the operator of the vehicle could lose control and any passenger on the vehicle could be ejected resulting in serious injury and/or death. Therefore, coverage for this claim is excluded by the plain terms of the Amendatory Endorsement.

For these reasons, and for any others which may become known in the future, Auto-Owners will be continuing its investigation into the subject incident and the claims asserted against you, take whatever steps are necessary to protect our mutual interests, and provide a defense to you in the above-referenced Lawsuit, with the understanding that we do so under a complete reservation of rights under the above-referenced policy and without waiving our right to disclaim or deny coverage in the future under any or all policy terms identified.

All rights, terms, conditions, and exclusions in the above-referenced policy are in full force and effect and are completely reserved. No action by any employee, agent, attorney, or other person on behalf of Auto-Owners; or hired by Auto-Owners on your behalf; shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the policy or applicable Georgia law.

In fact, by sending this reservation of rights letter, Auto-Owners expressly reserves the right to rely on all terms and conditions in deciding whether or not coverage is afforded under the policy. Auto-Owners further reserves the right to disclaim coverage altogether and to assert additional policy defenses and/or amend this document if substantive information is received during the pendency of the Lawsuit. Likewise, should you receive additional information which may assist the clarification of coverage, the information should be forwarded to us immediately.

Auto-Owners also expressly reserves the right to withdraw from the defense of this litigation should it be determined that no coverage exists. To that end, Auto-Owners reserves its right to file an action for declaratory judgment in order to resolve the outstanding coverage



**INSURANCE**

issues. In the action for declaratory judgment, Auto-Owners would seek a determination from a court of appropriate jurisdiction as to whether the claims asserted against you in the above-referenced Lawsuit are covered under any insurance contract issued by Auto-Owners. Because of the possibility or likelihood that coverage is not afforded under such policy for the claims being made against you, you have the right to retain your own counsel, at your expense, to assist with your defense and protect your interests.  Indeed, it is our understanding that you have already done so.

The defense of the Lawsuit has been assigned to Attorney Charles Mayers with Mayers Law firm  in Augusta Georgia. His phone number is 706-724-1698.

At this time, we are still investigating this claim under a reservation of rights.  You are formally placed on notice that any activity on our part by way of investigation and/or settlement which we may undertake, or any defense, which we may undertake in your behalf, arising out of legal action or actions instituted against you, does not constitute a waiver of any our rights.

This correspondence is not intended to be an exhaustive statement of Auto-Owners' position concerning its coverages under the policy. Auto-Owners' coverage determination is based upon the policy provisions, the information you have provided and Auto-Owners' investigation. If you disagree with our determination, or if there is any additional information you believe to be relevant to the question of coverage, or if you believe that the information upon which Auto-Owners has relied is not accurate, please advise us and forward any additional relevant information for our review immediately. Any further investigation of the claim shall not serve as a waiver of any rights under the available policy of insurance.

Sincerely,

Tara Woods, AIC
Senior Claim Representative
Stonecrest Claims Branch
TW/cc



Stonecrest Branch Claim Office
3120 Stonecrest Boulevard
Suite 145
Stonecrest GA 30038
p. 877.416.5107 | f. 517.327.2323 | auto-owners.com
stonecrest.clm@aoins.com

March 26, 2021

Guy Devore
2372 Morris Callaway Rd
Appling, Georgia 30802

RE: Claim Number:        300-0255181-2020
    Insured:             Guy and Karen Devore
    Reported Date of Loss: 07/19/2020
    Policy Number:       50-951828-00

***REGULAR & CERTIFIED MAIL - RETURN RECEIPT REQUESTED***
**Reservation of Rights**

Dear Mr. Devore:

This correspondence modifies and supplants prior correspondence sent to you in this claim.

Auto-Owners Insurance Company has been made aware of a lawsuit filed against you and your son, Bentley Devore, in the Superior Court of Columbia County, Georgia by Daniel and Martine Shea, as parents and next friends of Morgan Jean-Marie Shea, and as joint co-administrators of the estate of Morgan Jean-Marie Shea ("the Lawsuit"). The Lawwsuit alleges that Bentley drove with your express permission a 2016 Can-Am utility vehicle ("vehicle") with Morgan Jean-Marie Shea as a passenger on July 18, 2020. Additionally, the Lawsuit asserts that Bentley "drove the vehicle south on Morris Callaway Road at recklessly high rate of speed," lost control of the vehicle at which point it overcorrected, spun clockwise, counterclockwise and ultimately overturned and landed on its driver's side. According to the Complaint, Morgan Jean-Marie Shea was ejected and died from her injuries the next day.

The Lawsuit states claims of negligence and negligence *per se* against you and your son in connection with the death of Ms. Shea. Specifically, the Complaint filed with the Court states you were negligent or negligent *per se* in the following ways: (1) furnishing and serving Bentley Devore, a minor, alcoholic beverages with knowledge that Bentley was intoxicated and would soon be driving a vehicle; and (2) for not providing any meaningful management and/or supervision of Bentley knowing of his habitual recklessness and history of chronic alcohol abuse. The Lawsuit further maintains you are vicariously liable for Ms. Shea's death.

We have a claim opened under your homeowner's personal liability policy, Number 50-051828-00, ("Policy") with effective dates of 11/14/2019 to 11/14/2020, but we have identified



serious questions about whether your Policy provides coverage for any of the claims asserted or the relief sought in the Lawsuit. This letter serves to provide you with formal notice that Auto-Owners Insurance Company reserves all rights and defenses which it has in connection with the above-referenced Policy. Specifically, we are reserving our rights to later disclaim any obligation of Auto-Owners Insurance Company to: (1) provide you with insurance coverage under the Policy for the claims asserted in the Lawsuit, and (2) assert the defenses of non-coverage under the Policy. Auto-Owners is investigating the facts and allegations giving rise to the claim and lawsuit to determine whether coverage exists based on the Policy's terms, conditions, and exclusions, including, but not limited to, those provisions quoted above. At this time, Auto-Owners is uncertain as to its rights and is unclear how to proceed under the Policy. It is highly questionable as to whether any coverage is afforded under the Policy for the allegations and damages asserted in the lawsuit.

Section II of the Policy (Form 17903 (2-96)) reads, in relevant part, as follows:

### 1. COVERAGES

#### a. Coverage E - Personal Liability

*(1)* ***We*** *will pay all sums any* ***insured*** *becomes legally obligated to pay as damages because of or arising out of* ***bodily injury*** *or* ***property damage*** *caused by an* ***occurrence*** *to which this coverage applies. However, with respect to any* ***aircraft, motor vehicle, recreational vehicle*** *or* ***watercraft****:*

*(a)* ***we*** *will pay damages because of or arising out of the ownership, maintenance, use, loading or unloading of only:*

*6)* ***recreational vehicles*** *owned by any* ***insured*** *while on an* ***insured premises****;*

The Policy defines "bodily injury," "insured," "occurrence," "insured premises," "recreational vehicle," and "we" as follows:

***Bodily injury*** *means physical injury, sickness or disease sustained by a person including resulting death of that person.* ***Bodily injury*** *does not include* ***personal injury****.*

***Insured*** *means:*
   *a.* ***you****;*
   *b.* ***your relatives****; and*
   *c. any other person under the age of 21 residing with* ***you*** *who is in* ***your*** *care or the care of a* ***relative****. In SECTION II - PERSONAL LIABILITY PROTECTION,* ***insured*** *also means:*
   *d. with respect to any vehicle covered by this policy:*
      *(1) any employee of a person in a., b. or c.*
      *above, while engaged in the employment of that person; or*
      *(2) any other person* ***you*** *permit to use the vehicle while on an* ***insured premises****.*
   *e. any person or organization legally responsible for animals or* ***watercraft*** *covered by this policy and owned by a person in a., b. or c. above. However,* ***we*** *will cover that person or organization only with respect to those animals or* ***watercraft****.* ***We*** *will not*



cover any person nor organization using or having custody of animals or **watercraft** in the course of any **business** nor without permission of the owner.

**Insured premises** *means:*

    **a.** *the* **residence premises***;*

    **b.** *any structures or grounds* **you** *use in connection with* **your residence premises***;*

    **c.** *any other premises* **you** *acquire during the policy term and which* **you** *intend to use as a* **residence premises***;*

    **d.** *that part of any other premises where* **you** *reside and which is shown in the Declarations;*

    **e.** *any part of a premises not owned by any* **insured** *but where any* **insured** *may be temporarily residing;*

    **f.** *any part of a premises not owned by any* **insured** *which any* **insured** *may rent for nonbusiness purposes, such as banquet halls and storage facilities;*

    **g.** *vacant land, other than farmland, owned by or rented to any* **insured***;*

    **h.** *Cemetery plots or burial vaults owned by any* **insured***;*

    **i.** *land owned by or rented to any* **insured** *on which a one or two family dwelling is being constructed as a residence for the* **insured***; and*

    **j.** *200 or less acres of farmland on which there are no buildings when such land is farmed by anyone other than any* **insured***.*

**Occurrence** *means an accident that results in* **bodily injury or property damage** *and includes, as one* **occurrence***, all continuous or repeated exposure to substantially the same generally harmful conditions.*

**Recreational vehicle** *means a motorized land vehicle designed primarily for recreational purposes but not designed for travel on public roads.* **Recreational vehicle** *does not include* **watercraft.**

**Residence premises** *means:*

    **a.** *the one or two family dwelling where* **you** *reside, including the building, the grounds and other structures on the grounds; or*

    **b.** *that part of any other building where* **you** *reside, including grounds and structures; which is described in the Declarations.*

**We, us** *or* **our** *means the Company providing this insurance.*

The Lawsuit seeks damages for the injuries sustained by and ultimate death of Ms. Shea. Yet, there is no coverage as the Policy states it only covers damages because of or arising out of the use of a recreational vehicle owned by you while on the insured premises. The vehicle was not being used on the "insured premises," as that term is defined in the policy, at the time Ms. Shea was ejected. Rather, the vehicle was being driven down Morris Callaway Road and off the premises of the dwelling at 2374 Morris Callaway Road at the time of the wreck.



Moreover, under the Amendatory Endorsement of the Policy, coverage is excluded.   The Amendatory Endorsement, Form 57591 (2-14) reads in relevant part:

*Under **SECTION II- PERSONAL LIABILITY PROTECTION, 2. EXCLUSIONS, a. Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply:*

...

*(12) to **bodily injury** or **property damage** reasonably expected or intended by the **insured**. This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended. However, this exclusion does not apply to **bodily injury** or **property damage** arising out of the use of reasonable force by the **insured** to protect persons or property.*

Here, it is reasonably expected that if a vehicle is driven at excessive rates of speed down a roadway, the operator of the vehicle could lose control and any passenger on the vehicle could be ejected resulting in serious injury and/or death.  Moreover, it is reasonably expected that if you allow an intoxicated minor with a known record of reckless driving to operate your vehicle, this could result in serious injury or death.  Therefore, coverage for this claim is excluded by the plain terms of the Amendatory Endorsement.

For these reasons, and for any others which may become known in the future, Auto-Owners will be continuing its investigation into the subject incident and the claims asserted against you, take whatever steps are necessary to protect our mutual interests, and provide a defense to you in the above-referenced Lawsuit, with the understanding that we do so under a complete reservation of rights under the above-referenced policy and without waiving our right to disclaim or deny coverage in the future under any or all policy terms identified.

All rights, terms, conditions, and exclusions in the above-referenced policy are in full force and effect and are completely reserved. No action by any employee, agent, attorney, or other person on behalf of Auto-Owners; or hired by Auto-Owners on your behalf; shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the policy or applicable Georgia law.

In fact, by sending this reservation of rights letter, Auto-Owners expressly reserves the right to rely on all terms and conditions in deciding whether or not coverage is afforded under the policy. Auto-Owners further reserves the right to disclaim coverage altogether and to assert additional policy defenses and/or amend this document if substantive information is received during the pendency of the Lawsuit. Likewise, should you receive additional information which may assist the clarification of coverage, the information should be forwarded to us immediately.

Auto-Owners also expressly reserves the right to withdraw from the defense of this litigation should it be determined that no coverage exists. To that end, Auto-Owners reserves its right to file an action for declaratory judgment in order to resolve the outstanding coverage issues. In the action for declaratory judgment, Auto-Owners would seek a determination from a court of appropriate jurisdiction as to whether the claims asserted against you in the above-



referenced Lawsuit are covered under any insurance contract issued by Auto-Owners. Because of the possibility or likelihood that coverage is not afforded under such policy for the claims being made against you, you have the right to retain your own counsel, at your expense, to assist with your defense and protect your interests.  Indeed, it is our understanding that you have already done so.

The defense of the Lawsuit has been assigned to Attorney Charles Mayers with Mayers Law firm  in Augusta Georgia. His phone number is 706-724-1698.

At this time, we are still investigating this claim under a reservation of rights.  You are formally placed on notice that any activity on our part by way of investigation and/or settlement which we may undertake, or any defense, which we may undertake in your behalf, arising out of legal action or actions instituted against you, does not constitute a waiver of any our rights.

This correspondence is not intended to be an exhaustive statement of Auto-Owners' position concerning its coverages under the policy. Auto-Owners' coverage determination is based upon the policy provisions, the information you have provided and Auto-Owners' investigation. If you disagree with our determination, or if there is any additional information you believe to be relevant to the question of coverage, or if you believe that the information upon which Auto-Owners has relied is not accurate, please advise us and forward any additional relevant information for our review immediately. Any further investigation of the claim shall not serve as a waiver of any rights under the available policy of insurance.

Sincerely,

Tara Woods, AIC
Senior Claim Representative
Stonecrest Claims Branch
TW/cc



**Stonecrest Branch Claim Office**
3120 Stonecrest Boulevard
Suite 145
Stonecrest GA 30038
p. 877.416.5107 | f. 517.327.2323 | auto-owners.com
stonecrest.clm@aoins.com

April 30, 2021

## *CERTIFIED MAIL - RETURN RECEIPT REQUESTED & FIRST-CLASS MAIL*

Bentley Devore
2372 Morris Callaway Road
Appling, GA, 30802

Bentley Devore
Columbia County Jail
2273 County Camp Road
Appling, GA 30802

| | | |
|---|---|---|
| RE: | Claim Number: | 300-0255181-2020 |
| | Policy Number: | 50-51828-00 |
| | Insured: | Guy Devore and Karen Devore |
| | Insurer: | Auto-Owners Insurance Company |
| | Claimant: | Daniel and Martine Shea, as parents and next friends of Morgan Jean-Marie Shea, and as joint co-administrators of the estate of Morgan Jean-Marie Shea |
| | Lawsuit: | *Daniel and Martine Shea v. Bentley Devore, et al.,* CAFN: 2021EC0149 Superior Court of Columbia County State of Georgia |
| | Subject: | Supplemental Reservation of Rights |

## **SUPPLEMENTAL RESERVATION OF RIGHTS LETTER**

Dear Bentley Devore:

This letter supplements the previous correspondence sent to you regarding the above-referenced matter. Specifically, Auto-Owners Insurance Company ("Auto-Owners") sends this letter to supplement its prior reservation of rights letter dated March 26, 2021, and with respect to the above-referenced claim and lawsuit filed against you in the Superior Court of Columbia County, CAFN 2021EC0149, by Daniel and Martine Shea, as parents and next friends of Morgan Jean-Marie Shea, and as joint co-administrators of the estate of Morgan Jean-Marie Shea (the "Underlying Lawsuit").

Auto-Owners insures Guy Devore and Karen Devore under a homeowners insurance policy, policy number 50-951-828-00, with effective dates of November 14, 2019 through November 14, 2020 (the "Policy"). You are hereby formally advised that Auto-Owners is reserving all rights and defenses which it has under the Policy and in connection with the above-referenced claim and Underlying Lawsuit. You are further advised that Auto-Owners is reserving its right to disclaim any obligation under the Policy and to assert the defense of non-coverage under the Policy, and that any defense undertaken by Auto-Owners in connection with the above-referenced claim and Underlying Lawsuit, including the hiring of counsel for the purpose of representing your interests with respect thereto, is subject to this full reservation of rights and does not constitute a waiver of any of our rights or defenses under the Policy.



After reviewing the complaint filed against you in the Underlying Lawsuit, together with the Policy's terms, conditions, and exclusions, and along with Auto-Owners' continued investigation of the same, it is questionable as to whether the Policy affords coverage to you with respect to the above-referenced claim or the Underlying Lawsuit. This letter, therefore, serves to provide you with formal notice that Auto-Owners reserves all rights and defenses which it has in connection with the Policy. Specifically, Auto-Owners is reserving its rights to later disclaim any obligation to provide you with insurance coverage under the Policy for the above-referenced claim and the Underlying Lawsuit, and to assert any and all defenses of non-coverage under the Policy. This correspondence specifically supplements Auto-Owners' previous reservation of rights letter, dated March 26, 2021, and such letter is specifically incorporated herein by reference as if fully stated and asserted herein.

## FACTS

As we understand the circumstances alleged by the Underlying Lawsuit, on July 18, 2020, Morgan Jean-Marie Shea ("Morgan") was a guest at yours and your parents' residence located at 2374 Morris Callaway Road, Appling, Columbia County, Georgia (the "Property"). At that time, you were operating a 2016 Cam-Am utility vehicle owned by your father, Guy Devore ("Guy"), and with Guy's permission (the "Vehicle"). While these are the allegations, it appears that you may have owned the Vehicle, at least in part, and that Guy did not own it. Soon after she arrived at the Property, you invited Morgan to ride in the Vehicle's passenger seat. Once Morgan entered the Vehicle, you drove it off Guy's Property and down Morris Callaway Road. Because you were driving the Vehicle at a dangerous and recklessly high speed, and because you were intoxicated by alcohol that was provided to you by Guy on the Property, you lost control of the Vehicle on Morris Callaway Road, which ultimately caused Morgan to be ejected from the Vehicle and onto Morris Callaway Road (the "Incident"). While these are the allegations, you have reported that Morgan was in fact driving at the time of the Incident. Morgan died the next day as a result of the injuries she sustained during the Incident.

The Underlying Lawsuit alleges that Guy knowingly and regularly made the Property available for the unlawful consumption of alcohol by minors, including you. The Underlying Lawsuit also alleges that (1) you were noticeably and illegally intoxicated on July 18, 2020; (2) you were noticeably intoxicated at the time you and Morgan were in the Vehicle; (3) you were driving the Vehicle illegally and while noticeably intoxicated, including at the time Morgan joined you in the Vehicle; (4) you were dangerously, negligently, and recklessly operating the Vehicle at a high rate of speed while Morgan was in the Vehicle with you; (5) you overturned the Vehicle, causing Morgan to be ejected from it and causing her death; and (6) you violated several provisions of Georgia law with respect to the Incident, including O.C.G.A. §§ 40-6-48, 40-6-391(A)(1), 40-6-253, 40-5-121, 40-6-390, and 40-6-393(A). The Underlying Lawsuit further alleges that, based on your condition and conduct on July 18, 2020, and your history of alcohol abuse and reckless conduct, the Incident and Morgan's death were events that were reasonably foreseeable by you.

## THE POLICY

The Policy issued by Auto-Owners provides, in relevant part, as follows:

### HOMEOWNERS POLICY
### FORM 3
### INSURING AGREEMENT

The attached Declarations describe the property **we** insure and the Coverages and Limits of Insurance for which **you** have paid a premium. In reliance upon **your** statements in the Declarations and application(s), **we** agree to provide insurance subject to all terms and conditions of this policy. In return, **you** must pay the premium and comply with all



the terms and conditions of this policy. This policy applies to losses, **bodily injury**, **property damage** and **personal injury** which occur during the policy term shown in the Declarations.

## DEFINITIONS

To understand this policy, **you** must understand the meaning of the following words. These words appear in **bold face type** whenever used in this policy and endorsements attached to this policy.

. . .

2.   **Bodily injury** means physical injury, sickness or disease sustained by a person including resulting death of that person. **Bodily injury** does not include **personal injury**.

. . .

5.   **Insured** means:

   a.   **you**;

   b.   **your relatives**; and

   c.   any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**.

   In SECTION II – PERSONAL LIABILITY PROTECTION, **insured** also means:

   d.   with respect to any vehicle covered by this policy:

   . . .

   (2)   any other person **you** permit to use the vehicle while on an **insured premises**.

   . . .

6.   **Insured premises** means:

   a.   the **residence premises**;

   b.   any structures or grounds **you** use in connection with **your residence premises**;

   c.   any other premises **you** acquire during the policy term and which **you** intend to use as a **residence premises**;

   d.   that part of any other premises where **you** reside and which is shown in the Declarations;

   e.   any part of a premises not owned by any **insured** but where any **insured** may be temporarily residing;



**INSURANCE**

    f.    any part of a premises not owned by any **insured** which any **insured** may rent for nonbusiness purposes, such as banquet halls and storage facilities

    g.    vacant land, other than farmland, owned by or rented to any **insured**;

    h.    Cemetery plots or burial vaults owned by any **insured**;

    i.    land owned by or rented to any **insured** on which a one or two family dwelling is being constructed as a residence for the **insured**; and

    j.    200 or less acres of farmland on which there are no buildings when such land is farmed by anyone other than any **insured**.

7.    **Motor vehicle** means a motorized land vehicle. **Motor vehicle** does not include a **recreational vehicle**.

8.    **Occurrence** means an accident that results in **bodily injury** or **property damage** and includes, as one **occurrence**, all continuous or repeated exposure to substantially the same generally harmful conditions.

. . .

12.    **Recreational vehicle** means a motorized land vehicle designed primarily for recreational purposes but not designed for travel on public roads. **Recreational vehicle** does not include **watercraft**.

13.    **Relative** means a person who resides with **you** and who is related to **you** by blood, marriage or adoption. **Relative** includes a ward or foster child who resides with **you**.

. . .

15.    **Residence premises** means:

    a.    the one or two family dwelling where **you** reside, including the building, the grounds and other structures on the grounds; or

    b.    that part of any other building where **you** reside, including grounds and structures;

which is described in the Declarations.

. . .

17.    **You** or **your** means any named **insured** shown in the Declarations and if an individual, such individual named **insured's** spouse who resides in the same household.

. . .

19.    **We**, **us**, or **our** means the Company providing this insurance.

. . .



## SECTION II – PERSONAL LIABILITY PROTECTION

1. **COVERAGES**

   a. **Coverage E – Personal Liability**

      (1)  **We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies. However, with respect to any **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**:

         (a)  **we** will pay damages because of or arising out of the ownership, maintenance, use, loading or unloading of only:

            . . .

            6)  **recreational vehicles** owned by any **insured** while on an **insured premises**;

            . . .

      **We** will settle or defend, as **we** consider appropriate, any claim or **suit** for damages covered by this policy. **We** will do this at **our** expense, using attorneys of **our** choice. This agreement to settle or defend claims or **suits** ends when **we** have paid the limit of **our** liability.

            . . .

2. **EXCLUSIONS**

   a. **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply:

            . . .

      (7)  to **bodily injury** or **property damage** because of or arising out of the ownership, maintenance, use, loading or unloading of any **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**. This exclusion does not apply:

         (a)  to **aircraft, motor vehicles, recreational vehicle** or **watercraft** described under 1. COVERAGES, a. Coverage E – Personal Liability, (1)(a)1) – (1)(a)9) and (1)(b)1) – (1)(b)3);

            . . .

      (12)  to **bodily injury** or **property damage** reasonably expected or intended by the **insured**. This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than



that reasonably expected or intended. However, this exclusion does not apply to **bodily injury** or **property damage** arising out of the use of reasonable force by the **insured** to protect persons or property.

. . . .

Homeowners Policy Form 3 (Form No. 17903 (2-96)); You and Your Amendatory Endorsement (Form No. 57664 (6-15)); Amendatory Endorsement (Form No. 57591 (2-14)).

## **SUPPLEMENTAL RESERVATION OF RIGHTS**

Auto-Owners is continuing to investigate the facts and allegations of the above-discussed claim and the Underlying Lawsuit to determine whether coverage exists based on the Policy's insuring agreements, terms, conditions, and exclusions, including, but not limited to, those provisions quoted above. At this time, Auto-Owners is uncertain as to its rights and is unclear how to proceed under the Policy. Indeed, it is highly questionable as to whether any coverage is afforded under the Policy for the above-discussed claim and the claims asserted in the Underlying Lawsuit.

Specifically, the allegations giving rise to the above-referenced claim, the Underlying Lawsuit, and any resulting damages or injuries, may not be covered under the Policy because:

(1)    The Policy specifically affords coverage only for "those sums that any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** . . . caused by an **occurrence**" to which the Policy applies. However, the Underlying Lawsuit repeatedly alleges that you intentionally and knowingly consumed alcohol illegally on the date of the Incident; that you intentionally and knowingly drove the Vehicle while illegally intoxicated on such date; that you knowingly and intentionally operated the Vehicle in a dangerous and reckless manner while illegally intoxicated; and that you knowingly and intentionally operated the Vehicle in a dangerous and reckless manner while Morgan rode in the Vehicle's passenger seat. As a result, the Incident, Morgan's injuries, and her death were not the unexpected result of an unforeseen or unexpected act that was involuntarily or unintentionally done. Based on these allegations, it is questionable whether your liability for the Incident or the damages at issue were "caused by an **occurrence**," as defined by the Policy and Georgia law.

(2)    The Policy specifically affords coverage only for "damages because of or arising out of the ownership, maintenance, use, loading or unloading of only . . . **recreational vehicles** owned by any **insured** while on an **insured premises**." The Underlying Lawsuit specifically alleges that the Incident took place because of or arose out of the use of the Vehicle, which constitutes a "recreational vehicle" under the Policy. However, the Underlying Lawsuit clearly alleges that the Incident took place off the Property. Specifically, the Underlying Lawsuit alleges that you drove Morgan and the Vehicle off Guy's Property and onto Morris Callaway Road, where the Incident took place and caused Morgan's death. Morris Callaway Road is neither Guy's Property nor an "insured premises." Based on these allegations, it is questionable whether any claims or damages arising from the Incident are afforded coverage by the Policy.

(3)    Except in limited circumstances, the Policy specifically excludes from coverage all "**bodily injury** . . . because of or arising out of the ownership, maintenance, use, loading or unloading of any . . . **recreational vehicle** . . . ." The Underlying Lawsuit specifically alleges that the Incident took place because of or arose out of the use of the Vehicle, which constitutes a "recreational vehicle" under the Policy. However, the Policy unambiguously excludes from coverage any bodily injuries because of or arising from the use of a recreational vehicle. None of the limited exceptions to this exclusion apply under the circumstances. Based on these allegations, it is questionable whether any claims or damages arising from the Incident are afforded coverage by the Policy.



(4)     The Policy specifically excludes from coverage all "**bodily injury** . . . reasonably expected or intended by the **insured**." Such exclusion applies "even if the **bodily injury** . . . is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended." The Underlying Lawsuit specifically alleges that (a) you were noticeably and illegally intoxicated on the date of the Incident; (b) you were noticeably intoxicated at the time you and Morgan were in the Vehicle; (c) you were driving the Vehicle illegally and while noticeably intoxicated, including at the time Morgan joined you in the Vehicle; (d) you were dangerously, negligently, and recklessly operating the Vehicle at a high rate of speed while Morgan was in the Vehicle with you; (e) you overturned the Vehicle, causing Morgan to be ejected from it and causing her death; and (f) you violated several provisions of Georgia law with respect to the Incident, including O.C.G.A. §§ 40-6-48, 40-6-391(A)(1), 40-6-253, 40-5-121, 40-6-390, and 40-6-393(A). The Underlying Lawsuit further alleges that, based on your condition and conduct on July 18, 2020, and your history of alcohol abuse and reckless conduct, the Incident and Morgan's death were events that were reasonably foreseeable by you. Accordingly, it is questionable whether you "reasonably expected or intended" bodily injury to result from your dangerous, illegal, and reckless use of the Vehicle on the date of the Incident. Based on these allegations, it is questionable whether any claims or damages arising from the Incident are afforded coverage by the Policy.

For these reasons, and for any others which may become known in the future, Auto-Owners will be continuing its investigation into the above-discussed claim and Underlying Lawsuit. Auto-Owners will also take whatever steps are necessary to protect our mutual interests respecting the above-discussed claim and Underlying Lawsuit, with the understanding that it does so under a complete and total reservation of rights under the above-referenced Policy, and without waiving its right to disclaim or deny coverage in the future under any or all of the Policy's insuring agreements, terms, conditions, and exclusions, as identified above.

All rights, terms, conditions, and exclusions in the above-referenced Policy are in full force and effect and are completely reserved. No action by any employee, agent, attorney, or other person on behalf of Auto-Owners; or hired by Auto-Owners on your behalf; shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the above-discussed Policy or under applicable law.

In fact, by sending this supplemental reservation of rights letter, Auto-Owners expressly reserves the right to rely on all of the Policy's insuring agreements, terms, conditions, and exclusions in deciding whether or not coverage is afforded under the Policy. Auto-Owners further reserves the right to disclaim coverage altogether and to assert additional policy defenses and/or amend this document if substantive information is received during its investigation of the above-discussed claim and Underlying Lawsuit. Likewise, should you receive additional information which may assist Auto-Owners in clarifying coverage under the above-discussed Policy, such information should be forwarded to us immediately.

Auto-Owners also expressly reserves the right to withdraw from any defense provided to you respecting the above-discussed claim and Underlying Lawsuit should it be determined that no coverage exists. To that end, Auto-Owners reserves the right to file an action for declaratory judgment in order to resolve any outstanding coverage issues. In any action for declaratory judgment, Auto-Owners would seek a determination from a court of appropriate jurisdiction as to whether any allegations asserted against you with respect to the above-discussed claim and Underlying Lawsuit are covered under any insurance contract issued by Auto-Owners. At this time, Auto-Owners is uncertain as to its rights and is unclear how to proceed under the Policy. Indeed, it is highly questionable as to whether any coverage is afforded under the Policy for any liability arising out of the above-discussed claim and Underlying Lawsuit.

Your defense with respect to the above-discussed claim and Underlying Lawsuit has been assigned to Attorney Charles Mayers with the Mayers Law Firm in Augusta, Georgia. His phone number is 706-724-1698. Please be assured that Mr. Mayers is your attorney and does not represent Auto-Owners. However, because of the possibility



**INSURANCE**

or likelihood that coverage is not afforded under the Policy for the allegations being made against you, you have the right to retain your own counsel, at your expense, to assist with your defense and to protect your interests.

At this time, we are still investigating the above-discussed claim and Underlying Lawsuit under a reservation of rights. You are formally placed on notice that any activity on our part by way of investigation and/or settlement which we may undertake, or any defense which we may undertake on your behalf, arising out of any legal action or actions instituted against you, does not constitute a waiver of any our rights.

The explanation contained in this supplemental reservation of rights, as set forth above, is based upon the information currently available to Auto-Owners, the Policy's provisions, any information you have provided, and Auto-Owners' investigation of the above-discussed claim and Underlying Lawsuit. If you disagree with our determination, or if there is any additional information you believe to be relevant to the question of coverage, or if you believe that the information upon which Auto-Owners has relied is not accurate, please advise us and forward any additional relevant information for our review immediately. Any further investigation of the claim shall not serve as a waiver of any rights under the available policy of insurance.

Moreover, this correspondence is not intended to be an exhaustive statement of Auto-Owners' position concerning the coverages under the Policy. In fact, this supplemental reservation of rights letter is based upon all the terms, conditions, and exclusions in the Policy, even if not excerpted above, and no waiver or estoppel is intended or created by this letter. All rights are reserved to supplement this letter and to modify or withdraw the supplemental reservation of rights if additional information is received. Auto-Owners also expressly reserves the right to commence a declaratory judgment action to determine its rights and obligations under the above-discussed Policy, if necessary.

Respectfully,

Tara Woods

Tara Woods, AIC
Senior Claim Representative
Stonecrest Claims Branch
877-416-5107 ext 55632

TW/da

Insert shipping
document here.

ORIGIN ID:MULA      (877) 416-5107
DEBBIE ADAMS
AUTO OWNERS INSURANCE
3120 STONECREST BLVD
SUITE 145
LITHONIA, GA 30038
UNITED STATES US

SHIP DATE: 30APR21
ACTWGT: 1.00 LB
CAD: 105240442/INET4340

BILL SENDER

TO  **BENTLEY DEVORE**
**COLUMBIA COUNTY JAIL**
**2273 COUNTY CAMP ROAD**

**APPLING GA 30802**
(706) 541-9460            REF
INV
PO:                    DEPT



**FedEx**
Express

E

**MON - 03 MAY 4:30P**
**STANDARD OVERNIGHT**

TRK#  **7736 0190 1097**
0201

30802
GA-US  **CAE**

**XH AGSZJ**



Do not ship liquids, blood, or clinical specimens in this packaging.

FedEx Ship Manager - Print Your Label(s)

4/30/2021



Stonecrest Branch Claim Office
3120 Stonecrest Boulevard
Suite 145
Stonecrest GA 30038
p. 877.416.5107 | f. 517.327.2323 | auto-owners.com
stonecrest.clm@aoins.com

April **30**, 2021

## *CERTIFIED MAIL - RETURN RECEIPT REQUESTED & FIRST-CLASS MAIL*

Guy Devore
2372 Morris Callaway Road
Appling, GA, 30802

|   | | |
|---|---|---|
| RE: | Claim Number: | 300-0255181-2020 |
|   | Policy Number: | 50-51828-00 |
|   | Insured: | Guy Devore and Karen Devore |
|   | Insurer: | Auto-Owners Insurance Company |
|   | Claimant: | Daniel and Martine Shea, as parents and next friends of Morgan Jean-Marie Shea, and as joint co-administrators of the estate of Morgan Jean-Marie Shea |
|   | Lawsuit: | Daniel and Martine Shea v. Bentley Devore, *et al.*, CAFN: 2021EC0149 Superior Court of Columbia County State of Georgia |
|   | Subject: | Supplemental Reservation of Rights |

### SUPPLEMENTAL RESERVATION OF RIGHTS LETTER

Dear Guy Devore:

This letter supplements the previous correspondence sent to you regarding the above-referenced matter. Specifically, Auto-Owners Insurance Company ("Auto-Owners") sends this letter to supplement its prior reservation of rights letter dated March 26, 2021, and with respect to the above-referenced claim and lawsuit filed against you in the Superior Court of Columbia County, CAFN 2021EC0149, by Daniel and Martine Shea, as parents and next friends of Morgan Jean-Marie Shea, and as joint co-administrators of the estate of Morgan Jean-Marie Shea (the "Underlying Lawsuit").

Auto-Owners insures Guy Devore and Karen Devore under a homeowners insurance policy, policy number 50-951-828-00, with effective dates of November 14, 2019 through November 14, 2020 (the "Policy"). You are hereby formally advised that Auto-Owners is reserving all rights and defenses which it has under the Policy and in connection with the above-referenced



claim and Underlying Lawsuit. You are further advised that Auto-Owners is reserving its right to disclaim any obligation under the Policy and to assert the defense of non-coverage under the Policy, and that any defense undertaken by Auto-Owners in connection with the above-referenced claim and Underlying Lawsuit, including the hiring of counsel for the purpose of representing your interests with respect thereto, is subject to this full reservation of rights and does not constitute a waiver of any of our rights or defenses under the Policy.

After reviewing the complaint filed against you in the Underlying Lawsuit, together with the Policy's terms, conditions, and exclusions, and along with Auto-Owners' continuing investigation of the same, it is questionable as to whether the Policy affords coverage to you with respect to the above-referenced claim or the Underlying Lawsuit. This letter, therefore, serves to provide you with formal notice that Auto-Owners reserves all rights and defenses which it has in connection with the Policy. Specifically, Auto-Owners is reserving its rights to later disclaim any obligation to provide you with insurance coverage under the Policy for the above-referenced claim and the Underlying Lawsuit, and to assert any and all defenses of non-coverage under the Policy. This correspondence specifically supplements Auto-Owners' previous reservation of rights letter, dated March 26, 2021, and such letter is specifically incorporated herein by reference as if fully stated and asserted herein.

### FACTS

As we understand the circumstances alleged by the Underlying Lawsuit, on July 18, 2020, Morgan Jean-Marie Shea ("Morgan") was a guest at your residence located at 2374 Morris Callaway Road, Appling, Columbia County, Georgia (the "Property"). At that time, your son, Bentley Devore ("Bentley"), was operating a 2016 Cam-Am utility vehicle owned by you and with your permission (the "Vehicle"). While these are the allegations, it appears that you may not have owned the Vehicle. Soon after arriving at your Property, Bentley invited Morgan to ride in the Vehicle's passenger seat. Once Morgan entered the Vehicle, Bentley drove it off your Property and down Morris Callaway Road. Because he was driving the Vehicle at a dangerous and recklessly high speed, and because he was intoxicated by alcohol that was provided by you on your Property, Bentley lost control of the Vehicle on Morris Callaway Road, which ultimately caused Morgan to be ejected from the Vehicle and onto Morris Callaway Road (the "Incident"). While these are the allegations, Bentley has reported that Morgan was in fact driving at the time of the Incident. Morgan died the next day as a result of the injuries she sustained during the Incident.

The Underlying Lawsuit alleges that you knowingly and regularly made your Property available for the unlawful consumption of alcohol by minors, including Bentley. The Underlying Lawsuit also alleges that (1) you knew Bentley was illegally consuming alcohol on July 18, 2020; (2) you knew Bentley was noticeably intoxicated at the time he and Morgan were in the Vehicle;



(3) you knew Bentley would drive or soon be driving the Vehicle while he was noticeably intoxicated, including at the time Morgan joined him in the Vehicle; and (4) you knew Bentley was dangerously and recklessly operating the Vehicle, and knowingly allowed him to continue doing so while Morgan was in the Vehicle with him. The Underlying Lawsuit further alleges that, based on Bentley's condition and conduct on July 18, 2020, and his history of alcohol abuse and reckless conduct, the Incident and Morgan's death were events that were reasonably foreseeable by you.

According to the Underlying Lawsuit, you are allegedly vicariously liable for Bentley's reckless conduct and Morgan's death under, *inter alia*, Georgia's Dram Shop Act, O.C.G.A. § 51-1-40. The Underlying Lawsuit also alleges that you are liable for Bentley's reckless conduct and Morgan's death because of your above-discussed acts and the knowledge you held at the time of the Incident, because of parental liability, because you negligently entrusted the Vehicle to Bentley, and because you negligently failed to supervise Bentley's use of the Vehicle.

## THE POLICY

The Policy issued by Auto-Owners provides, in relevant part, as follows:

### HOMEOWNERS POLICY
### FORM 3
### INSURING AGREEMENT

The attached Declarations describe the property **we** insure and the Coverages and Limits of Insurance for which **you** have paid a premium. In reliance upon **your** statements in the Declarations and application(s), **we** agree to provide insurance subject to all terms and conditions of this policy. In return, **you** must pay the premium and comply with all the terms and conditions of this policy. This policy applies to losses, **bodily injury**, **property damage** and **personal injury** which occur during the policy term shown in the Declarations.

### DEFINITIONS

To understand this policy, **you** must understand the meaning of the following words. These words appear in **bold face type** whenever used in this policy and endorsements attached to this policy.

. . .

2.      **Bodily injury** means physical injury, sickness or disease sustained by a person including resulting death of that person. **Bodily injury** does not include **personal injury**.



. . .

5.  **Insured** means:

   a.   **you**;

   b.   **your relatives**; and

   c.   any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**.

   In SECTION II – PERSONAL LIABILITY PROTECTION, **insured** also means:

   d.   with respect to any vehicle covered by this policy:

   . . .

   (2)   any other person **you** permit to use the vehicle while on an **insured premises**.

   . . .

6.  **Insured premises** means:

   a.   the **residence premises**;

   b.   any structures or grounds **you** use in connection with **your residence premises**;

   c.   any other premises **you** acquire during the policy term and which **you** intend to use as a **residence premises**;

   d.   that part of any other premises where **you** reside and which is shown in the Declarations;

   e.   any part of a premises not owned by any **insured** but where any **insured** may be temporarily residing;



    **f.**    any part of a premises not owned by any **insured** which any **insured** may rent for nonbusiness purposes, such as banquet halls and storage facilities

    **g.**    vacant land, other than farmland, owned by or rented to any **insured**;

    **h.**    Cemetery plots or burial vaults owned by any **insured**;

    **i.**    land owned by or rented to any **insured** on which a one or two family dwelling is being constructed as a residence for the **insured**; and

    **j.**    200 or less acres of farmland on which there are no buildings when such land is farmed by anyone other than any **insured**.

**7.**    **Motor vehicle** means a motorized land vehicle. **Motor vehicle** does not include a **recreational vehicle**.

**8.**    **Occurrence** means an accident that results in **bodily injury** or **property damage** and includes, as one **occurrence**, all continuous or repeated exposure to substantially the same generally harmful conditions.

          . . .

**12.**    **Recreational vehicle** means a motorized land vehicle designed primarily for recreational purposes but not designed for travel on public roads. **Recreational vehicle** does not include **watercraft**.

**13.**    **Relative** means a person who resides with **you** and who is related to **you** by blood, marriage or adoption. **Relative** includes a ward or foster child who resides with **you**.

          . . .

**15.**    **Residence premises** means:

    **a.**    the one or two family dwelling where **you** reside, including the building, the grounds and other structures on the grounds; or

    **b.**    that part of any other building where **you** reside, including grounds and structures;



which is described in the Declarations.

. . .

17.     **You** or **your** means any named **insured** shown in the Declarations and if an individual, such individual named **insured's** spouse who resides in the same household.

. . .

19.     **We**, **us**, or **our** means the Company providing this insurance.

. . .

## SECTION II – PERSONAL LIABILITY PROTECTION

1.     **COVERAGES**

    a.     **Coverage E – Personal Liability**

        **(1)**     **We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies. However, with respect to any **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**:

           **(a)**     **we** will pay damages because of or arising out of the ownership, maintenance, use, loading or unloading of only:

. . .

                **6)**     **recreational vehicles** owned by any **insured** while on an **insured premises**;

. . .

**We** will settle or defend, as **we** consider appropriate, any claim or **suit** for damages covered by this policy. **We** will do this at **our** expense, using attorneys of **our**



choice. This agreement to settle or defend claims or **suits** ends when **we** have paid the limit of **our** liability.

. . .

2.    **EXCLUSIONS**

a.    **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply:

. . .

(7)    to **bodily injury** or **property damage** because of or arising out of the ownership, maintenance, use, loading or unloading of any **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**. This exclusion does not apply:

(a)    to **aircraft, motor vehicles, recreational vehicle** or **watercraft** described under 1. COVERAGES, a. Coverage E – Personal Liability, (1)(a)1 – (1)(a)9) and (1)(b)1 – (1)(b)3);

. . .

(8)    to parental liability for **bodily injury** or **property damage**, whether or not imposed by law, because of or arising out of actions of a child or minor for use of an **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft** if such use is excluded or otherwise limited by this policy.

(9)    to **bodily injury** or **property damage** because of or arising out of:

(a)    the entrustment to any person by any **insured**; nor

(b)    the supervision of any person by any **insured**;

with regard to the ownership, maintenance, use, loading or unloading of an **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**.



This exclusion does not apply:

**(a)** to **aircraft**, **recreational vehicles** and **watercraft** that are covered by Coverage E - Personal Liability; . . .

. . .

**(12)** to **bodily injury** or **property damage** reasonably expected or intended by the **insured**. This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended. However, this exclusion does not apply to **bodily injury** or **property damage** arising out of the use of reasonable force by the **insured** to protect persons or property.

. . . .

Homeowners Policy Form 3 (Form No. 17903 (2-96)); You and Your Amendatory Endorsement (Form No. 57664 (6-15)); Amendatory Endorsement (Form No. 57591 (2-14)).

## SUPPLEMENTAL RESERVATION OF RIGHTS

Auto-Owners is continuing to investigate the facts and allegations of the above-discussed claim and the Underlying Lawsuit to determine whether coverage exists based on the Policy's insuring agreements, terms, conditions, and exclusions, including, but not limited to, those provisions quoted above. At this time, Auto-Owners is uncertain as to its rights and is unclear how to proceed under the Policy. Indeed, it is highly questionable as to whether any coverage is afforded under the Policy for the above-discussed claim and the claims asserted in the Underlying Lawsuit.

Specifically, the allegations giving rise to the above-referenced claim, the Underlying Lawsuit, and any resulting damages or injuries, may not be covered under the Policy because:

(1) The Policy specifically affords coverage only for "those sums that any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** . . . caused by an **occurrence**" to which the Policy applies. However, the Underlying Lawsuit repeatedly alleges that you intentionally and knowingly provided minors, including Bentley, with alcohol on the date of the Incident; that you intentionally and knowingly allowed minors, including Bentley, to use the Vehicle while illegally intoxicated; and that you knew such minors, including Bentley, were operating the Vehicle in a dangerous and reckless manner while illegally intoxicated. As a result, the Incident, Morgan's injuries, and her death were not the unexpected result of an



unforeseen or unexpected act that was involuntarily or unintentionally done. Based on these allegations, it is questionable whether the damages or the Incident was "caused by an **occurrence**," as defined by the Policy and Georgia law.

(2)     The Policy specifically affords coverage only for "damages because of or arising out of the ownership, maintenance, use, loading or unloading of only . . . **recreational vehicles** owned by any **insured** while on an **insured premises**." The Underlying Lawsuit specifically alleges that the Incident took place because of or arose out of the use of the Vehicle, which constitutes a "recreational vehicle" under the Policy. However, the Underlying Lawsuit clearly alleges that the Incident took place off your Property. Specifically, the Underlying Lawsuit alleges that Bentley drove Morgan and the Vehicle off your Property and onto Morris Callaway Road, where the Incident took place and caused Morgan's death. Morris Callaway Road is neither your Property nor an "insured premises." Based on these allegations, it is questionable whether any claims or damages arising from the Incident are afforded coverage by the Policy.

(3)     Except in limited circumstances, the Policy specifically excludes from coverage all "**bodily injury** . . . because of or arising out of the ownership, maintenance, use, loading or unloading of any . . . **recreational vehicle** . . . ." The Underlying Lawsuit specifically alleges that the Incident took place because of or arose out of the use of the Vehicle, which constitutes a "recreational vehicle" under the Policy. However, the Policy unambiguously excludes from coverage any bodily injuries because of or arising from the use of a recreational vehicle. None of the limited exceptions to this exclusion apply under the circumstances. Based on these allegations, it is questionable whether any claims or damages arising from the Incident are afforded coverage by the Policy.

(4)     Except in limited circumstances, the Policy specifically excludes from coverage all "parental liability for **bodily injury** . . . , whether or not imposed by law, because of or arising out of [the] actions of a child or minor for use of [a] . . . **recreational vehicle** . . . ." The Underlying Lawsuit specifically alleges that the Incident took place because of or arose out of the use of the Vehicle, which constitutes a "recreational vehicle" under the Policy. Moreover, the Underlying Lawsuit specifically alleges that Bentley was a minor at the time of the Incident. However, the Policy unambiguously excludes from coverage any parental vicarious liability for bodily injuries because of or arising from the use of a recreational vehicle. None of the limited exceptions to this exclusion apply under the circumstances. Based on these allegations, it is questionable whether your liability for the Incident is unambiguously excluded from coverage by the Policy.

(5)     Except in limited circumstances, the Policy specifically excludes from coverage all "**bodily injury** . . . because of or arising out of . . . the entrustment to any person by any **insured** . . . with regard to the ownership, maintenance, use, loading or unloading of [a] . . . **recreational vehicle** . . ." and all "**bodily injury** . . . because of or arising out of . . . the supervision of any



person by any **insured** . . . with regard to the ownership, maintenance, use, loading or unloading of [a] . . . **recreational vehicle** . . . ." The Underlying Lawsuit specifically alleges that the Incident took place because of or arose out of the use of the Vehicle, which constitutes a "recreational vehicle" under the Policy. Moreover, the Underlying Lawsuit alleges that you are liable for Morgan's death because of your negligent supervision of Bentley's use of the Vehicle and/or your entrustment of the Vehicle to him. However, the Policy unambiguously excludes from coverage any liability for bodily injuries because of or arising from the negligent entrustment of or a failure to supervise the use of a recreational vehicle. None of the limited exceptions to this exclusion apply under the circumstances. Based on these allegations, it is questionable whether any claims or damages arising from the Incident are afforded coverage by the Policy.

(6)     The Policy specifically excludes from coverage all "**bodily injury** . . . reasonably expected or intended by the **insured**." Such exclusion applies "even if the **bodily injury** . . . is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended." The Underlying Lawsuit specifically alleges that (a) you knew Bentley was illegally consuming alcohol on July 18, 2020; (b) you knew Bentley was noticeably intoxicated at the time he and Morgan were in the Vehicle; (c) you knew Bentley would drive or soon be driving the Vehicle while he was noticeably intoxicated, including at the time Morgan joined him in the Vehicle; and (d) you knew Bentley was dangerously and recklessly operating the Vehicle, and knowingly allowed him to continue doing so while Morgan was in the Vehicle with him. The Underlying Lawsuit further alleges that, based on Bentley's condition and conduct on July 18, 2020, and his history of alcohol abuse and reckless conduct, the Incident and Morgan's death were events that were reasonably foreseeable by you. Moreover, the Underlying Lawsuit alleges that you are vicariously liable for Bentley's reckless conduct and Morgan's death under Georgia's Dram Shop Act, O.C.G.A. § 51-1-40, which, for liability to attach, requires only that you knew or should have known that Bentley was noticeably intoxicated and was soon to drive the Vehicle on the date of the Incident. Accordingly, it is questionable whether you "reasonably expected or intended" bodily injury to result from the dangerous, illegal, and reckless use of the Vehicle by an illegally intoxicated minor on the date of the Incident. Based on these allegations, it is questionable whether any claims or damages arising from the Incident are afforded coverage by the Policy.

For these reasons, and for any others which may become known in the future, Auto-Owners will be continuing its investigation into the above-discussed claim and Underlying Lawsuit. Auto-Owners will also take whatever steps are necessary to protect our mutual interests respecting the above-discussed claim and Underlying Lawsuit, with the understanding that it does so under a complete and total reservation of rights under the above-referenced Policy, and without waiving its right to disclaim or deny coverage in the future under any or all of the Policy's insuring agreements, terms, conditions, and exclusions, as identified above.

All rights, terms, conditions, and exclusions in the above-referenced Policy are in full force



and effect and are completely reserved. No action by any employee, agent, attorney, or other person on behalf of Auto-Owners; or hired by Auto-Owners on your behalf; shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the above-discussed Policy or under applicable law.

In fact, by sending this supplemental reservation of rights letter, Auto-Owners expressly reserves the right to rely on all of the Policy's insuring agreements, terms, conditions, and exclusions in deciding whether or not coverage is afforded under the Policy. Auto-Owners further reserves the right to disclaim coverage altogether and to assert additional policy defenses and/or amend this document if substantive information is received during its investigation of the above-discussed claim and Underlying Lawsuit. Likewise, should you receive additional information which may assist Auto-Owners in clarifying coverage under the above-discussed Policy, such information should be forwarded to us immediately.

Auto-Owners also expressly reserves the right to withdraw from any defense provided to you respecting the above-discussed claim and Underlying Lawsuit should it be determined that no coverage exists. To that end, Auto-Owners reserves the right to file an action for declaratory judgment in order to resolve any outstanding coverage issues. In any action for declaratory judgment, Auto-Owners would seek a determination from a court of appropriate jurisdiction as to whether any allegations asserted against you with respect to the above-discussed claim and Underlying Lawsuit are covered under any insurance contract issued by Auto-Owners. At this time, Auto-Owners is uncertain as to its rights and is unclear how to proceed under the Policy. Indeed, it is highly questionable as to whether any coverage is afforded under the Policy for any liability arising out of the above-discussed claim and Underlying Lawsuit.

Your defense with respect to the above-discussed claim and Underlying Lawsuit has been assigned to Attorney Dan Bullard. His phone number is 478-757-8500 . Please be assured that Mr. Mayers is your attorney and does not represent Auto-Owners. However, because of the possibility or likelihood that coverage is not afforded under the Policy for the allegations being made against you, you have the right to retain your own counsel, at your expense, to assist with your defense and to protect your interests.

At this time, we are still investigating the above-discussed claim and Underlying Lawsuit under a reservation of rights. You are formally placed on notice that any activity on our part by way of investigation and/or settlement which we may undertake, or any defense which we may undertake on your behalf, arising out of any legal action or actions instituted against you, does not constitute a waiver of any our rights.

The explanation contained in this supplemental reservation of rights, as set forth above, is based upon the information currently available to Auto-Owners, the Policy's provisions, any information you have provided, and Auto-Owners' investigation of the above-discussed claim and



Underlying Lawsuit. If you disagree with our determination, or if there is any additional information you believe to be relevant to the question of coverage, or if you believe that the information upon which Auto-Owners has relied is not accurate, please advise us and forward any additional relevant information for our review immediately. Any further investigation of the claim shall not serve as a waiver of any rights under the available policy of insurance.

Moreover, this correspondence is not intended to be an exhaustive statement of Auto-Owners' position concerning the coverages under the Policy. In fact, this supplemental reservation of rights letter is based upon all the terms, conditions, and exclusions in the Policy, even if not excerpted above, and no waiver or estoppel is intended or created by this letter. All rights are reserved to supplement this letter and to modify or withdraw the supplemental reservation of rights if additional information is received. Auto-Owners also expressly reserves the right to commence a declaratory judgment action to determine its rights and obligations under the above-discussed Policy, if necessary.

Respectfully,

Tara Woods

Tara Woods, AIC
Senior Claim Representative
Stonecrest Claims Branch
877-416-5107 ext 55638

TW/da



# EXHIBIT

# C

59511 (7-15)

18-0423-00
BLANCHARD & CALHOUN INSURANCE AGENCY
PO BOX 212359
AUGUSTA  GA  30917-2359



P.O. BOX 30660 · LANSING, MICHIGAN 48909-8160

AUTO-OWNERS INSURANCE COMPANY

10-08-2019

GUY DEVORE
KAREN DEVORE
2374 MORRIS CALLAWAY RD
APPLING  GA  30802-5800

---

**Remember**, you can view your policy, pay your bill or change your paperless options any time online, at **www.auto-owners.com**.  If you have not already enrolled your policy, you may do so using policy number **50-951-828-00** and Personal ID Code (PID) **4K1 A23 N2V**.

---

Your agency's phone number is (706) 650-6000.

RE:  Policy 50-951-828-00

Thank you for selecting Auto-Owners Insurance Group to serve your insurance needs!  Feel free to contact your independent Auto-Owners agent with questions you may have.

Auto-Owners and its affiliate companies offer a variety of programs, each of which has its own eligibility requirements, coverages and rates.  In addition, Auto-Owners also offers many billing options.  Please take this opportunity to review your insurance needs with your Auto-Owners agent, and discuss which company, program, and billing option may be most appropriate for you.

Auto-Owners Insurance Company was formed in 1916.  The Auto-Owners Insurance Group is comprised of five property and casualty companies and a life insurance company.  Our A++ (Superior) rating by A.M. Best Company signifies that we have the financial strength to provide the insurance protection you need.

*~  Serving Our Policyholders and Agents Since 1916  ~*



# PROXY DESIGNATION - ANNUAL MEETING NOTICE

GUY DEVORE
KAREN DEVORE
2374 MORRIS CALLAWAY RD
APPLING  GA  30802-5800

18-0423-00         50-951-828-00

The Auto-Owners Insurance Company annual meeting of policyholders is held each year at our home office at 6101 Anacapri Boulevard, Lansing, Michigan on the second Monday in May at 10:00 a.m.  Should you not be able to attend the annual meeting, your proxy will allow the designated persons to vote on your behalf.

Each of the persons designated in the proxy is or has been an executive officer of the Company and has been associated with the Company for a substantial number of years.

Whether or not you plan to attend the annual meeting, your return of the signed and dated proxy designation in the enclosed envelope is greatly appreciated.

Thank you.

---

You can sign electronically at the Auto-Owners Customer Center or www.auto-owners.com/proxy.

Policy Number: 50-951-828-00
Policy ID (PID): 4K1 A23 N2V

---

fold and detach here

32102 (1-18)



**PROXY DESIGNATION**

POLICYHOLDER: GUY DEVORE

POLICY NUMBER: 18-0423-00        50-951-828-00

I designate J.S. Tagsold, D.J. Thelen, and C.B. Muller, and each of them, my attorneys and proxies, with power of substitution and revocation to each, to vote as my proxy at all meetings of the Company, and at any and all adjournments thereof.  The powers hereunder shall be exercised by a majority of said attorneys and proxies so present, but if only one is so present, then that one shall have full power to act.

_____        _____        _____
Policyholder Signature                                      Policyholder Signature                                            Date

0301180423005095182800161189182220191008O



**MAIL PROXY TO:**

**AUTO-OWNERS INSURANCE**
**PO BOX 740312**
**CINCINNATI, OH 45274-0312**

Agency Code  18-0423-00                                          Policy Number  50-951-828-00

59325 (7-04)

# NOTICE OF PRIVACY PRACTICES

## What We Do To Protect Your Privacy

At Auto-Owners Insurance Group*, we value your business and we want to retain your trust.  In the course of providing products and services, we may obtain nonpublic personal information about you.  Recently enacted laws prohibit unauthorized disclosure of nonpublic personal information.  We assure you that such information is used only for the purpose of providing our products and services to you.

## Information We Obtain

To assist in underwriting and servicing your policy, we may obtain nonpublic personal information about you.  For example, we routinely obtain information through applications, forms related to our products or services, and your transactions with us.  We may obtain such information from our affiliates, third parties or consumer reporting agencies.  The information may include your name, address, telephone number and payment, credit and claim information.  In addition, for life, health and annuity products, we may obtain your medical history with your permission.  The nature and extent of the information we obtain varies based on the nature of the products and services you receive.

## Limited Disclosure

Auto-Owners Insurance Group companies do not disclose any nonpublic personal information about their customers or former customers except as permitted by law.

## Protecting Confidentiality

Our agents and Company associates may have access to nonpublic personal information only for the purpose of providing our products or services to you.  We maintain physical, electronic and procedural safeguards against unauthorized use of your nonpublic personal information.

*Auto-Owners Insurance Group includes, Auto-Owners Insurance Company, Auto-Owners Life Insurance Company, Home-Owners Insurance Company, Owners Insurance Company, Property-Owners Insurance Company and Southern-Owners Insurance Company.

59497 (10-11)

# NOTICE OF CHANGE IN POLICY TERMS
## Guaranteed Home Replacement Cost

Dear Policyholder,

Your policy includes the Guaranteed Home Replacement Cost endorsement.  This endorsement guarantees your dwelling will be replaced in the event of a total loss, subject to certain requirements.  One of these requirements is your home must be insured for the full estimated replacement cost.   In addition, you must notify your agent immediately of any additions, alterations or improvements to your dwelling which individually or cumulatively increases your dwelling's replacement cost by $10,000 or more.

This notice is for informational purposes only.   Your policy contains the specific terms and conditions of coverage.

If you have any questions about this notice, the endorsement or your policy, please contact your Auto-Owners Insurance Agency.

59497 (10-11)                                                                                                                         Page 1 of 1

69584 (9-17)

# INLAND FLOOD COVERAGE OFFER

Good News!  We are now offering an Inland Flood Coverage option available for purchase.

With this endorsement your home and its contents can be covered up to $100,000 for direct physical loss caused by or from an inland flood.

This endorsement is intended for homes located in low-to-moderate flood zones.  Availability of this coverage is subject to eligibility.

Please contact your independent Auto-Owners Insurance agent if you would like to purchase this option.  Thank you for choosing Auto-Owners Insurance, the SAFE.SOUND.SECURE® choice for all your insurance needs!

69584 (9-17)                                                                                                                         Page 1 of 1

57858 (8-18)

# NOTICE OF REDUCTION IN COVERAGE

## SEXUAL ABUSE OR MOLESTATION AND PERSONAL INJURY EXCLUSIONS

DEAR POLICYHOLDER:

YOUR RENEWAL POLICY IS ENCLOSED.  THE ENDORSEMENTS, ENTITLED SEXUAL ABUSE OR MOLESTATION EXCLUSION AND PERSONAL INJURY EXCLUSION, HAVE BEEN ADDED TO YOUR POLICY TO EXCLUDE LIABILITY COVERAGE FOR SEXUAL ABUSE OR MOLESTATION AS WELL AS ACTS BY THE INSURED WITH THE KNOWLEDGE THE ACT WOULD VIOLATE THE RIGHTS OF ANOTHER AND WOULD CAUSE PERSONAL INJURY. THIS CHANGE RESULTS IN A REDUCTION OF COVERAGE.

THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY.  YOUR POLICY CONTAINS THE SPECIFIC TERMS AND CONDITIONS OF COVERAGE.

IF YOU HAVE ANY QUESTIONS REGARDING YOUR POLICY OR THIS NOTICE, PLEASE CONTACT YOUR AUTO-OWNERS INSURANCE AGENCY.

57858 (8-18)                                                                                           Page 1 of 1

59306 (2-14)

# NOTICE OF INFORMATION PRACTICES

To assist in determining your eligibility for coverage and to service your policy we may collect personal information about you.  Most of this information comes from your application and public records.  We may obtain personal information from a consumer report prepared by a consumer reporting agency.  This information will pertain to areas such as your driving record and accident history, regular operators of your automobile and their driving records and accident histories, the use of your automobiles, verification of the size, construction, features, and maintenance of your dwelling and other structures to be insured, and your credit history.  Consumer reporting agencies may retain a copy of the information and may disclose it to others for whom they perform such services.

## DISCLOSURE

Information about you is disclosed to others without your consent only when necessary to conduct our business and then only the minimum required to accomplish our purpose.  For example, we must disclose some information about you to persons involved in processing your application and servicing your policy, and to our agents, claims adjusters, and attorneys.  We may also share information with a person or organization requiring the information to perform an insurance, business or professional function for us such as data processing.  We may provide claim or other information to insurance-support organizations that are established to collect such information to assist in preventing insurance crimes and fraudulent claims.  Information about you may also be used by other persons or organizations in conducting scientific research or audits.  You will never be individually identified in any report that results from such research and the material we furnish will be returned to us or destroyed when it is no longer needed.

Finally, we may give information to the State Insurance Department in connection with their regulation of our business and to other governmental or law enforcement agencies to protect our legal interests or in case of suspected fraud or illegal activities.  Information will also be disclosed if ordered by a subpoena, search warrant or other court order or if otherwise required by federal, state or local law.

## ACCESS

You have the right of access to information about you that is contained in our files.  You may send a written request to us which reasonably describes the information you wish to review.  Your request must also provide your complete name, address, date of birth, and policy number.  We must be reasonably able to locate and retrieve the requested information.  Within 30 business days from the date your request is received, we shall write you regarding the nature and substance of the information requested.  We will identify the persons or organizations to whom we have disclosed information about you within the past two years.

You may see and copy the information or we will send you copies, whichever you prefer.  We shall not provide access to information that relates to and was collected in connection with or in reasonable anticipation of a claim or civil or criminal proceeding.  If the information you wish to review was provided to us by a consumer reporting agency you will be referred to them for disclosure of that information.  We shall provide you with their name, address and telephone number.

## CORRECTION OF INFORMATION

If you believe the information we disclose to you is incorrect, you may make a written request that we correct, amend or delete the information.  Within 30 business days from the date your request is received, we will correct, amend or delete the information or advise you why we decline to do so.  We will advise any person or organization to whom we have disclosed the information and the organization that provided the information of any corrections, amendments or deletions we make.

If we decline to comply with your request, you may file with us a concise statement of what you believe is the correct, relevant or fair information.  You may also file a concise statement of the reasons why you disagree with our refusal to cor-

rect, amend or delete information.  Your statement will be placed in our file and be part of any future disclosures.  We will also provide your statement to any person or organization to whom we have disclosed the information and to the organization that provided the information.

You also have the right to dispute the accuracy or completeness of information disclosed to you by a consumer reporting agency.  They will advise you of their procedure for doing so when the disclosure is made to you.



Page   1

17560 (01-14)
Issued   10-08-2019
Policyholder since 2016

**INSURANCE COMPANY**
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**HOMEOWNERS POLICY DECLARATIONS**

AGENCY   BLANCHARD & CALHOUN INSURANCE AGENCY
18-0423-00          Mkt Terr 087          (706) 650-6000

Renewal Effective     11-14-2019

**POLICY NUMBER          50-951-828-00**

INSURED   GUY DEVORE
          KAREN DEVORE

Company Use          80-89-GA-1611

ADDRESS   2374 MORRIS CALLAWAY RD

          APPLING  GA  30802-5800

Company
Bill

| **POLICY TERM** | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| | to |
| 11-14-2019 | 11-14-2020 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this Declarations and attachments to your policy. If you have any questions, please consult with your agent.

| | **TERM** |
|---|---|
| TOTAL POLICY PREMIUM | |

**LOCATION DESCRIPTION**                                                        **Homeowners Policy Form 3**
2374 Morris Callaway Rd   Appling, GA 30802-5800

   Masonry Veneer Construction Built in 2001
   Asphalt Roof
   Protection Class 1
   Wind or hail losses to your roof will be paid on an Actual Cash Value basis (see form 57051).

| **PROPERTY AND LIABILITY COVERAGES** | **LIMITS** |
|---|---|
| A  Dwelling | $554,000 |
|    Adjusted Value Factor:      1.010 | |
| B  Other Structures | 55,400 |
| C  Personal Property | 387,800 |
| D  Additional Living Expense and Loss of Rents | 110,800 |
| E  Personal Liability (each occurrence) | 500,000 |
| F  Medical Payments (each person) | 5,000 |

   Section I Deductible
      $2,500 - All Peril Deductible

**COVERAGES THAT APPLY**
Personal Property Replacement Cost
Homeowners Plus

| | |
|---|---|
|    Mortgage Extra Expense Coverage ($2,500 Deductible) | $250/mo |
|    Refrigerated Products Coverage ($250 Deductible) | 750 |
|    Glass Breakage ($250 Deductible) | |
|    Domestic Appliance Seepage or Leakage | 50,000 |
|      ($2,500 Deductible) | |
|    Tree Debris Removal | 1,000 |
| Water Backup Of Sewers Or Drains ($2,500 Deductible) | 10,000 |
| Guaranteed Home Replacement Cost | |
| Credit and Fund Transfer Card Coverage | 1,000 |
| Identity Theft Expense Coverage ($250 Deductible) | 15,000 |
| Property Coverage Limitation for Fungi, Wet Rot, Dry Rot | |
|    and Bacteria resulting from a covered cause of loss | 55,400 |
| Loss Assessment Coverage | 2,500 |
| Fire Department Charges | 500 |

**PREMIUM DISCOUNTS THAT APPLY**
Protective Devices Discount
Central Station Alarm Discount - Burglary
Central Station Alarm Discount - Fire
Advance Quote Discount

**TOTAL LOCATION PREMIUM**

Page   2                                                                     17560 (01-14)

AUTO-OWNERS INS. CO.                                                  Issued     10-08-2019

AGENCY   BLANCHARD & CALHOUN INSURANCE AGENCY        Company     **POLICY NUMBER**     **50-951-828-00**
         18-0423-00           Mkt Terr 087           Bill        Company Use           80-89-GA-1611

INSURED   GUY DEVORE                                             Term   11-14-2019   to   11-14-2020

Forms That Apply To This Location:
17903  (02-96)    57482  (08-13)    17676  (02-96)    17387  (04-12)    57500  (05-15)    57006  (03-07)    57051  (08-15)
57444  (01-12)    57573  (04-14)    17618  (03-14)    17679  (11-13)    17662  (02-08)    17908  (04-16)    17594  (11-13)

Secured Interested Parties: See Schedule

|                          | **TERM** |
|--------------------------|----------|
| TOTAL POLICY PREMIUM     |          |

Insurance Score:  X854

Forms That Apply To All Locations:
57023  (08-13)    17697  (02-96)    17447  (03-97)    57576  (05-14)    57608  (03-14)    57591  (02-14)    57595  (02-14)
57663  (06-15)    57664  (06-15)    57570  (07-18)    57845  (07-18)    17867  (12-04)

**SECURED INTERESTED PARTIES AND/OR ADDITIONAL INTERESTED PARTIES AND/OR ADDITIONAL INSUREDS**

**Loc  001**
SUNTRUST MORTGAGE INC                    Loan: 0290465947
ISAOA/ATIMA
PO BOX 47047
ATLANTA GA 30362-0047
Interest:  Mortgagee  EDB
SIP-ID:  GA194607

# *Homeowners Insurance Policy*

**Auto-Owners Insurance Company**

**POLICY NON-ASSESSABLE**

This policy is non-assessable and the premium stated in the Declarations is the only premium you will be asked to pay.

## PARTICIPATING

You will be entitled to an equitable participation in Company funds in excess of the amount required to pay expenses and all the losses or claims or other policy obligations incurred, together with the reserve and surplus funds required or permitted by law.  A distribution will be made only in accordance with the decision of our Board of Directors acting under the insurance laws and under our charter.

## NOTICE OF MEMBERSHIP AND ANNUAL MEETING

Because we are a mutual company this policy makes you a member of the Auto-Owners Insurance Company.  You are entitled to vote, in person or by proxy, at all meetings.  Our annual policyholder's meetings are held at our home office at Lansing, Michigan on the second Monday in May in each year at 10:00 A.M.


In witness whereof, we, the Auto-Owners Insurance Company, have caused this policy to be issued and to be duly signed by our President and Secretary.


Secretary                                                        President


17386 (7-12)

17903 (2-96)

# HOMEOWNERS POLICY
# FORM 3

This policy is a legal contract between you and us.

**READ YOUR POLICY CAREFULLY.**  This cover sheet provides only a brief outline of some of the important features of your policy.  This is not the insurance contract and only the actual policy provisions will control.  The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company.  **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

The **DECLARATIONS** contain:

Your name
Location of the residence premises
Policy Term
Coverages
Limits of Insurance
Deductible (Amounts)

| You Will Find | On Page |
|---|---|
| **INSURING AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **SECTION I - PROPERTY PROTECTION** | 3 |
| COVERAGES | 3 |
| PERILS WE INSURE AGAINST | 6 |
| EXCLUSIONS | 9 |
| ADDITIONAL COVERAGES | 9 |
| DEDUCTIBLE | 12 |
| CONDITIONS | 12 |
| **SECTION II - PERSONAL LIABILITY PROTECTION** | 15 |
| COVERAGES | 15 |
| EXCLUSIONS | 16 |
| ADDITIONAL COVERAGES | 18 |
| LIMIT OF INSURANCE | 19 |
| CONDITIONS | 20 |
| **WHAT TO DO IN CASE OF LOSS** | 20 |
| PROPERTY | 20 |
| PERSONAL LIABILITY PROTECTION | 21 |
| MEDICAL PAYMENTS | 21 |
| **GENERAL POLICY CONDITIONS** | 22 |
| ASSIGNMENTS | 22 |
| CONCEALMENT OR FRAUD | 22 |
| CHANGES | 22 |
| INSPECTIONS | 22 |
| OUR RIGHT TO RECOVER PAYMENT | 22 |
| RECOVERIES | 22 |

# HOMEOWNERS POLICY
## FORM 3
## INSURING AGREEMENT

The attached Declarations describe the property **we** insure and the Coverages and Limits of Insurance for which **you** have paid a premium. In reliance upon **your** statements in the Declarations and application(s), **we** agree to provide insurance subject to all terms and conditions of this policy. In return, **you** must pay the premium and comply with all the terms and conditions of this policy. This policy applies to losses, **bodily injury**, **property damage** and **personal injury** which occur during the policy term shown in the Declarations.

# DEFINITIONS

To understand this policy, **you** must understand the meaning of the following words. These words appear in **bold face type** whenever used in this policy and endorsements attached to this policy.

1. **Aircraft** means a conveyance designed or used for flight including self-propelled missiles and spacecraft.

2. **Bodily injury** means physical injury, sickness or disease sustained by a person including resulting death of that person. **Bodily injury** does not include **personal injury**.

3. **Business** means:

   a. any full or part time trade, profession or occupation;

   b. home day care services provided by an **insured**; and

   c. rental or holding out for rental to others of any premises by any **insured**.

   **Business** does not include:

   a. home day care services:

      (1) any **insured** provides on an infrequent and irregular basis;

      (2) provided part time by a **relative** who is under 21 years of age;

      (3) provided to a **relative** by any **insured**; nor

      (4) provided on a mutual exchange basis;

   b. occasional rental or holding out for occasional rental to others of the **residence premises** for use as a dwelling;

   c. rental or holding out for rental to others a part of the **residence premises** for use as a dwelling, provided the rental is to no more than two roomers or boarders in any single family unit; nor

   d. rental or holding out for rental to others a part of the **residence premises** as a private garage, office, school or studio.

4. **Incident** means an offense(s) committed by any **insured** resulting in **personal injury** and includes, as one incident, all continuous or repeated exposure to substantially the same generally harmful condition.

5. **Insured** means:

   a. **you**;

   b. **your relatives**; and

   c. any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**.

   In SECTION II - PERSONAL LIABILITY PROTECTION, **insured** also means:

   d. with respect to any vehicle covered by this policy:
      (1) any employee of a person in a., b. or c. above, while engaged in the employment of that person; or

      (2) any other person **you** permit to use the vehicle while on an **insured premises**.

   e. any person or organization legally responsible for animals or **watercraft** covered by this policy and owned by a person in a., b. or c. above. However, **we** will cover that person or organization only with respect to those animals or

Agency Code   18-0423-00                                                           Policy Number   50-951-828-00

**watercraft**. **We** will not cover any person nor organization using or having custody of animals or **watercraft** in the course of any **business** nor without permission of the owner.

6. **Insured premises** means:

   a. the **residence premises**;

   b. any structures or grounds **you** use in connection with **your residence premises**;

   c. any other premises **you** acquire during the policy term and which **you** intend to use as a **residence premises**;

   d. that part of any other premises where **you** reside and which is shown in the Declarations;

   e. any part of a premises not owned by any **insured** but where any **insured** may be temporarily residing;

   f. any part of a premises not owned by any **insured** which any **insured** may rent for non-business purposes, such as banquet halls and storage facilities;

   g. vacant land, other than farmland, owned by or rented to any **insured**;

   h. Cemetery plots or burial vaults owned by any **insured**;

   i. land owned by or rented to any **insured** on which a one or two family dwelling is being constructed as a residence for the **insured**; and
   j. 200 or less acres of farmland on which there are no buildings when such land is farmed by anyone other than any **insured**.

7. **Motor vehicle** means a motorized land vehicle. **Motor vehicle** does not include a **recreational vehicle**.

8. **Occurrence** means an accident that results in **bodily injury** or **property damage** and includes, as one **occurrence**, all continuous or repeated exposure to substantially the same generally harmful conditions.

9. **Personal injury** means:

   a. libel, slander or defamation of character;

   b. false arrest, detention or imprisonment, or malicious prosecution;

   c. invasion of privacy; or

   d. wrongful eviction or wrongful entry.

   **Personal injury** does not include **bodily injury**.

10. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

11. **Property damage** means damage to or destruction of tangible property including resulting loss of use of that property.

12. **Recreational vehicle** means a motorized land vehicle designed primarily for recreational purposes but not designed for travel on public roads. **Recreational vehicle** does not include **watercraft**.

13. **Relative** means a person who resides with **you** and who is related to **you** by blood, marriage or adoption. **Relative** includes a ward or foster child who resides with **you**.

14. **Residence employee** means:

   a. an employee of any **insured** whose duties are in connection with the maintenance or use of the **residence premises**, including household or domestic services; or

   b. an employee who performs similar duties elsewhere but not in connection with any **insured's business**.

15. **Residence premises** means:

   a. the one or two family dwelling where **you** reside, including the building, the grounds and other structures on the grounds; or
   b. that part of any other building where **you** reside, including grounds and structures;

   which is described in the Declarations.

16. **Suit** means a civil court proceeding in which damages because of **bodily injury**, **property damage** or **personal injury** to which this insurance applies are alleged.

17. **You** or **your** means the first named insured shown in the Declarations and if an individual, **your** spouse who resides in the same household.

**18. Watercraft** means a conveyance capable of being used as a means of transportation on water.

**19**. **We**, **us** or **our** means the Company providing this insurance.

# SECTION I - PROPERTY PROTECTION

## 1.  COVERAGES

### a.  Coverage A - Dwelling

#### (1)  Covered Property

**We** cover:

**(a)** **your** dwelling located at the **residence premises** including structures attached to that dwelling.  This dwelling must be used principally as **your** private residence.

**(b)** construction material and supplies at or next to **your residence premises** for use in connection with **your** dwelling or other structures insured under Coverage B - Other Structures.

#### (2)  Property Not Covered

**We** do not cover any land, including land **your** dwelling occupies.

### b.  Coverage B - Other Structures

#### (1)  Covered Property

**We** cover:

**(a)** other structures at the **residence premises** which are not attached to the dwelling.  This includes structures which are connected to the dwelling by only a utility line, fence or other similar connection.

**(b)** other structures which **you** own and **you** use in connection with the **residence premises** that are located at an **insured premises** other than the **residence premises**.

#### (2)  Property Not Covered

**We** do not cover:

**(a)** any structures used for **business** purposes.

**(b)** if not located at the **residence premises**:

**1)** structures used as dwellings; nor

**2)** structures originally constructed for use as a dwelling.

**(c)** any land, including land the structures occupy.

If the replacement cost of all structures covered under (1)(a) above is less than the limit of insurance, **we** will add the excess amount to the limit of insurance for Coverage A - Dwelling.  If there are no other structures, **we** will add the limit of insurance for this coverage to the limit of insurance for Coverage A - Dwelling.  This provision applies only if loss or damage to **your** dwelling exceeds the limit of insurance for Coverage A - Dwelling and **you** repair or replace the damaged property and the amount **you** actually and necessarily spend exceeds the limit of insurance for Coverage A - Dwelling.

### c.  Coverage C - Personal Property

#### (1)  Covered Property

**We** cover:

**(a)** personal property owned or used by any **insured** anywhere in the world including property not permanently attached to or otherwise forming a part of realty.

**(b)** at **your** option, personal property owned by others while it is in that part of the **residence premises** occupied by any **insured**.

**(c)** at **your** option, personal property of a house guest or **residence employee** while in any residence of any **insured**.

**(d)** any personal property which is usually at any **insured's** residence other than the **residence premises** for up to 10% of the Coverage C - Personal Property limit but not less than $1,000.  This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after **you** begin to move there.

**(2) Property Not Covered**

**We** do not cover:

**(a)** animals, birds or fish.

**(b)** **aircraft**, their equipment, accessories or parts.  **We** do cover model **aircraft** neither designed nor used for transporting persons or cargo.

**(c)** personal property of roomers and boarders who are not related to any **insured**.

**(d)** personal property of tenants.

**(e)** data used for **business** including the media used to store the data.  This includes:

    **1)** electronic data storage devices; and

    **2)** paper records of any kind.

    **We** do cover the cost of unexposed or blank media and the cost of prerecorded computer programs which are available in the retail market place.

**(f)** personal property rented to or held out for rental to others by any **insured**.  **We** do cover such personal property while on that part of the **residence premises** used exclusively by any **insured** or roomers and boarders.

**(g)** personal property except **your** appliances and other household furnishings in that part of the **residence premises** regularly rented to or held out for rental to others (except roomers or boarders) by any **insured** for use as living quarters.

**(h)** **motor vehicles** and **recreational vehicles**.

**We** do cover:

    **1)** **motor vehicles** not subject to registration by a state regulatory agency which are used primarily for servicing and maintaining the **residence premises**.

    **2)** **recreational vehicles** which are used primarily for servicing and maintaining the **residence premises**.

    **3)** A conveyance designed primarily to provide mobility to the handicapped, provided it is not licensed for operation on public roadways.

    **4)** electrically powered vehicles designed for and used as a toy.

**(i)** **motor vehicle** and **recreational vehicle** equipment, accessories and parts.

**We** do cover:

    **1)** citizens band radios, cellular telephones, radio transceivers, radio transmitters and similar transmitting equipment; and

    **2)** devices or instruments for the recording or reproduction of sound;

    while in or upon a **motor vehicle** or **recreational vehicle** if capable of being operated by both electrical current from the vehicle operating system and electrical current from a source other than the vehicle; and

    **3)** accessories, antennas, tapes, wires, records, discs and other media for use with the items described in (i)1) and 2) above while in or upon such vehicles.

    **4)** spare or replacement **motor vehicle** and **recreational vehicle** equipment, accessories or parts when not installed in or upon the **motor vehicle** or **recreational vehicle**.

**(j)** any device designed or used to detect, avoid or locate radar or any other speed measuring or calculating apparatus while in or upon a **motor vehicle**.

**(k)** property specifically described and insured by this policy or any other insurance.

**(l)** contraband or property in the course of illegal transportation or trade; or property seized or subject to seizure by any governmental authority.

**(3) Special Limits of Insurance for Certain Personal Property**

Special limits of insurance apply to the following groups of personal property. These limits do not increase the limit of insurance for Coverage C - Personal Property. The special limit for each group is the most **we** will pay in any one loss for all personal property in that group.

**(a)** $250 for money, bank notes, and bullion; coins and medals and other numismatic property; and precious metals including platinum, gold and silver, but not goldware or silverware.

**(b)** $1,000 for securities, checks, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes; passports, personal data and records, manuscripts, tickets; and stamps and other philatelic property. This limit applies to these categories regardless of the media on which the material exists and includes the cost to research, replace or restore the information from the lost or damaged material.

**(c)** $1,000 for **watercraft**, including their equipment, accessories or parts, trailers and outboard motors.

**(d)** $1,000 for trailers not used to transport **watercraft**.

**(e)** $1,000 for theft of jewelry, watches, precious and semi-precious stones, and furs, including any article containing fur which represents its principal value.

**(f)** $2,500 for cemetery markers, headstones and urns.

**(g)** $5,000 for theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**(h)** $2,500 for theft of guns and their accessories, parts or equipment.

**(i)** $2,500 for personal property located on the **residence premises** that is used in any way or at any time for **business** purposes.

**(j)** $1,000 for personal property located away from the **residence premises** that is used in any way or at any time for **business** purposes.

**(k)** $10,000 for loss by theft of carpets (except wall-to-wall carpet), tapestries, rugs, wall-hangings or other similar articles. However, **we** shall not pay more than $5,000 for any one article.

**(l)** $1,000 for trading cards.

**(m)** $2,500 for spare or replacement **motor vehicle** and **recreational vehicle** equipment, accessories or parts when not installed in or upon the **motor vehicle** or **recreational vehicle**.

**(n)** $2,500 for **your** appliances and other household furnishings in that part of the **residence premises** regularly rented to or held for rental to others (except roomers or boarders) by **you**.

**(o)** $1,000 for:

**1)** citizens band radios, cellular telephones, radio transceivers, radio transmitters and similar transmitting equipment; and

**2)** devices or instruments for the recording or reproduction of sound;

while in or upon a **motor vehicle** or **recreational vehicle** if capable of being

operated by both electrical current from the vehicle operating system and electrical current from a source other than the vehicle; and

3) accessories, antennas, tapes, wires, records, discs and other media for use with items (o)1) and (o)2) above while in or upon such vehicles. However, **we** shall pay no more than $250 in any one loss for these items.

### d. Coverage D - Additional Living Expense And Loss Of Rents

If a covered loss makes **your residence premises** unfit to live in, **we** will pay, at **your** option, either:

**(1)** the reasonable increase in **your** living expenses necessary to maintain **your** normal standard of living while **you** live elsewhere; or

**(2)** the fair rental value of that part of the **residence premises** where **you** reside, less any charges and expenses which do not continue while the **residence premises** is unfit to live in.

**We** will pay for only the shortest time required to repair or replace the **residence premises** or for **you** to permanently relocate. **We** will also pay for **your** loss of normal rents resulting from a covered loss while the rented part of the **residence premises** is unfit to live in, less charges and expenses which do not continue during that time. **We** will pay this loss of normal rents only for the shortest time needed to make the rented part fit to live in.

If damage caused by a peril **we** insure against occurs at a neighboring premises, **we** will pay reasonable additional living expenses and loss of normal rents as provided in (1) and (2) above for up to two weeks provided civil authorities prohibit occupancy of the **residence premises**.

These periods of time will not be shortened by the expiration of this policy. **We** will not pay for loss or expense because of the cancellation of any lease or agreement.

A deductible amount stated in the Declarations shall apply only once if damage resulting from the same

loss is covered under more than one of the coverages described above.

### 2. PERILS WE INSURE AGAINST

#### a. Coverage A - Dwelling and Coverage B - Other Structures

**We** cover risk of accidental direct physical loss to covered property described under Coverage A - Dwelling and Coverage B - Other Structures except for losses excluded elsewhere in this policy.

#### b. Coverage C - Personal Property

**We** cover risk of accidental direct physical loss to covered property described under Coverage C - Personal Property caused by any of the following perils except for losses excluded elsewhere in this policy:

**(1)** Fire or Lightning.

**(2)** Windstorm or Hail. This peril does not include loss:

**(a)** to covered property in any building, caused by rain, snow, sand, sleet or dust unless the building is first damaged by the direct force of wind or hail, creating an opening through which the rain, snow, sand, sleet or dust enters the building; nor

**(b)** to **watercraft** (except rowboats and canoes while on **residence premises**) and their trailers, equipment, accessories, parts and motors unless inside a fully enclosed building.

**(3)** Explosion.

**(4)** Riot or Civil Commotion.

**(5) Aircraft**.

**(6)** Vehicles.

**(7)** Smoke, if the loss is sudden and accidental. This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**(8)** Vandalism and Malicious Mischief.

**(9)** Theft or Attempted Theft, including loss of covered property from a known place if it is likely that a theft has occurred.

**(a)** This peril does not include theft:

**1)** committed by any **insured** or by any other person regularly residing at the **residence premises**. Covered property of a student who is an **insured** is covered while located at a residence away from the **residence premises**, if the theft is committed by a person who is not an **insured**;

**2)** in or from a dwelling under construction or of construction materials and supplies until the dwelling is completed and occupied; nor

**3)** from any part of the **residence premises** rented by any **insured** to other than an **insured**.

**(b)** This peril does not include theft away from the **residence premises** of:

**1)** covered property while in any other residence or its premises owned, rented or occupied by any **insured** except while any **insured** is temporarily residing there. Covered property of any **insured** who is a student is covered at a residence away from the **residence premises** if the student has been there at any time during the 45 days just before the loss.

If the **residence premises** is a newly acquired residence, covered property in the immediate past residence shall not be considered property away from the **residence premises** for the first 30 days after **you** begin moving covered property from that residence;

**2)** **watercraft** and their equipment, accessories, parts and outboard motors; nor

**3)** trailers, camping trailers and campers designed to be pulled by or carried on a **motor vehicle**.

**(10)** Falling Objects. This peril does not include loss to covered property within a building unless the falling object first damages the exterior of the building. **We** do not cover damage to the falling object.

**(11)** Weight of ice, snow or sleet which damages covered property in a building.

**(12)** Sudden and accidental tearing apart, cracking, burning or bulging of a heating, air conditioning or automatic fire protection sprinkler system or a water heating appliance. This peril does not include loss which is caused by or results from freezing.

**(13)** Accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance. This peril does not include loss:

**(a)** to the appliance or system from which the water or steam escapes;

**(b)** caused by or resulting from freezing, except as provided by the peril of freezing; nor

**(c)** caused by or resulting from water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

A plumbing system does not include a sump, sump pump or related equipment.

**(14)** Freezing of plumbing, heating, air conditioning or an automatic fire protection sprinkler system or a domestic appliance.

**(15)** Sudden and accidental loss caused by an increase or decrease of artificially generated electrical currents. This peril does not include loss to tubes, transistors or similar electronic components.

**(16)** Volcanic Eruption. This peril does not include loss caused by earthquake or land shock waves or tremors which occur before, during or after a volcanic eruption. All

volcanic eruptions that occur within a period of 72 hours will be considered one volcanic eruption.

3. **EXCLUSIONS**

a. **Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property**

**We** do not cover loss to covered property caused directly or indirectly by any of the following, whether or not any other cause or event contributes concurrently or in any sequence to the loss:

(1) Enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy. This exclusion does not apply to loss to covered property caused by actions of civil authorities to prevent the spread of a fire caused by a peril **we** insure against.

(2) Earth movement, meaning earthquake, including land shock waves or tremors before, during or after volcanic eruption; landslide; mine subsidence; mudflow; erosion; earth sinking; rising or shifting. This exclusion does not apply to ensuing direct loss caused by fire, explosion, breakage of building glass or safety glazing material or theft.

(3) Water damage, meaning:

(a) flood, surface water, waves, tidal water or overflow of a body of water. **We** do not cover spray from any of these, whether or not driven by the wind;

(b) water or sewage from outside the plumbing system that enters through sewers or drains;

(c) water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(d) water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building, sidewalk, driveway, swimming pool or other structure.

This exclusion does not apply to ensuing direct loss to covered property caused by theft, fire or explosion.

(4) Failure or interruption of power or other utility service which occurs away from the **residence premises**. **We** will pay for loss caused solely by a peril **we** insure against that ensues at the **residence premises**.

(5) Freezing of plumbing, heating, air conditioning or automatic fire protection sprinkler systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant, unoccupied or in the course of construction unless, prior to the loss, **you** have either:

(a) shut off the water supply and drained the systems and appliances; or

(b) maintained heat in the building.

(6) Failure of any **insured** to use all reasonable means to protect covered property at and after the time of loss or when the covered property is endangered.

(7) War, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these.

(8) Nuclear action, meaning nuclear reaction, radiation, radioactive contamination, however caused and whether controlled or uncontrolled, or any consequence of any of these. Nuclear action includes the discharge of a nuclear weapon, even if accidental. Loss caused by nuclear action is not considered loss by the perils of Fire, Explosion or Smoke. Direct loss by fire resulting from nuclear action is covered.

(9) An action by or at the direction of any **insured** committed with the intent to cause a loss.

b. **Coverage A - Dwelling and Coverage B - Other Structures**

Except as to ensuing loss not otherwise excluded, **we** do not cover loss resulting directly or indirectly from:

17903 (2-96)

**(1)** Weather conditions which contribute in any way with any events excluded in exclusions 3.a.(1) through 3.a.(9) above to cause the loss;

**(2)** Acts or decisions of any person, group, organization or governmental body, or their failure to act or decide.

**(3)** Faulty, inadequate or defective:

    **(a)** construction, reconstruction, repair, remodeling or renovation;

    **(b)** materials used in construction, reconstruction, repair, remodeling or renovation;

    **(c)** design, workmanship or specifications;

    **(d)** siting, surveying, zoning, planning, development, grading or compaction; or

    **(e)** maintenance;

of a part or all of the **residence premises** or any other property.

**(4) (a)** wear and tear, marring, scratching or deterioration;

    **(b)** inherent vice, latent defect or mechanical breakdown;

    **(c)** rust, corrosion or electrolysis, mold or mildew, or wet or dry rot;

    **(d)** smog, smoke from agricultural smudging or industrial operations;

    **(e)** settling, shrinkage, bulging or expansion, including resultant cracking of pavement, patios, foundations, walls, floors or ceilings;

    **(f)** birds, vermin, rodents or insects;

    **(g)** animals owned or kept by any **insured**; or

    **(h)** discharge, release, escape, seepage, migration or dispersal of **pollutants** unless caused by a peril **we** insure against under Coverage C - Personal Property. This exclusion does not apply to ADDITIONAL COVERAGE, o. Heating Fuel Damage.

If because of any of these, water escapes from a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance, **we** cover loss caused by the water. **We** also cover the cost of tearing out and replacing any part of the covered building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which the water escapes.

**(5)** Theft in or from a dwelling under construction or of construction materials and supplies until completed and occupied.

**(6)** Constant or repeated seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or from within a domestic appliance which occurs over a period of weeks, months or years.

**(7)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.

**(8)** Vandalism or malicious mischief or breakage of glass or safety glazing materials if the dwelling has been vacant for more than 30 consecutive days just before the loss. A building under construction is not considered vacant.

**(9)** Collapse of a building or any part of a building except as provided by ADDITIONAL COVERAGE, h. Collapse.

**4. ADDITIONAL COVERAGES**

    **a. Debris Removal**

    **We** will pay reasonable necessary expenses **you** incur to remove debris of covered property insured under Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property following a loss caused by a peril **we** insure against. **We** will also pay reasonable necessary expenses **you** incur to remove ash, dust or particles from a volcanic eruption that has caused direct loss to a building or covered property within a building. This coverage does not apply to removal of trees, limbs and branches.

If damage to the covered property and the cost of debris removal is more than **our** limit of insurance for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

**b.  Fire Department Charges**

**We** will pay up to $500 for **your** liability under an agreement for service charges made by a fire department when called to protect **your** covered property from a peril **we** insure against.  These payments are in addition to the amount of insurance applying to the covered property.  No deductible applies to this coverage.

**c.  Credit Card, Charge Plate, Fund Transfer Card, Check Forgery and Counterfeit Money Coverages**

**(1)  Credit Card, Charge Plate and Fund Transfer Card Coverage**
If any **insured** is legally required to pay for the unauthorized use of a credit card or charge plate issued to any **insured**, **we** will cover the loss.  **We** will also pay for loss which results from unauthorized use of a fund transfer card issued to any **insured**.  A fund transfer card is one used for deposit, withdrawal or transfer of funds.  **We** do not cover use of the credit card, charge plate or fund transfer card:

**(a)** by a resident of **your** household;

**(b)** by someone to whom any **insured** has given the card or plate; nor

**(c)** unless the **insured** has met all the terms under which the card or plate was issued.

**(2)  Check Forgery Coverage**

**We** cover loss sustained by any **insured** which is caused by forgery or alteration of a check or other negotiable instruments.

**(3)  Counterfeit Money Coverage**

**We** cover loss sustained by any **insured** because of acceptance in good faith of counterfeit United States or Canadian paper currency.

**We** will not pay more than $1,000 for any one loss involving one or more of these coverages.

Repeated losses caused by one person or in which one person is involved are to be considered one loss.  **We** do not cover any loss that arises from a **business** of any **insured** or dishonesty of an **insured**.  No deductible applies to these coverages.

**We** may investigate any claim or settle any **suit** as **we** think appropriate.  **We** will not defend after **we** have paid an amount equal to the limit of **our** liability.

If a claim is made or a **suit** is brought against any **insured** for liability under the Credit Card, Charge Plate or Fund Transfer Card Coverage, **we** will defend that **insured**.  **We** will do this at **our** expense, using attorneys of **our** choice.

**We** may at **our** option and at **our** expense, defend any **insured** or that person's bank against a **suit** to enforce payment under the Check Forgery Coverage.

**d.  Emergency Removal of Personal Property**

**We** will pay for loss to covered personal property damaged in any way when being removed or while removed from an **insured premises** because of danger from a peril **we** insure against.  Coverage is limited to a 30 day period beginning on the date of removal.  **We** will also pay for reasonable necessary expenses incurred by **you** for the removal and return of the covered property.  This is not an additional amount of insurance.

**e.  Necessary Repairs After Loss**

**We** will pay the reasonable cost of necessary, temporary repairs made solely to protect covered property from further damage following a loss caused by a peril **we** insure against.  This is not an additional amount of insurance.

**f.  Trees, Shrubs, Plants and Lawns**

**We** will pay up to 5% of the Coverage A - Dwelling limit of insurance for loss to outdoor trees, shrubs, plants and lawns at the **residence premises**.  Coverage applies to only loss, including debris removal, caused by the following perils **we** insure against: Fire or Lightning, Explosion, Riot or Civil Commotion, **Aircraft**, Vehicles not owned or operated by an occupant of the **residence premises**, Vandalism and Malicious Mischief or Theft.

Payments are in addition to the limit of insurance applying to Coverage A - Dwelling. **We** will not pay:

**(1)** more than $500 for any one outdoor tree, shrub or plant; nor

**(2)** for any trees, shrubs, plants or lawns grown for **business** purposes.

**g. Tree Debris Removal**

**We** will pay up to $500 for any one loss for reasonable necessary expenses **you** incur for removing trees, limbs and branches from the **residence premises** if:

**(1)** caused by any peril **we** insure against under Coverage A - Dwelling provided such peril is not listed under f. Trees, Shrubs, Plants and Lawns; and

**(2)** this coverage is not provided elsewhere in this policy.

The limit of $500 for any one loss applies, regardless of the number of fallen trees, limbs and branches.

**h. Collapse**

**We** cover risk of direct physical loss involving collapse to covered property insured under Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property only if:

**(1)** the loss involves collapse of a building or part of a building; and

**(2)** the collapse is caused by any of the following:

    **(a)** hidden decay, hidden insect damage or hidden vermin damage;

    **(b)** weight of people, contents, animals, equipment and/or furniture;

    **(c)** defective material or defective methods used in construction, reconstruction, renovation or remodeling;

    **(d)** weight of rain, ice, sleet or snow on a roof; or

    **(e)** a peril **we** insure against under Coverage C - Personal Property.

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

Under h.(2)(a)-h.(2)(d) above, coverage does not apply to loss to awnings, fences, pavements, patios, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations, retaining walls, bulkheads, piers, wharves or docks unless damage is caused directly by collapse of a building. This is not an additional amount of insurance.

**i. Loss Assessment**

**We** will pay up to $2,500 for **your** share of any loss assessment charged against **you** as the owner or tenant of the **residence premises** by an association or corporation of property owners if the assessment is made as a result of direct physical loss caused by a peril **we** insure against to property owned collectively by all members of the association or corporation. Coverage is included for loss occurring during the policy term if the assessment is charged against **you** after the policy term.

**We** will not pay if the loss is caused by earthquake or land shock waves or tremors which occur before, during or after a volcanic eruption or mine subsidence. **We** will not pay for any loss assessments charged by a governmental body.

The most that **we** will pay for any one loss is $2,500 regardless of the number of assessments.

**j. Glass or Safety Glazing Material**

**We** cover:

**(1)** the breakage of glass or safety glazing materials which are part of a covered building including storm doors and storm windows.

**(2)** damage to covered property by glass or safety glazing material which is part of a covered building including storm doors and storm windows.

This coverage does not include loss to the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately preceding the date of loss. A dwelling under construction is not considered vacant. Loss for damage to glass will be based on replacement with safety glazing materials when required by

Agency Code C 18-0423-00                                                    Policy Number HO 50-951-828-00

ordinance or law.  This is not an additional amount of insurance.

**k.  Rekeying of Locks**

**We** will pay reasonable necessary expenses **you** incur to rekey locks on exterior doors of the dwelling located at the **residence premises**, provided the keys to such locks are a part of a theft loss covered by this policy.  No deductible applies to this coverage.

**l.  Power Interruption**

**We** cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from a power interruption that takes place at the **residence premises**.  The power interruption must be caused by a peril **we** insure against occurring at the **residence premises**.  This is not an additional amount of insurance.

**m.  Refrigerated Products**

**We** will pay for damage to the contents of a freezer or refrigerator located at the **residence premises** provided the damage is the direct result of a power failure away from the **residence premises**, or an electrical or mechanical failure of the refrigeration system.  Power, electrical or mechanical failure does not include:

**(1)** removing of a plug from an electrical outlet; nor

**(2)** turning off of an electrical switch unless caused by a peril **we** insure against.

If any **insured** is aware of the power, electrical or mechanical failure, all reasonable action to protect the covered property from further damage must be taken or this coverage shall be void.

The most **we** will pay in any one loss is $250 regardless of the number of freezers or refrigerators involved in the loss.  This is not an additional amount of insurance.

**n.  Arson Reward**

**We** will pay for information which leads to a conviction for arson in connection with a fire loss to covered property insured by this policy.  The most **we** will pay is $1,000 regardless of the

number of persons who provide information.  This payment shall be in addition to the amount of insurance applying to the covered property.  No deductible applies to this coverage.

**o.  Heating Fuel Damage**

We will pay for loss to covered property at the **residence premises** caused by or resulting from:

**(1)** accidental discharge or overflow of heating fuel from **your** heating system, including **your** heating fuel storage tank;

**(2)** delivery of heating fuel into a wrong receptacle at the **residence premises**; or

**(3)** delivery of one fuel for another at the **residence premises**.

This is not an additional amount of insurance.

**5.  DEDUCTIBLE**

If a deductible is shown in the Declarations, no loss shall be paid until the amount of loss exceeds the deductible.  The deductible shall apply to all coverages unless stated otherwise.

If this policy includes endorsements which contain separate deductibles, that deductible shall apply to loss covered by that endorsement.  However, if damage resulting from the same loss is covered by this policy and an attached endorsement, only one deductible shall apply.  **We** shall apply the largest applicable deductible to the entire loss.

**6.  CONDITIONS**

**a.  INSURABLE INTEREST**

Subject to the applicable limit of insurance, **we** will not pay more than the insurable interest the **insured** has in the covered property at the time of loss.

**b.  HOW LOSSES ARE SETTLED**

Loss to covered property will be settled as follows:

**(1)** If the damaged covered property is:

**(a)** personal property insured under Coverage C - Personal Property;

**(b)** structures that are not buildings;

**(c)** antennas, carpeting, awnings, domestic appliances and outdoor equipment, whether or not attached to buildings; or

**(d)** structures covered under the provisions of Coverage B - Other Structures, sub-paragraph (1)(b);

**we** will pay the actual cash value of the property at the time of loss. Actual cash value includes a deduction for depreciation. In no event will **we** pay more than the smallest of either:

**(a)** the limit of insurance applying to the damaged covered property; or

**(b)** the cost to repair or replace the damaged covered property with property of like kind and quality.

**(2)** If the damaged covered property is insured under Coverage A - Dwelling or Coverage B - Other Structures and not included in (1) above, **we** will pay as follows:

**(a)** If at the time of loss, the limit of insurance applying to the damaged covered property is 80% or more of the full replacement cost of that covered property, **we** will pay the full cost to repair or replace the damaged part of such covered property. No deduction will be made for depreciation. In no event shall **we** pay more than the smallest of:

**1)** the limit of insurance applying to the damaged covered property;

**2)** the cost to replace the damaged covered property with equivalent construction for equivalent use at the **residence premises**; or

**3)** the amount actually spent to repair or replace the damaged covered property.

**(b)** If at the time of loss, the limit of insurance applying to the damaged covered property is less than 80% of the full replacement cost of that covered property, **we** will pay the greater of either:

**1)** the actual cash value of the damaged covered property; or

**2)** the cost to repair or replace the covered property, less the deductible amount, multiplied by the ratio of the limit of insurance applying to the damaged covered property to 80% of its full replacement cost. No deduction will be made for depreciation.

In no event shall **we** pay more than the smallest of:

**1)** the limit of insurance applying to the damaged covered property;

**2)** the cost to replace the damaged covered property with equivalent construction for equivalent use at the **residence premises**; or

**3)** the amount actually spent to repair or replace the damaged covered property.

If **you** do not repair or replace the damaged covered property, **we** shall pay the actual cash value of the property at the time of loss. Actual cash value includes a deduction for depreciation.

Full replacement cost does not include the cost of excavations, underground pipes, wiring and drains, foundations or other supports below the surface of the lowest basement floor. If there is no basement, it does not include the cost of those supports below the surface of the ground and inside the foundation walls.

**(3)** If the full cost to repair or replace the damaged covered property is more than $1000 or more than 5% of the limit of insurance applying to such covered property, **we** will not pay more than the actual cash value until actual repair or replacement is completed.

**(4)** **You** may disregard the provisions of b.(2) above and make an actual cash value claim for loss or damage to property covered under Coverage A - Dwelling and Coverage B - Other Structures. If **you** do, **you** may within 180 days after the loss make a further claim under the provisions of b.(2) above.

(5) **We** may make a cash settlement and take all or part of the damaged covered property at its appraised or agreed on value, or repair or replace the damaged property with property of like kind and quality. **We** must give **you** notice of **our** intention within 30 days after **we** receive **your** proof of loss.

#### c. APPRAISAL

If **you** and **we** fail to agree on the actual cash value or amount of loss covered by this policy, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon shall be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss.

Each party will pay the appraiser it chooses, and equally pay the umpire and all other expenses of the appraisal.

#### d. ABANDONED PROPERTY

**We** are not obliged to accept abandoned property.

#### e. LOSS TO A PAIR OR SET

We may repair or replace any part of the pair or set to restore it to its value before the loss, or **we** may pay the difference between the actual cash value of the property before and after the loss.

#### f. OUR PAYMENT OF LOSS

**We** will adjust any loss with **you**, and pay **you** unless another payee is named in the policy. **We** will pay within 60 days after **we** receive **your**

proof of loss and all other requested documents and the amount of loss is finally determined by an agreement between **you** and **us**, a court judgment or an appraisal award.

#### g. SUIT AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy. **Suit** must be brought within one year after the loss or damage occurs.

#### h. NO BENEFIT TO BAILEE

This insurance will not, in any way, benefit any person or organization who may be caring for or handling property for a fee.

#### i. OTHER INSURANCE

If both this and other insurance apply to a loss, **we** will pay **our** share. **Our** share will be the ratio of this insurance to the total amount of all insurance which applies.

#### j. ADJUSTED VALUE PROVISION

The limit of insurance applying to Coverage A - Dwelling will be adjusted at the end of each policy term by the percentage change in construction costs during the policy term in the area in which the **residence premises** is located.

Each Renewal Declarations will show the actual percentage used to compute the revised limits of insurance. The limit for Coverage A - Dwelling will be rounded to the nearest $500 for an annual policy period, subject to a $1,000 minimum. The limit of Coverage A - Dwelling will be rounded to the nearest $250 for a six-month term, subject to a $500 minimum.

#### k. MORTGAGE CLAUSE

This provision applies to only the mortgagee named in the Declarations. It does not affect **your** rights or duties under this policy.

The word mortgagee includes a trustee under a deed of trust and a contract seller under a land contract.

Loss covered by the policy, if any, shall be payable to the mortgagee, as their interest may appear, under all present or future mortgages upon the property described in the Declarations

of this policy in which the mortgagee may have an interest.  If more than one mortgagee is named in the Declarations, payment shall be made in order of precedence of the mortgages.

If **we** deny **your** claim, such denial will not apply to a valid claim of the mortgagee, provided the mortgagee:

**(1)** notifies **us** of any change of ownership or occupancy or substantial change in exposure which has come to the knowledge of the mortgagee;

**(2)** pays any premium due under this policy that **you** or the mortgagor has neglected to pay; and

**(3)** submits to **us**, within 60 days after receiving notice from **us** of **your** failure to do so, a proof of loss signed and sworn to by the mortgagee.

Whenever **we** pay the mortgagee any sum for loss under this policy and deny payment to **you** for such loss:

**(1)** to the extent of such payment, **we** are legally subrogated to all rights of the mortgagee under the terms of the mortgage on the covered property; or

**(2)** at **our** option, **we** may pay to the mortgagee the whole principal due, with interest accrued, and shall then receive full assignment and transfer of the mortgage and of all collateral.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**We** may cancel or nonrenew this policy at any time as provided by its terms.  **We** will notify the mortgagee at least 10 days prior to the effective date of the cancellation or nonrenewal.  **We** may also cancel this agreement by providing 10 days notice to the mortgagee.

All policy terms and conditions apply to the mortgagee.

# SECTION II - PERSONAL LIABILITY PROTECTION

**1.  COVERAGES**

**a.  Coverage E - Personal Liability**

**(1)  We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.  However, with respect to any **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**:

**(a)  we** will pay damages because of or arising out of the ownership, maintenance, use, loading or unloading of only:

**1)** a **motor vehicle** stored on an **insured premises** which has been rendered inoperable by complete detachment of parts, or by mechanical breakdown;

**2)  motor vehicles** not subject to registration by a state regulatory agency

which are used primarily for servicing and maintaining an **insured premises**;

**3)** a conveyance designed primarily to provide mobility to the handicapped, provided it is not subject to registration by a state regulatory agency;

**4)** electrically powered vehicles designed for and used as toys;

**5)** a **watercraft** , camper, home or utility trailer when neither being towed by nor carried on a **motor vehicle**;

**6)  recreational vehicles** owned by any **insured** while on an **insured premises**;

**7)  recreational vehicles** that are motorized golf carts;

**8)** a **watercraft** owned by any **insured**:

    **a)** powered by inboard or inboard-outdrive motor power of 175 horsepower or less;

    **b)** powered by one or more outboard motors with:

        **i.** total combined horsepower of 120 HP or less; and

        **ii.** total combined horsepower not in excess of that specified by the **watercraft** manufacturer; and

    **c)** that is a sailboat less than 26 feet in length; and

**9)** a model **aircraft** neither designed nor used for transporting persons or cargo.

**(b) we** will pay damages because of or arising out of the maintenance, use, loading or unloading of only:

    **1)** a **motor vehicle** which is not owned nor operated by nor rented to nor loaned to any **insured**;

    **2)** a **recreational vehicle** which is not owned by any **insured**; and

    **3)** a **watercraft** not owned by nor available for regular use by any **insured** provided use of the **watercraft** is with a reasonable belief of permission to do so.

**(2) We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **personal injury** caused by an **incident** to which this coverage applies.

**We** will settle or defend, as **we** consider appropriate, any claim or **suit** for damages covered by this policy. **We** will do this at **our** expense, using attorneys of **our** choice. This agreement to settle or defend claims or **suits** ends when **we** have paid the limit of **our** liability.

**b. Coverage F - Medical Payments to Others**

A person who sustains **bodily injury** is entitled to this coverage when that person is:

**(1)** on an **insured premises** with the permission of an **insured**; or

**(2)** elsewhere, if the **bodily injury**:

    **(a)** arises out of a condition on the **insured premises** or the adjoining ways;

    **(b)** is caused by the activities of an **insured** or a **residence employee** in the course of employment by an **insured**;

    **(c)** is caused by an animal owned by or in the care of an **insured**; or

    **(d)** is sustained by a **residence employee** and arising out of and in the course of employment by an **insured**;

**(3)** injured because of the operation or use of an **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft** covered by Coverage E - Personal Liability of this policy.

**We** will pay the reasonable expenses incurred for necessary:

**(1)** medical, surgical, X-ray and dental services;

**(2)** prosthetic devices, eye glasses, hearing aids, drugs and medicines; and

**(3)** ambulance, hospital, licensed nursing and funeral services.

These expenses must be incurred within three years from the date of the **occurrence** causing **bodily injury** covered by this policy. The **bodily injury** must be discovered, treated and reported to **us** within one year of the **occurrence**.

**We** may pay the injured person or the party that renders the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured**.

**2. EXCLUSIONS**

    **a. Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others** do not apply:

        **(1)** to **bodily injury**, **property damage** or **personal injury** arising out of any premises

owned, rented or controlled by any **insured** which is not an **insured premises**.  This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured** at such premises.

**(2)** to **bodily injury** or **personal injury** to a fellow employee of an **insured** sustained in the course of employment.

**(3)** to **bodily injury** or **personal injury** because of or arising out of corporal punishment administered by or at the direction of an **insured** if that **insured** is a member of the faculty or teaching staff of any school or college.

**(4)** to **bodily injury** or **personal injury** because of or arising out of a communicable disease transmitted by any **insured**.

**(5)** to **bodily injury** or **property damage** because of or arising out of any **insured's** preparation for, practice or participation in any prearranged racing, speed or demolition contest involving any **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**. This exclusion does not apply to a **watercraft** that is a sailboat less than 26 feet in length.

**(6)** to **bodily injury** or **property damage** because of or arising out of the ownership, maintenance, use, loading or unloading of any water jet propelled **watercraft** of any kind less than 16 feet in length;

**(7)** to **bodily injury** or **property damage** because of or arising out of the ownership, maintenance, use, loading or unloading of any **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**.  This exclusion does not apply:

**(a)** to **aircraft**, **motor vehicles**, **recreational vehicles** or **watercraft** described under 1. COVERAGES, a. Coverage E - Personal Liability, (1)(a)1-(1)(a)9) and (1)(b)1)-(1)(b)3); or

**(b)** to **bodily injury** to any **residence employee** arising out of or in the course of employment by an **insured**.

**(8)** to parental liability for **bodily injury** or **property damage**, whether or not imposed by

law, including or arising out of actions of a child or minor for use of an **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft** if such use is excluded or otherwise limited by this policy.

**(9)** to **bodily injury** or **property damage** because of or arising out of:

**(a)** the entrustment to any person by any **insured**; nor

**(b)** the supervision of any person by any **insured**;

with regard to the ownership, maintenance, use, loading or unloading of an **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**.

This exclusion does not apply:

**(a)** to **aircraft**, **recreational vehicles** and **watercraft** that are covered by Coverage E - Personal Liability; nor

**(b)** to **motor vehicles** that are covered by Coverage E - Personal Liability.  This exception does not apply to **motor vehicles** that are not owned by any **insured**.

**(10)** to **bodily injury** or **property damage** because of or arising out of the rendering of or failure to render professional services of any kind.

**(11)** to **bodily injury** or **property damage** because of or arising out of a **business** owned or financially controlled by an **insured** or by a partnership or joint venture of which an **insured** is a partner or member. This exclusion does not apply to activities of an **insured** ordinarily incident to nonbusiness pursuits.

**(12)** to **bodily injury** or **property damage** reasonably expected or intended by the **insured**.  This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended.

**(13)** to **bodily injury** or **property damage** caused by war, including any undeclared war, civil war, insurrection, rebellion,

revolution, warlike act by a miltary force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these.

**b. Coverage E - Personal Liability** does not apply:

**(1)** to liability assumed under:

    **(a)** any oral contract or agreement; or

    **(b)** any contract or agreement:

        **1)** in connection with any **business** of an **insured**; nor

        **2)** entered into after the event causing the loss.

**(2)** to liability for **your** share of any loss assessment charged against all members of an association, corporation or community of property owners.  This exclusion does not apply to ADDITIONAL COVERAGE d. Loss Assessment.

**(3)** to liability for any property stolen or converted by the **insured**.

**(4)** to **bodily injury** or **property damage** when any **insured** is covered by or is required to be covered by a nuclear energy liability policy.  This exclusion applies even if the limits of liability of that policy have been exhausted.

**(5)** to **bodily injury** to any person if an **insured** has or is required to have a policy providing workers compensation, nonoccupational disability or occupational disease benefits covering the **bodily injury**.

**(6)** to **bodily injury** or **personal injury** to any **insured**.

**(7)** to **personal injury**:

    **(a)** in connection with any **business**, occupation, trade or profession; nor

    **(b)** with respect to any publication or utterance made knowing it to be false.

**(8)** to **property damage** to property owned by any **insured**.

**(9)** to **property damage** to property occupied or used by any **insured** or rented to or in the care of any **insured**.  This exclusion does not apply to **property damage** to such property caused by fire, smoke or explosion.

**c. Coverage F - Medical Payments to Others** does not apply:

**(1)** to **bodily injury** to any person who is entitled to benefits which are provided or required to be provided under any:

    **(a)** workers compensation law;

    **(b)** nonoccupational disability law; nor

    **(c)** occupational disease law.

**(2)** to **bodily injury** from any:

    **(a)** nuclear reaction;

    **(b)** radiation;

    **(c)** radioactive contamination; nor

    **(d)** consequence of (2)(a)-(2)(c).

**(3)** to **bodily injury** to any **insured** or any other person, except a **residence employee**, who regularly resides on any part of any **insured premises**.  This exclusion does not apply to **bodily injury** because of the operation or use of a **recreational vehicle** that is a motorized golf cart.

**3. ADDITIONAL COVERAGES**

In addition to **our** limit of insurance, **we** will also pay the following:

**a. Damage to Property of Others**

    (1) We will pay for **property damage** caused by any **insured** to property owned by others. **We** will pay no more than the full cost of repair or the replacement cost at the time of the loss.  In no event shall **we** pay more than $500 in any one **occurrence**.

    (2) **We** will not pay for **property damage**:
        (a) caused intentionally by any **insured** who has attained the age of 13.

        (b) to property owned by any **insured** nor

owned by or rented to any tenant of an **insured** or any resident of **your** household.

**(c)** to property to the extent it is covered by SECTION I - PROPERTY PROTECTION of this policy.

**(d)** arising out of:

   **1)** any act or omission in connection with a premises (other than an **insured premises**) owned, rented or controlled by any **insured**;

   **2)** a **business**;

   **3)** ownership, maintenance or use of an **aircraft**, **motor vehicle** or **watercraft**; nor

   **4)** theft or conversion of property by the **insured**.

**b. Miscellaneous Expenses**

**(1)** All costs **we** incur and all costs charged against any **insured** in the settlement of any claim or defense of any **suit**.

**(2)** Interest on damages owed by **you** because of a judgment in a **suit we** defend and accruing:

   **(a)** after the judgment, and until **we** pay, offer or deposit in court, the amount for which **we** are liable under this policy; or

   **(b)** before the judgment, where owed by law, but only on that part of the judgment **we** pay.

**(3)** Premiums on bonds required in any **suit we** defend. **We** will not pay the premium for any portion of a bond for an amount that is greater than **our** limit of liability. **We** have no obligation to apply for or furnish these bonds.

**(4)** Loss of earnings up to $100 a day, but not other income, when **we** ask **you** to help **us** investigate or defend any claim or **suit**.

**(5)** Any other reasonable expenses incurred at **our** request.

**c. First Aid Expenses**

Expenses for first aid to other persons at the time of the **occurrence**. **We** will pay only expenses which any **insured** incurs for treatment of **bodily injury** covered by this policy. **We** will not pay for first aid to any **insured**.

**d. Loss Assessment**

**We** will pay up to $2,500 for **your** share of any loss assessment charged against **you** as an owner or tenant of the **residence premises** by an association or corporation of property owners if the assessment is made as a result of:

**(1)** an **occurrence** or **incident** covered by SECTION II - PERSONAL LIABILITY PROTECTION of this policy; or

**(2)** liability for an act of a director, trustee or officer in his or her capacity as such. The director, trustee or officer must:

   **(a)** be elected by the members of the association or corporation; and

   **(b)** serve without pay for performing his or her duties.

**We** will not pay for any loss assessments charged by a governmental body.

The most **we** will pay is $2,500 regardless of the number of assessments, for loss arising out of an **occurrence**, **incident** or a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee shall be considered a single act.

**4. LIMIT OF INSURANCE**

**We** will pay damages up to the limits stated in the Declarations as follows:

**a. Coverage E - Personal Liability**

**(1) We** will pay damages for **bodily injury**, **property damage** and **personal injury** up to the limit stated in the Declarations under "Personal Liability." That limit is the amount of coverage and the most **we** will pay for all damages because of or arising out of:

   **(a)** all **bodily injury** and all **property damage** in any one **occurrence**; and

Agency Code  C 18-0423-00                                    Policy Number  150-951-828-00

**(b)** all **personal injury** in any one **incident**.

In no event shall **we** pay more than the limit of insurance for all damages because of or arising out of an **occurrence** and an **incident** which result from the same set of general circumstances.

**(2)** The limit of insurance is not increased because of the number of:

**(a)** **insureds**;

**(b)** persons injured;

**(c)** claims made or **suits** brought; or

**(d)** **insured premises** shown in the Declarations or premiums charged.

**b.** **Coverage F - Medical Payments to Others**

**(1)** **We** will pay medical expenses for **bodily injury** up to the limit stated in the Declarations under "Medical Payments."  However, for **bodily injury** because of the operation or use of a **recreational vehicle** that is a motorized golf cart **we** will pay no more than $500.  That limit is the amount of coverage and the most **we** will pay for all medical expenses because of or arising out of **bodily injury** to any one person in any one **occurrence**.

**(2)** The limit of insurance is not increased because of the number of:

**(a)** **insureds**;

**(b)** persons injured;

**(c)** claims made or **suits** brought; or

**(d)** **insured premises** shown in the Declarations or premiums charged.

**5.** **CONDITIONS**

**a.** **SEVERABILITY**

Except as to **our** limit of insurance, the coverage provided by SECTION II - PERSONAL LIABILITY PROTECTION applies separately to each **insured** against whom claim is made or **suit** is brought.

**b.** **SUIT AGAINST US**

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued under Coverage E - Personal Liability until the obligation of any **insured** to pay is finally determined either by:

**(1)** judgement against that person after actual trial; or

**(2)** written agreement of that person, the claimant and **us**.

No one shall have any right to make **us** a party to a **suit** to determine the liability of any **insured**.

**c.** **BANKRUPTCY**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of any **insured**.

**d.** **OTHER INSURANCE - PERSONAL LIABILITY COVERAGE**

This insurance is excess over any other valid and collectible insurance.  However, if the other insurance is specifically written as excess insurance over this policy, the limits of this policy apply first.

# WHAT TO DO IN CASE OF LOSS

**1.** **PROPERTY**

If a covered loss occurs, the **insured** must:

**a.** give **us** or **our** agency immediate notice.  In case of theft also notify the police and provide

them with a complete inventory of stolen or damaged property.  In case of loss under Credit Card, Charge Plate, Fund Transfer Card and Check Forgery Coverage, also notify the issuer of the card or plate or the bank.

**b.** protect the property from further damage or loss; make necessary and reasonable temporary repairs; and keep records of the cost.

**c.** make an inventory of all damaged and destroyed property; show in detail quantities, costs, actual cash value and amount of loss claimed; attach to the inventory all available bills, receipts and related documents that substantiate the figures in the inventory.

**d.** send to **us**, within 60 days after the loss, a proof of loss signed and sworn to by the **insured**, including:

   **(1)** the time and cause of loss;

   **(2)** the interest of **insureds** and all others in the property;

   **(3)** actual cash value and amount of loss to the property;

   **(4)** all encumbrances on the property;

   **(5)** other policies covering the loss;

   **(6)** changes in the title, use, occupancy or possession of the property;

   **(7)** if required, any plans and specifications of any damaged building or fixtures; and

   **(8)** the inventory of all damaged or stolen property required by 1.c. above.

**e.** exhibit the damaged property to **us** or **our** representative as often as may be reasonably required.

**f.** submit to statements and examinations under oath while not in the presence of any other **insured**, and sign the transcripts of the statements and examinations.

**g.** provide **us** with records and documents **we** require and permit **us** to make copies.

**h.** produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere and records pertaining to any loss of rental income.

**i.** provide evidence or affadavit(s) supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

**j.** make available **residence employees**, members of **your** household or others for examination under oath to the extent it is within **your** power to do so.

**2. PERSONAL LIABILITY PROTECTION**

In the event of **bodily injury**, **property damage** or **personal injury**, the **insured** must:

**a.** notify **us** or **our** agency as soon as possible. The notice must give:

   **(1)** **your** name and policy number;

   **(2)** the time, place and circumstances of the **occurrence** or **incident**; and

   **(3)** the names and addresses of injured persons and witnesses;

**b.** promptly send **us** any legal papers received relating to any claim or **suit**;

**c.** cooperate with **us** and assist **us** in any matter relating to a claim or **suit**; and

**d.** if a loss covered under Damage to Property of Others occurs, send **us** sworn proof of loss, within 60 days of the **occurrence**. **You** shall also exhibit the damaged property if within **your** control.

An **insured** will not, except at his or her own cost, voluntarily make any payment, assume any obligation or incur any expenses at the time of the **occurrence** or **incident**.  Expenses covered by ADDITIONAL COVERAGE, c. First Aid Expenses may be incurred by an **insured**.

**3. MEDICAL PAYMENTS**

When a claim under the Medical Payments To Others coverage is involved, the injured person or someone acting on behalf of the injured person must:

**a.** give **us**, as soon as possible, written proof of claim under oath if required;

**b.** submit to physical examinations at **our** expense by doctors **we** select, as often as **we** may reasonably require; and

**c.** authorize **us** to obtain medical and other records.

# GENERAL POLICY CONDITIONS

**1. ASSIGNMENTS**

Interest in this policy may not be transferred without **our** written consent. If **you** die, the policy will cover:

**a.** any surviving member of **your** household who was covered under this policy at the time of **your** death, but only while a resident of the **insured premises**;

**b.** **your** legal representative while acting in that capacity; and

**c.** any person having proper custody of covered property until a legal representative is appointed.

**2. CONCEALMENT OR FRAUD**

This entire policy is void if, whether before, during or after a loss, any **insured** has:

**a.** intentionally concealed or misrepresented any material fact or circumstance;

**b.** engaged in fraudulent conduct; or

**c.** made false statements;

relating to this insurance.

**3. CHANGES**

This policy and the Declarations include all the agreements between **you** and **us** or **our** agency relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by **us**. If a premium adjustment is necessary, **we** will make the adjustment as of the effective date of the change.

**We** may adjust **your** premium during the policy term because of changes in the factors that were used to determine such premium. These factors include but are not limited to coverages, limits of liability and deductibles, the construction, protection class and protection devices of **your** dwelling.

Premium adjustments will be made at the time of such changes or when **we** become aware of the changes, if later.

If **we** make a change which broadens coverage under this policy without additional premium charge, that change will apply to **your** insurance as of the date **we** implement the change in **your** state.

**4. INSPECTIONS**

**We** may, but are not required to, inspect **your** property and operations. **Our** inspection or resulting advice or report does not warrant that **your** property or operations are safe or healthful or comply with any laws, rules or regulations.

**5. OUR RIGHT TO RECOVER PAYMENT**

After making payment under this policy, **we** will have the right to recover to the extent of **our** payment from anyone held responsible. This right will not apply under SECTION I - PROPERTY PROTECTION if **you** have waived it in writing prior to loss. **You** will do whatever is required to transfer this right to **us**.

This condition does not apply under SECTION II - PERSONAL LIABILITY PROTECTION to Medical Payments to Others or Damage to Property of Others.

**6. RECOVERIES**

This condition applies if **we** pay for a loss and then lost or damaged property is recovered, or payment is made by those responsible for the loss.

**a.** The **insured** must inform **us** or **we** must inform that **insured** if either recover property or receives payment.

**b.** Proper costs incurred by either party are paid first.

**c.** The **insured** may keep the property. If so, the amount of the claim paid or a lesser amount to which **we** agree, must be returned to **us**.

**d.** If the claim paid is less than the agreed loss because of a deductible or other limiting terms, the recovery is prorated between the **insured** and **us** based on the interest of each in the loss.

# LIMITATION - FUNGI, WET ROT, DRY ROT AND BACTERIA
### Homeowners Policy - Form 3

It is agreed:

1. Under **DEFINITIONS**, the following definitions are added:
   **Fungi** means any type or form of fungus, including but not limited to, any mold, mildew, mycotoxins, spores, scents or byproducts produced or released by any type or form of fungus.
   **Fungi remediation cost** means the reasonable cost:
   **a.** to remove **fungi**, wet rot, dry rot or bacteria from covered property under **SECTION I - PROPERTY PROTEC-TION**;
   **b.** to tear out and replace any part of covered property as needed to gain access to the **fungi**, wet rot, dry rot or bacteria; and
   **c.** to test property or air to confirm the presence, level or absence of **fungi**, wet rot, dry rot or bacteria only if there is reason to believe that **fungi**, wet rot, dry rot or bacteria is present. **We** will pay such cost whether performed prior to, during or after removal, repair, restoration or replacement.

2. Under **SECTION I - PROPERTY PROTECTION**, **3. EXCLUSIONS**, **a. Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property**, the following exclusion is added:
   **Fungi**, wet rot, dry rot or bacteria, except as provided under the additional coverage, **Fungi**, **Wet Rot**, **Dry Rot and Bacteria**. This exclusion does not apply:
   **a.** to accidental direct physical loss to covered property as a result of **fungi**, wet rot, dry rot or bacteria if such loss follows prior accidental direct physical loss to covered property caused by fire or lightning; nor
   **b.** to ensuing loss not otherwise excluded resulting directly or indirectly from **fungi**, wet rot, dry rot or bacteria.

3. **SECTION I - PROPERTY PROTECTION**, **3. EXCLUSIONS**, **b. Coverage A - Dwelling and Coverage B - Other Structures** is amended as follows:
   **a.** **(1)** is deleted and replaced by the following:
   **(1)** Weather conditions which contribute in any way with any events excluded in 3.a. above to cause the loss;
   **b.** **(4)(c)** is deleted and replaced by the following:
   **(c)** rust or other corrosion, or electrolysis;

4. Under **SECTION I - PROPERTY PROTECTION**, **4. ADDITIONAL COVERAGES**, the following additional coverage is added:
   **Fungi**, **Wet Rot**, **Dry Rot and Bacteria**
   **(1)** **We** will pay for accidental direct physical loss to covered property and **fungi remediation cost** as a result of **fungi**, wet rot, dry rot or bacteria if such loss follows prior accidental direct physical loss to covered property caused by any peril insured against other than fire or lightning.
   **(2)** **We** will pay no more than the least of the following for accidental direct physical loss to covered property including **fungi remediation cost**.
   **a.** subject to **(2)b)** and **(2)c)** immediately below, **we** will pay no more than the limit of insurance shown in the Declarations under "Property Coverage Limitation for **Fungi**, Wet Rot, Dry Rot and Bacteria" for all accidental direct physical loss to covered property including **fungi remediation cost**.
   **b.** when the Water Backup Of Sewers Or Drains endorsement is part of this policy and **fungi**, wet rot, dry rot or bacteria follows accidental direct physical loss to covered property resulting directly from water backup, **we** will pay no more than the limit of insurance shown in the Declarations under "Water Backup of Sewers or Drains" for all accidental direct physical loss to covered property including **fungi remediation cost**.
   **c.** when the HOMEOWNERS PLUS endorsement is part of this policy and **fungi**, wet rot, dry rot or bacteria follows accidental direct physical loss to covered property resulting directly from water seepage or leakage, **we** will pay no more than the limit of insurance shown in the Declarations under "Domestic Appliance Seepage or Leakage" for all accidental direct physical loss to covered property including **fungi remediation cost**.
   This is the most **we** will pay per location for the total of all loss or costs payable under **SECTION I - PROPERTY PROTECTION** during the policy term shown in the Declarations regardless of the number of locations covered by this policy or the number of losses. This does not apply to Coverage D - Additional Living Ex-

pense And Loss Of Rents.  This amount shall not be increased because of the provisions of the Increased Cost Endorsement or the Guaranteed Home Replacement Cost endorsement, if attached to this policy.  This Additional Coverage will not trigger coverage under the Increased Cost Endorsement or the Guaranteed Home Replacement Cost endorsement, if attached to this policy.  This is not an additional amount of insurance.

**(3)** This Additional Coverage applies only to loss or costs resulting from accidental direct physical loss to covered property by a peril **we** insure against during the policy term only if all reasonable means were used to preserve and save covered property from further damage.

**(4)** If there is accidental direct physical loss to covered property, not caused, in whole or in part, by **fungi**, wet rot, dry rot or bacteria, **our** payment of loss will not be limited by the terms of this coverage, except to the extent that **fungi**, wet rot, dry rot or bacteria caused an increase in the loss.  All such increase will be subject to the provisions of this Additional Coverage.

All other policy terms and conditions apply.

17594 (11-13)

17679 (11-13)

# HOMEOWNERS PLUS
### Homeowners Policy - Form 3

It is agreed:

1. **MORTGAGE EXTRA EXPENSE COVERAGE**
   In the event of a covered loss to **your** dwelling insured under Coverage A - Dwelling, for which **we** have paid or have agreed to pay an amount equal to the limit of insurance stated in the Declarations for Coverage A - Dwelling, **we** will reimburse **you** for the following costs and expenses to repair or replace **your** dwelling provided they are incurred within 120 days after the date of the loss.
   **a. Acquisition Cost**
   **We** will pay no more than $750 for the following direct monetary costs:
   **(1)** title search fees;
   **(2)** appraisal fees; and
   **(3)** application fees.
   **b. Additional Monthly Mortgage Expense**
   **We** will pay that part of the additional monthly mortgage expense on the replacement dwelling which is because of a higher rate of interest for the same principal amount as the first mortgage on **your** dwelling at the time of loss.
   **We** shall pay no more than $250 per month for the shorter of the following periods:
   **(1)** four years from the date of the first payment; or
   **(2)** that date following the first payment on which **your**:
      **(a)** ownership; or
      **(b)** legal control
      of the replacement dwelling is transferred or otherwise assigned.
   Payments will be made semiannually.  The deductible stated in the Declarations shall apply.
2. **a.** The following exclusion is deleted wherever it appears in the policy or any endorsement attached to the policy.
      Constant or repeated seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or from within a domestic appliance which occurs over a period of weeks, months or years.
   **b.** The following exclusion replaces the preceding exclusion wherever it appeared in the policy or any endorsement attached to the policy.
      Constant or repeated seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or from within a domestic appliance which occurs over a period of weeks, months or years except as provided by the ADDITIONAL COVERAGE, Domestic Appliance Seepage or Leakage.
3. Under **SECTION I - PROPERTY PROTECTION**, **ADDITIONAL COVERAGES, g. Tree Debris Removal** is deleted and replaced by the following:
   **g. Tree Debris Removal**
   **We** will pay up to $1000 for any one loss for reasonable necessary expenses **you** incur for removing trees, limbs and branches from the **residence premises** if:
   **(1)** caused by any peril **we** insure against under Coverage A - Dwelling provided such peril is not listed under f. Trees, Shrubs, Plants and Lawns; and
   **(2)** this coverage is not provided elsewhere in this policy.
   The limit of $1000 for any one loss applies, regardless of the number of fallen trees, limbs and branches.
4. Under **SECTION I - PROPERTY PROTECTION**, **ADDITIONAL COVERAGE**, **m. Refrigerated Products** is deleted and replaced by the following:
   **m. Refrigerated Products**
   **We** will pay for damage to the contents of a freezer or refrigerator located at the **residence premises** provided the damage is the direct result of a power failure away from the **residence premises**, or an electrical or mechanical failure of the refrigeration system.  Power, electrical or mechanical failure does not include:

**(1)** removing of a plug from an electrical outlet; nor

**(2)** turning off of an electrical switch unless caused by a peril **we** insure against.

If any **insured** is aware of the power, electrical or mechanical failure, all reasonable action to protect the covered property from further damage must be taken or this coverage shall be void.

No loss shall be paid until the amount of loss exceeds the deductible stated in the Declarations for Refrigerated Products.  The most **we** will pay in any one loss is $750 regardless of the number of freezers or refrigerators involved in the loss.  This is not an additional amount of insurance.

5.  Under **SECTION I - PROPERTY PROTECTION**, **ADDITIONAL COVERAGES**, the following additional coverage is added.

   **Domestic Appliance Seepage or Leakage**

   **We** will pay up to the limit of insurance shown in the Declarations under "Domestic Appliance Seepage or Leakage" for loss or damage to covered property caused directly or indirectly by constant or repeated seepage or leakage of water or steam from within a:

   **(1)** plumbing system;

   **(2)** heating system;

   **(3)** air conditioning system;

   **(4)** automatic fire protection sprinkler system; or

   **(5)** domestic appliance

   which occurs over a period of weeks, months or years.  However, **we** do not cover loss to the system or appliance from which the water or steam seeps or leaks.  This is not an additional amount of insurance.

6.  **DEDUCTIBLE - GLASS DAMAGE AND GLASS BREAKAGE**

   With respect to loss covered by the additional coverage **Glass and Safety Glazing Material**:

   **a.**   a deductible stated in the Declarations of $250 or less is waived; and

   **b.**   if the policy deductible is greater than $250, a $250 deductible will apply to this coverage.

All other policy terms and conditions apply.

17867 (12-04)

# IDENTITY THEFT - EXPENSE COVERAGE
**Homeowners Policy**

It is agreed:

## 1. DEFINITIONS

The following definitions apply to this endorsement only:

**a. Identity theft** means knowingly transferring or using, by anyone without lawful authority, a means of identification of an **insured** with the intent to commit, or to aid or abet, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or Local law.

**b. Identity theft** includes the misuse of an **insured's**:

**(1)** name, address or social security number;

**(2)** financial account numbers; or

**(3)** other identifying information and the use of such information to:

    **(a)** acquire loans in an **insured's** name;

    **(b)** open credit card accounts;

    **(c)** seize existing accounts; or

    **(d)** commit theft of funds from an **insured's** financial accounts.

**c. Identity theft expenses** means:

**(1)** Any cost incurred to provide, obtain, reproduce or notarize affidavits or similar documents for:

    **(a)** law enforcement agencies;

    **(b)** financial institutions;

    **(c)** credit grantors; or

    **(d)** credit agencies.

**(2)** Actual loss of earnings by an **insured** resulting from time off work to complete costs of **(1)** immediately above, subject to the limits shown under **COVERAGE** below.

**(3)** Cost for telephone calls to report, discuss or resolve an actual **identity theft** with:

    **(a)** law enforcement agencies;

    **(b)** financial institutions;

    **(c)** credit grantors;

**(d)** credit agencies;

**(e)** merchants; or

**(f)** legal counsel.

**(4)** Loan application fees for re-applying for any loan when the original loan application is rejected solely because the lender received incorrect credit information resulting from the occurrence of **identity theft**.

**(5)** Reasonable attorney fees incurred with **our** prior consent for:

**(a)** Defense of an **insured** against any **suits** by persons or organizations or their collection agencies.

**(b)** Removal of any criminal or civil judgments wrongly entered against an **insured**.

**(c)** Challenging the accuracy or completeness of any information in an **insured's** consumer credit report that an **insured** believes is inaccurate or incomplete because of or resulting from **identity theft**.

**(6)** Premiums on bonds required as a result of a **suit** resulting from **identity theft**. **Our** payment of premium for such bonds will not exceed an amount greater than **our** limit of insurance for **identity theft**. **We** have no obligation to apply for or furnish the bonds.

## 2. COVERAGE

The following is added under **SECTION I - PROPERTY PROTECTION, ADDITIONAL COVERAGES**.

**IDENTITY THEFT EXPENSES**

**We** will pay up to $15,000 for **identity theft expenses** incurred by all **insureds** as the direct result of all **identity theft**.

**Our** payment for actual loss of earnings resulting from time off work to handle **identity theft expenses** will not exceed $250 per day, per **insured**, or $10,000 for all **insureds**. This limit of insurance is included within and not in addition to the $15,000 limit for **identity theft expenses**.

**We** will pay for **identity theft expenses** incurred by an **insured** person as the direct result of **identity theft** that is discovered during the policy term shown in the Declarations. In the event of cancellation or nonrenewal of the policy, the **identity theft** must:

**(1)** Take place prior to the effective date of cancellation or nonrenewal.

**(2)** Be discovered by an **insured** person:

**(a)** during the policy term; or

**(b)** up to one year from the:

**1)** expiration date of the policy; or

**2)** effective date of cancellation

whichever occurs first.

With respect to this Additional Coverage, discovery takes place when an **insured**:

**(1)** first becomes aware of information which would cause a reasonable person to presume that **identity theft** has taken place, although the precise amount or details of the **identity theft** may not be fully known; or

**(2)** receives notice of an actual or possible **identity theft** claim asserting facts that, if true, would constitute a covered loss under this Additional Coverage.

**We** do not cover:

**(1)** Loss arising out of or in connection with a **business** owned or financially controlled by an **insured**.

**(2)** Expenses incurred because of or resulting from any fraudulent, dishonest or criminal act by an **insured** or any person aiding or abetting an **insured**, or by any authorized representative of an **insured**, whether acting alone or in collusion with others.

**(3)** Loss covered under **SECTION I - PROPERTY PROTECTION**, **ADDITIONAL COVERAGES**, Credit Card, Charge Plate, Fund Transfer Card, Check Forgery and Counterfeit Money Coverages.

**(4)** Loss or expenses arising out of **identity theft** discovered by an **insured** prior to the inception of this coverage.

**(5)** Loss other than expenses relating to **identity theft**.

**3. DEDUCTIBLE**

**SECTION I - PROPERTY PROTECTION**, **DEDUCTIBLE** is deleted and replaced by the following with respect to this endorsement only:

**DEDUCTIBLE**

**We** will pay only that part of the loss that exceeds $250.  No other deductible applies to **Identity Theft - Expense Coverage**.

**4. CONDITION**

The following is added to **WHAT TO DO IN CASE OF LOSS, 1. PROPERTY**.

Send to **us**, within 60 days after **our** request, all receipts, bills or other records that support **your** claim for expenses under **identity theft** coverage.  Notify the police in case of **identity theft**.

All other policy terms and conditions apply.

57051 (8-15)

## ACTUAL CASH VALUE LOSS SETTLEMENT
## FOR ROOF SURFACING DAMAGED BY WINDSTORM OR HAIL
### Homeowners Policy

It is agreed:

1. **DEFINITIONS** is amended.  The following definition is added for purposes of this endorsement only.
   **Roof surfacing** means the outermost exterior covering of the roof of **your** dwelling or other structures insured under Coverage A - Dwelling or Coverage B - Other Structures.  **Roof surfacing** includes cladding, shingles, tiles, sheeting, flashing or materials used on or above the decking for protection from moisture.  **Roof surfacing** does not include gutters, vents, decking or trim.
2. Under **SECTION I - PROPERTY PROTECTION, 6. CONDITIONS, b. HOW LOSSES ARE SETTLED**, provisions **(2)** and **(3)** are deleted and replaced by the following.
   **(2)** If the damaged covered property is insured under Coverage A - Dwelling or Coverage B - Other Structures and not included in **(1)** above, **we** will pay as follows:
   **(a)**  **1)**  If at the time of loss, the limit of insurance applying to the damaged covered property is 80% or more of the full replacement cost of that covered property, **we** will pay the full cost to repair or replace the damaged part of such covered property subject to the following provisions:
       **a)**  **i.**  if at the time of loss, the **roof surfacing** of **your** covered property under Coverage A or Coverage B was damaged by the peril of windstorm or hail, **we** will adjust a claim for covered loss on the basis of:
           **(i)**  the actual cash value of the **roof surfacing**.  Actual cash value includes a deduction for depreciation; and
           **(ii)**  the full cost of the damaged covered property, not including the **roof surfacing**.  No deduction will be made for depreciation.
       **ii.**  provision **a)** above does not apply if:
           **(i)**  the amount of the covered loss to **your** dwelling is equal to or greater than the Coverage A - Dwelling limit of insurance shown in the Declarations; or
           **(ii)**  the amount of the covered loss to **your** other structure is equal to or greater than the Coverage B - Other Structures limit of insurance shown in the Declarations.
       **b)**  if the provisions of **a)** above do not apply, **we** will pay the full cost to repair or replace the damaged part of the covered property.  No deduction will be made for depreciation.
     **2)**  In no event shall **we** pay more for the damaged covered property, including any **roof surfacing**, than the smallest of:
       **a)**  the limit of insurance applying to the damaged covered property;
       **b)**  the cost to replace the damaged covered property with equivalent construction for equivalent use at the **residence premises**; or
       **c)**  the amount actually spent to repair or replace the damaged covered property.
   **(b)**  **1)**  If at the time of loss, the limit of insurance applying to the damaged covered property is less than 80% of the full replacement cost of that covered property, **we** will pay the greater of either:
       **a)**  the actual cash value of the damaged covered property; or
       **b)**  the cost to repair or replace the covered property, less the deductible amount, multiplied by the ratio of the limit of insurance applying to the damaged covered property to 80% of its full replacement cost.  No deduction will be made for depreciation.
       However, if at the time of loss, the **roof surfacing** of the damaged covered property was damaged by the peril of windstorm or hail, **we** will adjust a claim for covered **roof surfacing** damage on the basis of actual cash value.  Actual cash value includes a deduction for depreciation.
     **2)**  In no event shall **we** pay more for the damaged covered property, including any **roof surfacing**, than the smallest of:
       **a)**  the limit of insurance applying to the damaged covered property;

    **b)**  the cost to replace the damaged covered property with equivalent construction for equivalent use at the **residence premises**; or

    **c)**  the amount actually spent to repair or replace the damaged covered property.

If **you** do not repair or replace the damaged covered property, **we** will pay the actual cash value of the property at the time of loss.  Actual cash value includes a deduction for depreciation.

Full replacement cost does not include the cost of excavations, underground pipes, wiring and drains, foundations or other supports below the surface of the lowest basement floor.  If there is no basement, it does not include the cost of those supports below the surface of the ground and inside the foundation walls.

  **(3)**  If the full cost to repair or replace the damaged covered property is more than $1000 or more than 5% of the limit of insurance applying to such covered property, and **you** do not repair or replace the damaged covered property, **we** will pay no more than the actual cash value of the damaged covered property.  When actual repair or replacement is completed, **we** will pay the full cost to repair or replace the damaged covered property subject to the provisions of **(2)** above.

**3.**  If coverage for ordinance or law is provided by this policy, in no event shall **our** payment under the provisions of that endorsement be increased because of the above provisions.

All other policy terms and conditions apply.

57051 (8-15)

17387 (4-12)

**Georgia**
# AMENDATORY ENDORSEMENT
### Homeowners Policy Form 3 and 6

It is agreed:

1. **EXCLUSIONS** is amended as follows.
   **a.** The following exclusion is deleted wherever it is found.
   An action by or at the direction of any **insured** committed with the intent to cause a loss.
   **b.** The following exclusion is added and replaces the above exclusion, wherever it was found.
   An action by or at the direction of any **insured** committed with the intent to cause a loss.  This exclusion shall not apply to an innocent **insured** to the extent of such innocent **insured's** interest in the property, less any payments **we** make to any mortgagee, and within the limit of insurance applicable to such property:
   **(1)** if the damage arose out of an act of family violence by an **insured**; and
   **(2)** if a family violence complaint for such act has been brought against the **insured** that committed the act of family violence.
2. Under **SECTION I - PROPERTY PROTECTION, 6. CONDITIONS** is amended as follows.
   **a.** **g. SUIT AGAINST US** is deleted and replaced by the following.
   **g.  SUIT AGAINST US**
   **We** may not be sued unless there is full compliance with all the terms of this policy.  Suit must be brought within two years after the loss or damage occurs.
   **b.** Under **k. MORTGAGE CLAUSE**, the following paragraph is deleted:
   **We** may cancel or nonrenew this policy at any time as provided by its terms.  **We** will notify the mortgagee at least 10 days prior to the effective date of the cancellation or nonrenewal.  **We** may also cancel this agreement by providing 10 days notice to the mortgagee.

   and replaced by the following:

   **We** may cancel or nonrenew this policy at any time as provided by its terms.  **We** will notify the mortgagee of cancellation at least 30 days prior to the effective date of cancellation unless:
   **a.** the cancellation is for nonpayment of premium; or
   **b.** the policy has been in effect less than 60 days and it is not a renewal
   in which case, **we** will notify the mortgagee at least 10 days prior to the effective date of cancellation.  **We** will notify the mortgagee at least 10 days prior to the effective date of nonrenewal.  **We** may also cancel this agreement by providing 10 days notice to the mortgagee.
3. Under **SECTION II - PERSONAL LIABILITY PROTECTION, 3. ADDITIONAL COVERAGES, b. Miscellaneous Expenses**, the following is added.
   Any interest which must be paid on a judgment which is awarded to any **insured** as a result of his or her **suit** against **us** will accrue at a rate equal to the rate established at auction for 26 week United States Treasury Bills immediately preceding the date judgment is entered, however, the interest rate shall not exceed 12 percent per year.
4. Under **GENERAL POLICY CONDITIONS, 2. CONCEALMENT OR FRAUD** is deleted and replaced by the following.
   **2.  CONCEALMENT OR FRAUD**
   No coverage is provided by this policy for any loss if, whether before, during or after such loss, any **insured** has:
   **a.** intentionally concealed or misrepresented any material fact or circumstance;
   **b.** engaged in fraudulent conduct; or
   **c.** made false statements
   relating to this insurance.

All other policy terms and conditions apply.

# PERSONAL PROPERTY REPLACEMENT COST
## Homeowners Policy

It is agreed:

**SECTION I - PROPERTY PROTECTION, 6. CONDITIONS, b. HOW LOSSES ARE SETTLED** is amended as follows.
1.  As used in this endorsement only, full cost to replace means the cost, at the time of loss, of a new article:
    **a.**  identical to the damaged, destroyed or stolen article; or
    **b.**  of comparable quality when an identical article is no longer available.
2.  **(1)** is deleted and replaced by the following.
    Loss to covered property will be settled as follows:
    **(1)**  if the damaged covered property:
        **(a)**  is personal property insured under SECTION I - PROPERTY PROTECTION, Coverage C - Personal Property;
        **(b)**  are structures that are not buildings which are located at the **residence premises**;
        **(c)**  are antennas, carpeting, awnings, domestic appliances and outdoor equipment, whether or not attached to buildings; and
        **(d)**  is personal property separately described and specifically insured by the policy, other than:
            **1)**  **watercraft**, including their equipment, accessories and parts;
            **2)**  outboard motors; and
            **3)**  **recreational vehicles**, including their equipment, accessories and parts
    on the basis of the full cost to repair or the full cost to replace the damaged property without a deduction for depreciation.
    In no event shall **we** pay more than the smallest of the following:
        **(a)**  the full cost to replace the article at the time of loss;
        **(b)**  the full cost to repair the article;
        **(c)**  any applicable special limit stated in SECTION I - PROPERTY PROTECTION, Coverage C - Personal Property of the policy; or
        **(d)**  the limit of insurance stated in the Declarations for Coverage C - Personal Property.
    The provisions of this endorsement do not apply to:
        **(a)**  antiques, fine arts, paintings and similar property which is rare or an antique and cannot be replaced;
        **(b)**  mementos, souvenirs, collectors items, trading cards and similar property, the age or history of which contributes to its value;
        **(c)**  any item which is:
            **1)**  broken or awaiting repair;
            **2)**  no longer capable of or will no longer be used to perform the function for which it was designed; or
            **3)**  obsolete or useless to the **insured**.
3.  **(3)** is deleted and replaced by the following:
    **(3)**  If the full cost to replace all damaged covered property under the provisions of this endorsement exceeds $500, **we** will pay no more than the actual cash value of such property until actual repair or replacement of such property is completed.  Actual cash value includes a deduction for depreciation.
4.  **(4)** is deleted and replaced by the following:
    **(4)**  An **insured** may choose to disregard the provisions of this endorsement when making a claim under the policy and accept an actual cash value settlement which will include a deduction for depreciation.  If so, that **insured** shall have the right to make a further claim under the terms of this endorsement, provided **we** are notified of the intent to repair or replace the damaged covered property within 180 days after the initial actual cash value payment.  However, to receive additional payment **you** must:
        **(a)**  complete repair or replacement of the damaged covered property within two years after the date of loss; and
        **(b)**  notify us within 30 days after the repair or replacement has been completed.

All other policy terms and conditions apply.

17662 (2-08)

# GUARANTEED HOME REPLACEMENT COST
### Homeowners Policy - Form 3

It is agreed:

If, prior to a covered loss to **your** dwelling, **you** have:

1. permitted **us** to increase the Coverage A - Dwelling limit of insurance stated in the Declarations to reflect:

    a. any increase because of inflation; and

    b. any property valuation estimates made by **us**; and

2. notified **us** of any additions, alterations or improvements to **your** dwelling which individually or cumulatively increased **your** dwelling replacement cost by $10,000 or more; and

3. paid an additional premium for any increase in the limit of insurance

then at the time of a covered loss to **your** dwelling, if **you** repair or replace **your** dwelling:

1. the Coverage A - Dwelling limit of insurance stated in the Declarations shall, if necessary, be increased to equal the current replacement cost of **your** dwelling and shall apply to the cost of repairing or replacing **your** dwelling at the **residence premises**; and

2. if the Coverage A - Dwelling limit of insurance stated in the Declarations is increased, then the limit of insurance stated in the Declarations for:

    a. Coverage B - Other Structures;

    b. Coverage C - Personal Property; and

    c. Coverage D - Additional Living Expense and Loss of Rents

    shall be increased by the same percentage that the Coverage A - Dwelling limit of insurance has been increased; and

3. the policy premium shall be increased from the date of loss to the end of the policy term to reflect these increases in the limits of insurance.

If the ORDINANCE OR LAW ENDORSEMENT is attached to this policy, in no event shall **our** payment under the provisions of that endorsement be increased because of the above provisions.

All other policy terms and conditions apply.

17697 (2-96)

**Georgia**

# POLICY CANCELLATION AND NONRENEWAL
**Homeowners Policy**

It is agreed:

Under **GENERAL POLICY CONDITIONS** the following conditions are added:

## 1.  CANCELLATION

**a.**  **You** may cancel this policy by returning it to **us** or by giving **us** written notice of the future date at which **you** wish cancellation to take effect.  Upon receipt of a written request for cancellation from **you**, **we** may waive the future date requirement by confirming the date and time of cancellation in writing to **you**.

**b.**  **We** may cancel this policy by mailing or delivering written notice stating the reason for cancellation to **you** at **your** last address known to **us**.  This notice shall be mailed or delivered:

**(1)**  at least 10 days prior to the effective date when cancellation is for nonpayment of premium; or

**(2)**  when cancellation is for other than nonpayment of premium:

**(a)**  at least 10 days prior to the effective date when this policy has been in effect 60 days or less and is not a renewal; or

**(b)**  at least 30 days prior to the effective date when this policy has been in effect more than 60 days or is a renewal.

If this policy has been in effect 60 days or less and is not a renewal, **we** may cancel for any reason.  If this policy has been in effect for more than 60 days or is a renewal, **we** may cancel for one or more of the following reasons:

**(1)**  nonpayment of premium;

**(2)**  discovery of fraud, concealment of material fact or material misrepresentation made by or with **your** knowledge in obtaining the policy, continuing the policy or presenting a claim under the policy;

**(3)**  the occurrence of a change in the risk which substantially increases any hazard the policy insures against; or

**(4)**  you violate any of the material terms or conditions of the policy.

## 2.  NONRENEWAL

If **we** decide not to renew this policy, **we** will mail or deliver written notice stating the reason for nonrenewal to **you** at **your** address last known to **us**.  This notice shall be mailed or delivered at least 30 days prior to the expiration of this policy.

All other policy terms and conditions apply.

57023 (8-13)

# AMENDMENT OF DEDUCTIBLE
**Homeowners Policy**

It is agreed:

Under **SECTION I - PROPERTY PROTECTION**, **5. DEDUCTIBLE** is deleted and replaced by the following:

## 5.  DEDUCTIBLE

The following deductible provision applies unless otherwise noted in this policy:
With respect to any one loss and subject to the property coverage limit, no loss shall be paid until the amount of loss exceeds the deductible shown in the Declarations for its covered property.  The deductible shall apply:
**a.**   to the total of all covered property loss at each location;
**b.**   to all property coverages unless stated otherwise in this policy; and
**c.**   separately to each location if it is shown in the Declarations for that location.

If more than one property deductible (whether shown in the Declarations or within an endorsement) is shown at a location, each property deductible applies per its endorsement.  However, if damage resulting from the same loss is covered by more than one deductible at that location, only one deductible shall apply.  **We** shall apply the largest applicable deductible to the entire loss at that location.

All other policy terms and conditions apply.

57570 (7-18)

# SEXUAL ABUSE OR MOLESTATION EXCLUSION
**Homeowners Policy**

It is agreed:

**SECTION II - PERSONAL LIABILITY PROTECTION, 2. EXCLUSIONS** is amended.  The following exclusion is added.
**a.  Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others** do not apply:
to **bodily injury**, **property damage** or **personal injury** arising out of or related to:
**(a)**  the actual, alleged or threatened sexual abuse or sexual molestation of any person committed by any person, whether or not with the consent or participation of any **insured**;
**(b)**  the failure of:
    **1)**  any **insured**;
    **2)**  member of the household; or
    **3)**  anyone else
    to prevent or stop any such actual or threatened sexual abuse or sexual molestation; or
**(c)**  the negligent:
    **1)**  employment;
    **2)**  investigation;
    **3)**  training;
    **4)**  supervision;
    **5)**  reporting to the proper authorities, or failure to report; or
    **6)**  retention
    of any person whose conduct would be excluded by (a) above.

All other policy terms and conditions apply.

Agency Code   18-0423-00                                    Policy Number   50-951-828-00

57576 (5-14)

# WHAT TO DO IN CASE OF LOSS - AMENDATORY
### Homeowners Policy - Form 3 and Form 6

It is agreed:

Under **WHAT TO DO IN CASE OF LOSS, 1. PROPERTY** is amended as follows.
**a.** **a.** is deleted and replaced by the following.
    **a.** give **us** or **our** agency immediate notice.  In case of:
        **(1)** theft also notify the police and provide them with a complete inventory of stolen or damaged property.
        **(2)** loss under Credit Card, Charge Plate, Fund Transfer Card and Check forgery coverage, also notify the issuer of the card or plate or the bank.
        **(3)** loss or damage by wind or hail, notice of the loss or damage must be given to **us** or **our** agency within one year after the date the loss or damage occurred.
**b.** **d.** is deleted and replaced by the following.
    **d.** send to **us**, within 60 days after **you** notify **us** or **our** agency of the loss, a proof of loss signed and sworn to by the **insured**, including:
        **(1)** the time and cause of loss;
        **(2)** the interest of **insureds** and all others in the property;
        **(3)** actual cash value and amount of loss to the property;
        **(4)** all encumbrances on the property;
        **(5)** other policies covering the loss;
        **(6)** changes in the title, use, occupancy or possession of the property;
        **(7)** if required, any plans and specifications of any damaged building or fixtures; and
        **(8)** the inventory of all damaged or stolen property required by 1.c. above.

All other policy terms and conditions apply.

Agency Code: 18-0423-00                                                   Policy Number: 50-951-828-00

57608 (3-14)

# VACANCY AMENDATORY
### Homeowners Policy

It is agreed:

In this policy and any endorsement attached to this policy, any reference to "vacant for more than 30 consecutive days" is deleted and replaced by "vacant for more than 60 consecutive days".

All other policy terms and conditions apply.

57608 (3-14)                                                             Page 1 of 1

57664 (6-15)

# YOU AND YOUR - AMENDATORY
### Homeowners Policy

It is agreed:

**DEFINITIONS** is amended.  **17.** is deleted and replaced by the following.
**17. You** or **your** means any named **insured** shown in the Declarations and if an individual, such individual named **insured's** spouse who resides in the same household.

All other policy terms and conditions apply.

57664 (6-15)                                                             Page 1 of 1

57845 (7-18)

# PERSONAL INJURY EXCLUSION
### Homeowners Policy

It is agreed:

**SECTION II – PERSONAL LIABILITY PROTECTION**, **2. EXCLUSIONS** is amended.  The following exclusion is added.
**b.   Coverage E - Personal Liability** does not apply:
      to **personal injury** caused by or at the direction of the **insured** with the knowledge that the act would violate the rights of another and would cause **personal injury**.

All other policy terms and conditions apply.

57845 (7-18)                                                             Page 1 of 1

17447 (3-97)

# WATERCRAFT LIABILITY AMENDATORY ENDORSEMENT
**Homeowners Policy**

It is agreed:

**SECTION II - PERSONAL LIABILITY PROTECTION** is amended as follows:

**1.** Exclusion a.(6) does not apply with regard to only a jet propelled **watercraft** less than 16 feet in length not owned by any **insured**.

**2.** Exclusion b.(6) and exclusion c.(3) do not apply with regard to only **bodily injury** sustained by an **insured** because of or arising out of the maintenance or use of only a **watercraft** covered by Coverage E - Liability Coverage.

All other policy terms and conditions apply.

17447 (3-97)                                                                                                                                    Page 1 of 1

---

17676 (2-96)

# CENTRAL STATION PREMISES ALARM SYSTEM
**Homeowners Policy**

It is agreed:

**1.** For a reduced premium, **we** acknowledge the installation, on the **residence premises**, of an approved, properly maintained Central Station Burglary and/or Fire Alarm System.

**2.** **You** agree to maintain this system to the extent it is within **your** control.  **You** also agree to notify **us** promptly of any change in the system.

All other policy terms and conditions apply.

17676 (2-96)                                                                                                                                    Page 1 of 1

Agency Code: 18-0423-00                                               Policy Number: 50-951-828-00

# WATER BACKUP OF SEWERS OR DRAINS
## Homeowners Policy - Form 3

It is agreed:

**SECTION I - PROPERTY PROTECTION, 4. ADDITIONAL COVERAGES** is amended.  The following additional coverage is added.

**Water Backup of Sewers or Drains**

**We** cover risk of accidental direct physical loss to covered property described under Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property caused by:

**a.** water from outside the plumbing system that enters through sewers or drains; and

**b.** water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

Coverage does not apply to any loss caused by negligence of any **insured**.  No loss shall be paid until the amount of loss exceeds the deductible shown in the Declarations for Water Backup of Sewers or Drains.  The most **we** will pay in any one loss is the limit of insurance shown in the Declarations for Water Backup of Sewers or Drains.  This additional coverage is excess over any other valid and collectible insurance provided by **us**.  This is not an additional amount of insurance.

All other policy terms and conditions apply.

17908 (4-16)                                                          Page 1 of 1

---

57482 (8-13)

# LIMITED PERSONAL PROPERTY COVERAGE
# AT A NEWLY ACQUIRED RESIDENCE
## Homeowners Policy

It is agreed:

Under **SECTION I - PROPERTY PROTECTION**, **1. COVERAGES**, **c. Coverage C - Personal Property**, **(1) Covered Property**, **(d)** is deleted and replaced by the following:

**(d)** any personal property which is usually at any **insured's** residence other than the **residence premises** for up to 10% of the Coverage C - Personal Property limit but not less than $1,000.  This limitation does not apply to personal property in a newly acquired principal **residence** for the first 30 days after **you** begin to move there.  If the **residence premises** is a newly acquired residence, covered property in the immediate past residence shall not be considered property away from the **residence premises** for the first 30 days after **you** begin moving covered property from that residence.

All other policy terms and conditions apply.

57482 (8-13)                                                          Page 1 of 1

Agency Code 18-0423-00                                                Policy Number 150-951-828-00

57500 (5-15)

# DIMINUTION IN VALUE EXCLUSION
### Homeowners Policy - Form 3

It is agreed:

The following exclusion is added to **a. Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property** wherever found:
Any actual, alleged or perceived difference in:
**(a)** market value;
**(b)** resale value; or
**(c)** pre-loss and post-loss value
of **your** damaged covered property after it has been repaired or replaced as compared to the actual, alleged or perceived market value of **your** damaged covered property prior to such loss or damage.

All other policy terms and conditions apply.

57500 (5-15)                                                                          Page 1 of 1

---

57573 (4-14)

# HOW LOSSES ARE SETTLED AMENDATORY
### Homeowners Policy - Form 3

It is agreed:

Under **SECTION I - PROPERTY PROTECTION**, **6. CONDITIONS**, **b. HOW LOSSES ARE SETTLED**, **(4)** is deleted and replaced by the following:
**(4)** **You** may disregard the provisions of b.(2) above and make an actual cash value claim for loss or damage to property covered under Coverage A - Dwelling and Coverage B - Other Structures.  If **you** do, **you** may make a further claim under the provisions of b.(2) above, provided **you** notify **us** of **your** intent to repair or replace the damaged covered property within 180 days after the initial actual cash value payment.  However, to receive additional payment **you** must:
**(a)** complete repair or replacement of the damaged covered property within two years after the date of loss; and
**(b)** notify **us** within 30 days after the repair or replacement has been completed.

All other policy terms and conditions apply.

57573 (4-14)                                                                          Page 1 of 1

57591 (2-14)

# AMENDATORY ENDORSEMENT
### Homeowners Policy

It is agreed:

Under **SECTION II - PERSONAL LIABILITY PROTECTION**, **2. EXCLUSIONS**, **a. Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others** do not apply:
**(12)** is deleted and replaced by the following:
**(12)** to **bodily injury** or **property damage** reasonably expected or intended by the **insured**.  This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended.  However, this exclusion does not apply to **bodily injury** or **property damage** arising out of the use of reasonable force by the **insured** to protect persons or property.

All other policy terms and conditions apply.

57591 (2-14)                                                                                           Page 1 of 1

---

57595 (2-14)

# AMENDATORY ENDORSEMENT - FREEZING EXCLUSION
### Homeowners Policy Forms 3, 4, and 6

It is agreed:

Under **SECTION I - PROPERTY PROTECTION**, **EXCLUSIONS**:
1.  The following exclusion is deleted:
    Freezing of plumbing, heating, air conditioning or automatic fire protection sprinkler systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant, unoccupied or in the course of construction unless, prior to the loss, **you** have either:
    **a.**  shut off the water supply and drained the systems and appliances; or
    **b.**  maintained heat in the building.
2.  The following exclusion is added:
    Freezing of plumbing, heating, air conditioning or automatic fire protection sprinkler systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant, unoccupied or in the course of construction unless **you** take precautions to:
    **a.**  shut off the water supply and drain the systems and appliances; or
    **b.**  maintain heat in the building.

All other policy terms and conditions apply.

57595 (2-14)                                                                                           Page 1 of 1

57663 (6-15)

# APPRAISAL - AMENDATORY
**Homeowners Policy**

It is agreed:

Wherever it appears in this policy, **c. APPRAISAL** is deleted and replaced by the following.

**c.  APPRAISAL**

If **you** and **we** fail to agree on the actual cash value or amount of loss covered by this policy, either party may make written demand for an appraisal.  Each party will select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received.  The appraisers will select a competent and impartial umpire.  If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item.  If the appraisers submit a written report of an agreement to **us**, the amount agreed upon shall be the actual cash value or amount of loss.  If they cannot agree, they will submit their differences to the umpire.  A written award by two will determine the actual cash value or amount of loss.

Each party will pay the appraiser it chooses, and equally pay the umpire and all other expenses of the appraisal.

**We** retain **our** right to deny the claim in the event there is an appraisal.

All other policy terms and conditions apply.

57663 (6-15)

57006 (3-07)

# AMENDMENT OF EXCLUSIONS
### Homeowners Policy Form 3 and Form 6

It is agreed:

Under **SECTION I - PROPERTY PROTECTION**, **3. EXCLUSIONS**, paragraph **a.(3)** is deleted and replaced by the following.

**(3)** Water damage meaning:

**(a)** regardless of the cause, flood, surface water, waves, tidal water, storm surge or overflow of a body of water. **We** do not cover spray from any of these, whether or not driven by the wind;

**(b)** water or sewage from outside the plumbing system that enters through sewers or drains;

**(c)** water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

**(d)** water below the surface of the ground.  This includes water which exerts pressure on or flows, seeps or leaks through any part of a building, sidewalk, driveway, swimming pool or other structure.

This exclusion does not apply to ensuing direct loss to covered property caused by theft, fire or explosion.

All other policy terms and conditions apply.

Case 1:21-cv-00075-JRH-BKE   Document 1-1   Filed 05/03/21   Page 109 of 109

57444 (1-12)

# COVERAGE D - ADDITIONAL LIVING EXPENSE AND LOSS OF RENTS
### Homeowners Policy

It is agreed:

SECTION I - PROPERTY PROTECTION is amended as follows.
Under 1. COVERAGES, Coverage D - Additional Living Expense And Loss Of Rents is deleted and replaced by the following.

**Coverage D - Additional Living Expense And Loss Of Rents**
If a covered loss makes **your residence premises** unfit to live in, **we** will pay:
**(1)** the reasonable increase in **your** living expenses necessary to maintain your normal standard of living while **you** live elsewhere.  **We** will pay for only the shortest time required to repair or replace the **residence premises** or for **you** to permanently relocate.
**(2)** for **your** loss of normal rents of that part of the **residence premises** where **you** reside that is either rented by **you** at the time of covered loss or has been held for rental to others by **you** during the 12 months preceding the date of loss, less any charges and expenses which do not continue while the **residence premises** is unfit to live in.  **We** will pay this loss of rents only for the shortest time needed to make the rented part fit to live in.
If damage caused by a peril **we** insure against occurs at a neighboring premises, **we** will pay reasonable additional living expenses and loss of rents as provided in (1) and (2) above for up to two weeks provided civil authorities prohibit occupancy of the **residence premises**.  These periods of time will not be shortened by the expiration of this policy.  **We** will not pay for loss or expense because of the cancellation of any lease or agreement.  A deductible amount stated in the Declarations shall apply only once if damage resulting from the same loss is covered under more than one of the coverages described above.

All other policy terms and conditions apply

57444 (1-12)                                                                                                          Page 1 of 1